** FILED ** Env: 6227599
McHenry County, Illinois
19LA000244
Date: 8/19/2019 10:55 AM
Katherine M. Keefe
Clerk of the Circuit Court

IN THE CIRCUIT COURT OF THE 22ND JUDICIAL CIRCUIT
MCHENRY COUNTY, ILLINOIS

TODD A. DYER, individually, as Trustee of the TODD A. DYER IRREVOCABLE TRUST DATED 1994, and as beneficiary of the TAD3 TRUST DATED 2016,

Plaintiff,

v.

JOAN BAKLEY; THE JOAN BAKLEY TRUST; CINDY JO BAKLEY; KENNETH BAKLEY, JR.: KATHLEEN JENSEN; and BAKLEY CONSTRUCTION, INC., et al.,

Defendants.

**COMPLAINT**

Case No. 19LA000244

NOTICE
THIS CASE IS HEREBY SET FOR A SCHEDULING CONFERENCE IN COURTROOM TBD ON 11-18-2019, AT 9:00 a.m.
FAILURE TO APPEAR MAY RESULT IN THE CASE BEING DISMISSED OR AN ORDER OF DEFAULT BEING ENTERED.

**COMPLAINT**

NOW COMES the Plaintiff, Todd A. Dyer, pro se, entering the claims, allegations, and counts against the Defendants, Joan Bakley; The Joan Bakley Trust; Cindy Jo Bakley; Kenneth Bakley, Jr.; Kathleen Jensen; and Bakley Construction, Inc., joint and severed, allege as follows:

**PARTIES RELEVANT AND RELATED**

1. Plaintiff is a resident of the State of Wisconsin.

2. Plaintiff conducted substantial business in the State of Illinois, County of McHenry.

3. Defendants are residents of the State of Illinois and reside within the jurisdictional bounds of McHenry and Kane Counties.

4. Defendant Bakley Construction, Inc., is an active Illinois corporation, organized under the statutes of the Illinois Secretary of State.

5. Defendants have a personal interest in the entity of Bakley Construction, Inc., which is located and operated within the jurisdictional bounds of McHenry County and this Honorable Court.

6. Defendant Cindy Jo Bakley maintains an active ownership interest in Defendants' construction entity, Bakley Construction, Inc.

7. Plaintiff and Defendants conducted and transacted business in the County of McHenry, State of Illinois.

8. Any business conducted or transacted between Plaintiff and Defendants is assumed or implied its origination within the County of McHenry, State of Illinois.

9. Defendants are party and beneficiaries of a Trust domiciled in the State of Illinois, namely "The Joan Bakley Trust."

**HISTORICAL BACKGROUND**

1. Beginning on or about May 21, 2010, the Bakley family -- Joan Bakley; Cindy Jo Bakley; Kenneth P. Bakley, Jr.; and Kathleen P. (Bakley) Jensen -- devised and implemented a plan and scheme to defraud and obtain funds by means of material false and fraudulent pretenses, representations, and promises.

2. The scheme commenced when the Defendants convinced Plaintiff's father, James Dyer, that family matriarch, Joan Bakley, was in excellent health, and that Joan Bakley's insurer -- North American Company for Life and Health (NACLH), of which James Dyer had placed coverage on Joan Bakley's life on September 8, 1991 -- was willing to reinstate the $1.9 MM policy that had lapsed due to the Defendants' negligence. In truth, Joan Bakley was **UNINSURABLE** and was declared so by NACLH, in the course of structuring a 2009 "Private Annuity" involving and benefitting Joan Bakley and the balance of the Defendants. In fact, Joan Bakley was **NOT** in excellent health. Documentation demonstrates Joan was suffering from advanced coronary artery disease, diabetes, and kidney failure. In further fact, NACLH was **NOT** willing to reinstate said life policy or <u>any</u> coverage, under <u>any</u> circumstances, all evidence by NACLH company documentation (Exhibit 1).

3. James Dyer had not been the Defendants' active insurance agent since 1997, 13 years prior to the May 21, 2010, contact. (Exhibit 2)

4. The Defendants' actual motivation for their May 21, 2010, contact

Received 08-19-2019 11:20 AM / Circuit Clerk Accepted on 08-19-2019 02:21 PM / Transaction #6227599 / Case #19LA000244
Page 2 of 138

with James Dyer, and for actively soliciting James's assistance, and by executing an "Engagement Agreement" on June 23, 2010, was not to determine Joan Bakley's insurability or for James's assistance in the reinstatement of the $1.9 MM life insurance policy; but rather, to establish a new and current relationship with James Dyer as a pre-planned and calculated act to avoid a tolled statute of limitations issue for the purpose of executing McHenry County Suit # 12 LA 48.

5. In furtherance of the scheme, the Defendants concealed Joan Bakley's 2009 medical reports deeming her uninsurable.

6. The Defendants concealed NACLH statements that they would not reinstate Joan Bakley's policy under any circumstances because of her advanced coronary artery disease, diabetes, and kidney failure. (Exhibit 1B)

7. The Defendants concealed the fact that they were targeting James Dyer, his respective businesses and his Errors and Omissions insurers for suits prior to re-engaging with him June 23, 2010.

8. The Defendants concealed their July 2, 2010, Complaint to NACLH against James Dyer for <u>not</u> informing the Bakleys that their mother's policy was in danger of lapsing. (Exhibit 2B)

9. The Defendants concealed the fact that while they neglected to pay a $3,000 premium on the $1.9 MM NACLH life insurance policy, they had simultaneously purchased three (3) new $10,000,000 life insurance policies from another insurance agent for which they paid a single $10,000,000 premium.

10. The Defendants concealed their dissatisfaction with James Dyer's service under their June 23, 2010, Agreement and failed to provide notice of termination of that Agreement.

11. The Defendants concealed their discussions, meetings, and engagement of Attorney Rodney H. Piercey, Hanson Law Group, and Attorney Timothy Lowrey from James Dyer. (Exhibit 2E)

Received 08-19-2019 11:20 AM / Circuit Clerk Accepted on 08-19-2019 02:21 PM / Transaction #6227599 / Case #19LA000244

12. The Defendants concealed their admissions to filing a frivolous suit against Plaintiff's father, James Dyer, by requesting Plaintiff use "burner" phones (disposable cellular telephones) to prevent possible exposure to authorities. Plaintiff disclosed his ongoing investigations relating to an alleged farmland investment scheme and informed Defendants that calls made to and from Plaintiff's regular cell phone might be compromised. Defendants became increasingly concerned that their frivolous lawsuit and attempts to recover an unwarranted settlement from Plaintiff's father, James Dyer, might be considered insurance fraud. (Exhibit 3)

13. The Defendants concealed their actions and culpability in this possible insurance fraud scheme by making repeated, changing, false statements to the FBI and the US Attorney's Office in Wisconsin and evidenced by more than ten (10) FBI 302 Memorandum of Interviews. The Defendants' false statements alleging they paid Plaintiff more than $900,000 to steal evidence from Plaintiff's father, James Dyer's home and office and from an alleged contact at North American Company for Life and Health (NACLH) as a means of getting a ten (10) million dollar settlement from the Plaintiff's father's Errors and Omissions insurers (as alleged in Wisconsin criminal case 16-CR-100) conflicts completely with the "burner" telephone recordings made by the Defendants, with the email records, with more than ten (10) Consulting Agreements and the Disclosure document. The aforementioned tangible records, including the "burner" telephone recordings, by contrast, state the Defendants will pay the Plaintiff's father $200,000 for filing a frivolous suit against him, and Plaintiff more than $900,000 for structuring a settlement and release from a possible countersuit by Plaintiff's father, James Dyer. (Exhibit 3)

14. The Defendants concealed their repeated disclosure of the Consulting Agreement and its terms to multiple parties while providing written and verbal attestations to Plaintiff that they had not and would not disclosure the

Received 08-19-2019 11:20 AM / Circuit Clerk Accepted on 08-19-2019 02:21 PM / Transaction #6227599 / Case #19LA000244

existance or terms of the Consulting Agreement. (Exh. 3E, 4, & Disclosure Doc.)

15. The Defendants concealed their repeated recordings of telephone conversations and a visit (via video tracking) while providing written and verbal attestations to Plaintiff that they had not and would not record Plaintiff without authorization. (Exhibit 5)

## CAUSE OF ACTION

### COUNT I
### MALICIOUS SURREPTITIOUS RECORDING

Plaintiff hereby alleges in the following and through the facts contained within the "Factual Basis of Claim" that Defendants, including Cindy Jo Bakley, illegally, non-consentually, and SURREPTITIOUSLY recorded Plaintiff, Todd. A. Dyer, and his alleged alter ego(s) (i.e. "Robert") on multiple occassions without Plaintiff's knowledge in direct violation of Illinois State Statute providing for actual damages, punitive damages, and the option of additional criminal sanctions. The Wiretapping and Eavesdropping Laws and statutes in Illinois have adapted, changed, and morphed over time, with the most recent being made law in 2014 -- known as the Wiretapping and Eavesdropping Law of 2014, or Public Act 098-1142. This specific Illinois statute provides for monetary sanctions against anyone who "intentionally intercepts or endeavors to intercept any conversation or communication, and any wire, oral, verbal, or electronic communication without the express consent of both or all parties involved in the communication." (720 Ill. Comp. Stat. 5/14) This type of recording is defined by Illinois statute as being made or produced in a "SURREPTITIOUS" manner - meaning, the conversation or communication was made or produced without the consent or knowledge of another party to the conversation. As further documented in both the "Historical Background" and in the "Factual Basis of Claim," beginning on or about April 2013, Plaintiff established a mutual

Received 08-19-2019 11:20 AM / Circuit Clerk Accepted on 08-19-2019 02:21 PM / Transaction #6227599 / Case #19LA000244
Page 5 of 138

business relationship involving the settlement of a legal dispute with the ultimate goal being a mutual release of liability for the Defendants in a civil matter with Plaintiff's father, James Dyer. Because of the private and priviledged information being discussed and transacted, Defendants desired their communications remain private and free of oversight. This expectation of privacy was memorialized in written format via multiple (more than ten) "Consulting Agreements" mutually executed by Plaintiff and Defendants, and also in multiple requests by Plaintiff during telephone conversations in which he asked Defendants **SPECIFICALLY** if the calls or conversations were being recorded. At no point did Plaintiff give direct consent, implied consent, or any form of authorization to any of the Defendants to be recorded. Plaintiff did not become aware of the fact that Defendants, including Cindy Jo Bakley, recorded their phone calls which she estimated could total up to seventy-five (75) calls until Plaintiff reviewed discovery which revealed Cindy Jo Bakley's cooperation with and admittance in FBI 302's of her production of SURREPTITIOUS phone call recordings. Plaintiff maintains his protection from being recorded illegally under Illinois State Statute and also United States civil and criminal code. These admitted, repeated, malicious, SURREPTITIOUS, non-consentual, unauthorized, and concealed recordings by Defendants constitute a violation of the Illinois Wiretapping and Eavesdropping Law of 2014 and support Plaintiff's request for actual and punitive damages.

Based on the foregoing, Plaintiff requests this Honorable Court find in favor of the Plaintiff. Plaintiff also hereby reserves any and all other rights to file a complaint or grievance under Illinois criminal statute as well as federal civil and criminal statutes.

Received 08-19-2019 11:20 AM / Circuit Clerk Accepted on 08-19-2019 02:21 PM / Transaction #6227599 / Case #19LA000244

## FACTUAL BASIS OF CLAIM

1. Beginning on or about April 2013, Plaintiff and Defendants entered into a series (more than 10) of Consulting Agreements known herein as the "Consulting Agreement" (Exhibit 3E). Defendants execution of more than ten (10) Consulting Agreements eliminates any defenses or an allegation of duress or unknown contents/provisions of said Consulting Agreements. The Consulting Agreement was mutually agreed by both Plaintiff and Defendants and was construed in a legal and lawful manner and never were any illegal or unlawful service or conduct expected or implied by either party. Defendants later falsely memorialized and testified to the FBI that Plaintiff was hired by Defendants to steal evidence from James Dyer, his company, and others in order to induce a suit involving James Dyer's Errors and Omissions insurance. The Defendants' repetitive alterations as to the series of events constitutes perjury. (Exhibit 6)

2. The proposed and intended purpose of mutually entering into the series of Consulting Agreements was that Plaintiff agreed to facilitate a mutually beneficial mediation and release of liability of a tarnished business matter involving Defendants' life insurance placed by Plaintiff's father, James Dyer, and Dyer Planning and Service Corporation, as agent for the North American Company for Life and Health (NACLH), as evidenced in the "Historical Background," and of which Defendants had previously contractually retained as agent in September 1991.

3. Contained within the Consulting Agreement is the existence of a binding non-reliance clause, stating the following:

> "There are no warranties or guarantees expressed or implied other than those listed in the Agreement."

Based upon this clause, Plaintiff and Defendants had a mutual agreement that Plaintiff was to perform the work outlined in the Consulting Agreement and

Received 08-19-2019 11:20 AM / Circuit Clerk Accepted on 08-19-2019 02:21 PM / Transaction #6227599 / Case #19LA000244

that at no time were there nefarious plans such as Defendants, specifically Cindy Jo Bakley, testified to investigators in successive, changing, perjured interviews. (Exhibit 6)

4. As reflected in the "Historical Background," the Defendants' life insurance policy with James Dyer was in a lapsed condition that prevented it from being reinstated or reissued. Initially, Defendants filed suit in McHenry County against James Dyer and his corporate entities. James Dyer, personally and through these entities, intended to countersue the Bakleys, attack the claims alleged in the Complaint, and allege that the Defendants' docketed Complaint was of frivolous and false nature. James Dyer possessed evidence to support this frivolous counterclaim and fully intended to pursue any and all actual and punitive damages against the Defendants as a result of their action. (Exhibit 7)

5. Plaintiff was aware of the Defendants' relationship with James Dyer and his companies and was also aware of the facts surrounding the Complaint and discovered, over time, that the Defendants' claims were mostly frivolous in nature. Plaintiff was employed by James Dyer and his businesses at various points in time, and, as a result, the Defendants' Complaint became conversation between father and son.

6. Plaintiff approached Defendants on or about April 2013 to discuss assisting them in mediating the Complaint and claims with James Dyer. Plaintiff's goal of this mediation was to facilitate and produce a mutual release of liability beneficial to both the Defendants and James Dyer. Plaintiff memorialized the expectations, the intended services provided, and the fees to be paid for the services in the Consulting Agreement by the Defendants. At no time were any other services offered, nor was the Consulting Agreement a guise for some other intended activity. No other oral agreements or representations were binding or to be relied upon. (Exhibits 3E and 8)

Received 08-19-2019 11:20 AM / Circuit Clerk Accepted on 08-19-2019 02:21 PM / Transaction #6227599 / Case #19LA000244

7. Due to the sensitive nature of the matter, the multiple parties involved in mediation negotiations, and the amount of potential damages in lieu of settlement, Plaintiff and Defendants agreed to a mutual non-disclosure and confidentiality agreement and provision within the "Consulting Agreement." This provision protected both parties in the event of a breach, but also provided for protections from illegal or non-consentual recording. (Exhibit 3E)

8. Defendants breached this non-disclosure and confidentiality clause on multiple occasions, triggering a default provision that provided a $500,000.00 penalty for any breach in the form of "Confessed Judgment" that was executed at the time the Consulting Agreement was signed. Plaintiff has filed a motion for Confessed Judgment by default in this Honorable Court. The filing was assigned Case # 18-LA-000315 and has a status hearing on 12/12/2018. (Exhibits 3E & 4)

9. This default and its associated breach of the confidentiality and non-disclosure provisions demonstrate the Defendants' willingness to breach written contracts. This activity also demonstrates precedence of this type of behavior by the Defendants and further proves the length at which the Defendants will go to escape culpability for their behavior, avoid further expense, and also their willingness to give perjured testimony.

10. The Defendants have a tendancy to disguise their intelligence and sophistication levels, portraying themselves as "victims" in scenarios or in convoluted transactions. This portrayal is a "front" and is of fraudulent nature contradicted by their success in business, their self-made net-worth, and explicitly evident in their construction and implementation of a "Private Family Annuity", a technique used by sophisticated, high net-worth families/individuals for complex estate planning purposes. This "Private Family Annuity" was employed by the Defendants to circumvent estate taxes, The "Private Annuity" was also necessitated by the Defendants' knowledge that Joan Bakley was not insurable, and therefore, insurance could not be utilized as a vehicle for estate planning.

Received 08-19-2019 11:20 AM / Circuit Clerk Accepted on 08-19-2019 02:21 PM / Transaction #6227599 / Case #19LA000244

By no means are the Defendants uneducated, simple-minded, vulnerable individuals as they attempt to portray themselves.

11. Through the Consulting Agreement and the "Bakley Disclosure," the Defendants expressed their concerns regarding privacy and disclosure. Both parties mutually agreed to certain expectations that documents not be disclosed or revealed to other parties, that negotiations not be disclosed or revealed to other parties, and that no recordings of any phone calls or visits was being conducted in any manner. (Exhibit 3E, pp. 3 & 4 of 5, § 7.2)

12. The day-to-day normal course of business does not involve the recording of phone calls or visits. Also, the standard course of business conduct does not involve the SURREPTITIOUS recording via audio, video, or still photography during normal negotiations or transactions. The Defendants' use of these devices to record Plaintiff was pre-meditated and intentional and cannot be excused as normal business standards or procedure.

13. In a subsequent federal criminal investigation against Plaintiff, Defendant Cindy Jo Bakley admits to repeatedly recording Plaintiff in FBI Form 302 Memorandum of Interviews. According to investigation documentation, Defendant Cindy Jo Bakley played back some of the referenced recorded calls, and they were indiscernible. At NO point did Plaintiff give, offer, or authorize consent to wiretap or record, in any manner or fashion, ANY of the calls or meetings. This admitted SURREPTITIOUS recording of Plaintiff on behalf of Defendants is a clear violation of consent against Plaintiff and a direct violation of both federal criminal and civil statutes, the Illinois Wiretapping and Eavesdropping Law of 2014, Illinois Criminal Statutes (punishable as a Class 3 felony carrying up to 3 years imprisonment and a criminal fine), Illinois civil statutes, as well as the Federal Electronic Communications and Privacy Act. (Exhibit 5B)

14. Defendants, specifically Cindy Jo Bakley, repeatedly assured Plaintiff

Received 08-19-2019 11:20 AM / Circuit Clerk Accepted on 08-19-2019 02:21 PM / Transaction #6227599 / Case #19LA000244

that visits, meetings, phone conversations, and electronic correspondences were not being recorded in any format and the previously agreed underlying confidentiality doctrine was not being breached. (EXHIBIT 5A)

15. In contradiction to both written and oral assertions and assurances, Defendants gave testimony to investigators from the Federal Bureau of Investigation (FBI) that they had in their possession up to SEVENTY-FIVE (75) TELEPHONIC RECORDINGS involving the Plaintiff and at least ONE (1) PHOTOGRAPHIC/VIDEOGRAPHIC RECORDING. Testimony to this fact has been memorialized in the FBI Form 302 Memorandum of Interviews. A specific violation or breach of this Privacy/Confidentiality Doctrine between the Plaintiff and Defendants occurred on June 3, 2015; on this date, the Defendants admit via sworn testimony that they intended to record the Plaintiff via the use of a "trail camera", set up by Defendant's brother-in-law, to record the Plaintiff during a visit to the Defendants' office to remit payment for services rendered under the Consulting Agreement. On this date, Plaintiff was not available to attend said meeting, so Plaintiff's son, James Joseph Dyer, substituted and became the object of the illegal recording. This pre-planned and intentional act clearly demonstrates the Defendants' malicious intent to illegally and SURREPTITIOUSLY record the Plaintiff repetitively without consent. (Exhibits 6B, 5C, & 5D)

16. Plaintiff did not discover the fact that the referenced recordings were made or of their existence until such time Plaintiff was given discovery evidence in the subsequent IRS and FBI investigation, and Defendant Cindy Jo Bakley testified as to their existence. Plaintiff was not given copies of the non-consentual, SURREPTITIOUS recordings as part of the criminal case's discovery evidence. Plaintiff respectfully requests the Court issue a subpoena upon the Defendants for such recordings as per the Motion attached. (See Motion to Compel - attached)

Received 08-19-2019 11:20 AM / Circuit Clerk Accepted on 08-19-2019 02:21 PM / Transaction #6227599 / Case #19LA000244

17. At no point did Plaintiff give authorization or consent, either directly or implied, to the Defendants to record any meetings or any conversations, or authorize any SURREPTITIOUS recordings in ANY manner. This is in DIRECT violation of Illinois civil and criminal statutes - namely the Illinois Wiretapping and Eavesdropping Law, known as Public Act 098-1142, also known as Illinois SB1342.

18. Plaintiff is not only protected from provisions of the Illinois Wiretapping and Eavesdropping Law of 2014, known as Public Act 098-1142, but is also protected under federal civil and criminal laws - specifically the Federal Electronic Communications Privacy Act. Plaintiff hereby reserves any rights and options to file parallel proceedings under this Federal Act or similar federal, state, or local statutes.

19. Pursuant to the arguments alleged in this Complaint, Plaintiff hereby immediately motions this Honorable Court to order and place upon official record an Order of this Court directing upon the Defendants to preserve any and all recordings involving Plaintiff, his family, or his alleged alter egos; to refrain from any destruction or alteration of said recordings; and to restrict, with penalties, any destruction or alteration of said recordings in any format - telephonic, photographic, videographic, or electronic medium. (Motion to Compel)

20. Plaintiff requests the Court order the Defendants to comprehensively identify for Plaintiff the methods and forms of the SURREPTITIOUS recording, the number of recordings, dates and durations of calls, the make and model of the recording equipment, the date the equipment was purchased and from where, and the last time said recording equipment was inspected and certified for use in production of lawful recording or wiretapping. Shall Defendants respond that the recordings made were produced in a legal manner, or they were directed to by a third party or law enforcement, Plaintiff requests this Court compel the Defendants to produce and provide the subpoena, warrant, or court order autho-

Received 08-19-2019 11:20 AM / Circuit Clerk Accepted on 08-19-2019 02:21 PM / Transaction #6227599 / Case #19LA000244

rizing such recording along with its terms, conditions, constraints, and any other specifically ordered instruction. (Motion to Compel)

21. The Illinois Wiretapping and Eavesdropping Law of 2014, known as Public Act 098-1142, also known as SB 1342, provides for both ACTUAL and PUNITIVE civil damages for plaintiffs or victims subject to illegal, unauthorized, and SURREPTITIOUS recording in lieu of or in the absence of a law enforcement or court-ordered warrant or subpoena, or explicit consent by BOTH parties. (Exhibit 8)

22. Defendants are in violation of this mutual consent doctrine provided under both the Illinois State Statute as well as Federal Law as described in this Complaint and further proven by the attached evidence.

23. Plaintiff respectfully moves this Honorable Court to assess, adjudge, or order ACTUAL monetary damages in favor of the Plaintiff in this Complaint in an amount of NOT LESS than Eight Hundred Thousand Dollars ($800,000.00), and monetary PUNITIVE damages of NOT LESS than Two Million Four Hundred Thousand Dollars ($2,400,000.00), based on the three-times multiplier for punitive damages provided under the Illinois State Law.

24. Based upon the history of the proceeding cases and their longstanding nature between the Plaintiff, Plaintiff's related parties, and the Defendants, Plaintiff respectfully requests the Clerk of Courts to docket this Complaint in the Court of the Honorable Michael Chmiel. Judge Chmiel presided over the previous cases and is well aware and versed on the history of the cases involving Plaintiff and Defendants.

25. Exhibits 1 through 8 and their relevance explanations are incorporated herein by reference into the body of the Complaint.

Received 08-19-2019 11:20 AM / Circuit Clerk Accepted on 08-19-2019 02:21 PM / Transaction #6227599 / Case #19LA000244

## CONCLUSION

Wherefore, Plaintiff respectfully moves, requests, and prays that this Honorable Court find in favor of the Plaintiff and its facts and enter judgment in favor of Plaintiff for monetary damages in the ACTUAL amount of NOT LESS than Eight Hundred Thousand Dollars ($800,000.00), and in the PUNITIVE amount of NOT LESS than Two Million Four Hundred Thousand Dollars ($2,400,000.00), plus the court costs and representation costs of this action and any/all other costs and attorney's fees billed this case. Plaintiff respectfully submits this Complaint in front of this Honorable Court on this 4 th day of November, 2018.

Respectfully submitted,

Todd A. Dyer
Reg. No. 05409-089
F.C.I. Elkton
P.O. Box 10
Lisbon, OH 44432

Received 08-19-2019 11:20 AM / Circuit Clerk Accepted on 08-19-2019 02:21 PM / Transaction #6227599 / Case #19LA000244
Page 14 of 138

000016

DECLARATION

I, Todd A. Dyer, Plaintiff, hereby represent and warrant that this Complait is of valid nature and merit and all of its contents, statements, exhibits, and provisions are true and correct to the best of my knowledge under the penalty of perjury pursuant to Illinois State Statute and Federal criminal statutes on this 9 th day of November, 2018.

Todd A. Dyer
PLAINTIFF

Received 08-19-2019 11:20 AM / Circuit Clerk Accepted on 08-19-2019 02:21 PM / Transaction #6227599 / Case #19LA000244
Page 15 of 138

DECLARATION AND CERTIFICATION

I, Todd A. Dyer, Plaintiff, hereby certify that this Complaint and its attached exhibits have been filed through the Electronic Filing and Processing Service in effect with the Clerk of Courts, McHenry County, Illinois, in accordance with all terms and conditions of said service. A copy of said Complaint and its attached exhibits were also served upon Defendants via first class mail at the following:

Joan Bakley
c/o Cindy Jo Bakley
10900 Church Street
Huntley, IL 60142

I hereby represent and warrant that this Complaint, its attached exhibits, and all facts and documentation relevant are true and correct to the best of my knowledge under penalty of perjury pursuant to Federal and Illinois statutes on this 9 th day of November, 2018.

Todd A. Dyer
PLAINTIFF

Addresses of Remittance:

Todd A. Dyer
Reg. No. 05409-089
F.C.I. Elkton
P.O. Box 10
Lisbon, OH 44432

Melvin E. Krumdick
Managing General Partner
Agri Business Investors Limited Partnership
1178 S. Elmwood Avenue
Oak Park, IL 60304

James Dyer
123 Terrace Drive
Lake Geneva, WI 53147

James Dyer
77750 Seminole
Indian Wells, CA 92210