August 28, 2019

Judge Daniel Johnson
Walworth County Circuit Court
1800 County Road NN, P.O. Box 1001
Elkhorn, WI  53121

Tracy Bolton, Trustee
TAD3 Trust dated December 21, 2016
31615 Tall Grass Road
Lakemoor, IL  60051

Attorney Raymond Doll'Osto
Gimbel, Reilly, Guerin and Brown
330 East Kilbourn Ave., Ste. 1170
Milwaukee, WI  53202

Melvin E. Krumdick, Managing General Partner
Agri Business Investors LIMITED Partnership
1178 S. Elmwood Ave.
Oak Park, IL  60304

Attorney Thomas Santarelli
Madrigrano & Santarelli
1108 56th Street
Kenosha, WI  53140

**FILED**

SEP 0 4 2019

CIRCUIT COURT
WALWORTH COUNTY
KATHLEEN NEVORASKI

Re: The 18CV00804 Mark Borst case

Judge Johnson:

    I am requesting the 18CV00804 Mark and Daniel Borst case record (hereinafter 804Borst) reflect my concerns which, if accurate, call into question the constitutionality of the proceedings in your courtroom.

    My prior appearance before Your Honor always gave me the confidence that the proceedings I had before the Court would receive their due consideration, and that I would be treated fairly. I was impressed with the way in which the Court conducted business, inquiring of each party, "What are you asking me to do?" so that everyone had an opportunity to be heard. Often, you had a compliance officer in the rear of the courtroom.

    Contrary to those prior experiences, I am receiving the filings and transcripts of the 804Borst case and am alarmed by what I believe is inappropriate, attempted interference by Assistant U.S. Attorney (AUSA) Benjamin Proctor and/or the U.S. Attorney's Office in Milwaukee, in clear violation of the Rules of Professional Responsibility, and in potential violation of my and the other plaintiff's First and Fifth Amendment rights to access to the court, to redress grievances, to due process, and to equal protection.

BACKGROUND & STANDING

With all due respect intended, I believe it error for the Court to attempt to preclude me from participating in the 804Borst proceedings or to announce on the record that I have no standing prior to addressing, investigating, or establishing standing. Prisoners or incarcerated individuals retain substantial rights, as I am sure you are aware. Contrary to what Attorney Doll'Osto has alleged, I am not acting, nor do I have any interest in acting as an attorney for Father Krumdick or any of the entities. However, I have documents and evidence that Father Krumdick has never seen as he has been represented by counsel in the 15-CR-115 Farmland (hereinafter 115Farmland) criminal and 804Borst cases. As a result, my familiarity with those evidentiary materials is relevant, and my assistance, essential. The aforementioned cases are, in a way, parallel proceedings. This Court should be made aware of the fact that I am in the process of filing a § 2255 Habeas Corpus petition attacking the constitutionality of the 115Farmland criminal conviction. The government alleged in the 115Farmland criminal case that Midwest and American Farmland Partners were pre-planned schemes to defraud, controlled by me. Father Krumdick's May 2019 Sworn Affidavit documents the fact that I had no control over these entities. By contrast, Father Krumdick and I have always alleged that neither Midwest nor American were fraud schemes, but were well-researched, well-thought-out, expensive business start-ups designed to give an aging population of farmers an alternative to outright sale when liquidity was needed or wanted. Further, that the individuals we organized from agriculture and finance used my prior conviction for securities-related crimes to wrestle our business model, intellectual property, and trade secrets from us and restructure Midwest and American Farmland Partners into publicly traded Farmland Partners, Inc. (FPI:NYSE) in concealed transactions. It is an unfortunate reality that the Plaintiffs in the 804Borst case have been made to deal with these issues later rather than sooner by the Defendant's dilatory tactics and attempts to conceal. The Defendant's denials continue even in the face of multiple civil causes of action, insurmountable evidence, possible criminal charges, and a legitimate, documented offer to settle in lieu of suit, which the Defendants rejected. As I am sure everyone is aware, the act of concealing or an attempt to conceal will only serve to extend any perceived statute of limitations argument attorney Doll'Osto believes exists. Father Krumdick's age, health issues, and my incarceration have added to these complications. It is noteworthy that AUSA Wall acknowledged the possible legitimacy of a civil suit

in a November 14, 2016, email stating:

> "Dear Mr. Dyer:
>
> I do have a response from the FPI attorneys to a number of questions that I asked based on your factual allegations.
>
> The government will be filing those questions and the FPI answers as part of a motion in limine (a motion before trial) regarding your continued pursuit of this issue.
>
> What I can tell you right now is that, first, I am completely satisfied that there is no relationship between AFPC and FPI and in no way did FPI rise from the ashes of AFPC or any other entity to which you were or are connected.
>
> Second, even if there was a direct, straight, and unbending line between AFPC and FPI, in my opinion, it would be completely irrelevant to the allegations in the Farmland indictment. However, as to the civil ramifications, you could be correct regarding the value of your remaining warrants. Not sure about that area.
>
> JRW [(Exhibit 1)]

ENTITIES AND LEGITIMATE STANDING

Plaintiff Agri Business Investors LIMITED Partnership (hereinafter ABILP) is an Illinois limited partnership formed by Rizzo and Diersen Law, Attorney Greg Lacost, at my direction. I was the original Managing General Partner (hereinafter MGP). There are a total of five (5) General Partnership interests (hereinafter GP interests), each with a fixed value of $250,000 per interest. Of the five (5) interests, there is one (1) MGP interest and four (4) Ordinary Authority GP interests. Father Krumdick is currently the MGP. A Trust set up for my children's care and maintenance in 1994 owns one (1) Ordinary Authority GP interest. A Trust set up by my uncle, Dwain Dyer, and Father Krumdick, December 21, 2016, designed to provide for my care and maintenance owns two (2) of the four (4) Ordinary Authority GP interests, and I individually own the one (1) remaining Ordinary Authority GP interest. I have no incidence of ownership or control over the Trusts other than the right to name a new trustee in the event a trustee is acting in a manner contrary to the best interest of the beneficiaries. The two (2) Trusts set up for my and my children's care and maintenance own a combined three (3) of the five (5) total GP interests. Given these facts (which we can document for the Court or Defendant upon request), my and my children's Trusts and my individually-owned GP interest have indirect control over ABILP (Tax ID 46-1102123).

The ABILP is made up of 77,000 Limited Partnership interests (hereinafter LP interests), each with an initial value of $1,000. As an asset, ABILP owns 5,499,000 stock warrants issued by American Farmland Partners Corporation (hereinafter AFPC). ABILP received those stock warrants in exchange for my business model, intellectual property, and trade secrets, and for Mark Borst and Father Krumdick's contributions of time and money toward the development of the business concept, intellectual property, and trade secrets on which publicly traded Farmland Partners, Inc. now operates. My children's Trust owns 5,000 ($5,000,000) of the ABILP LP interests, and the Trust set up by my uncle and Father Krumdick for my benefit owns 10,000 ($10,000,000) ABILP LP interests. To suggest, without investigation or a hearing, that neither I nor my children have standing, a right to participate or the right to assist Father Krumdick, who is the trustee in both of the aforementioned Trusts, would be wildly inaccurate.

We allege and are prepared to prove that American Farmland Partners and Midwest Farmland Partners before it are predecessors to publicly traded Farmland Partners, Inc. (FPI:NYSE) (hereinafter FPI). Publicly traded FPI and its affiliated entities own over one billion dollars ($1,000,000,000) of farmland and are the fastest growing farmland investment fund on the planet. Based on an earlier Agreement with FPI's predecessors, we are entitled to a 10% commission on every piece of farmland acquired. (Exhibit 2) The aforementioned farmland acquisitions were made in just over five (5) years of operations. FPI announced its initial public offering through Milwaukee-based investment bank, Robert W. Baird on March 24, 2014. (Exhibit 3) Coincidentally, this announcement came just five (5) days after Midwest and American Farmland Partners Chairman Nicholas C. Hindman, Sr., resolved his and the company's issues with the State of Illinois, Secretary of State, Securities Department on March 19, 2014. (Exhibit 4) According to Borst, Hindman, FPI, and the government, there is no connection between entities despite Hindman's decades-old history with Baird (Exhibit 5)(Exhibit 6), American moving its offices to Milwaukee in 2010 to be near Milwaukee-based investment bank Robert W. Baird (Exhibit 7), and Hindman's long-standing claim that he would use Milwaukee-based Baird to complete American Farmland Partners' initial public offering (IPO) (Exhibit 8). According to Borst, Hindman, FPI, and the government, these are all coincidences.

QUESTIONABLE BEHAVIOR

Make no mistake, AUSA Proctor's interest, and that of the U.S. Attorney's Office in Milwaukee in the 804Borst case, is nothing noble nor an attempt to protect the Borsts. Rather, AUSA Proctor and the U.S. Attorney's Office's interest in the 804Borst case, like their recent interest and interference in my McHenry County Court cases, is a desperate attempt to preserve convictions made in violation of the laws of the United States and an attempt to maintain the credibility of witnesses who have given untruthful testimony before grand juries and at trial. AUSA Proctor, and U.S. Attorney's Offices, and, dare I say, this Court's behavior, should it choose to be complicit in these activities, is a clear violation of the Constitutional and Civil Rights of Father Krumdick, my children, and me through the various entities and Trusts set up to provide for my and my children's care and maintenance. AUSA Proctor's involvement and interference in the McHenry County Court case 18LA000315 "Bakley Judgment" (hereinafter 315Bakley) and 18LA000436 "Bakley Phone Suit" (hereinafter 436Bakley) (a suit in which a Bakley family member admitted to recording me repeatedly, illegally, and surreptitiously, in violation of state and federal wiretapping law) is documented in a forthcoming Grievance with the State of Wisconsin, Office of Lawyer Regulation. The attached time sheets of Bakley family attorney, Steven Cuda, document the U.S. Attorney's Office's improper involvement in the Bakley civil case. As evidenced by the time sheets, AUSA Benjamin Proctor was involved in the Bakleys' revision of responses to more than 150 Request for Admissions to conceal his Office's receipt of Brady evidence phone recordings (Exhibit 9). Cindy Bakley admitted to recording "Robert" (allegedly me pretending to be from the Middle East) in Form 302 FBI Memorandum of Interviews (Exhibit 10). The government alleged that I used the same disguised voice in the Farmland case and that the voices used in the Bakley case matched those in the 115Farmland case (Exhibit 11). Unbelievably, the government denies having obtained the recordings (Exhibit 12). In Cindy Bakley's June 2019 responses, she now objects to the question of ever having recorded "Robert" (allegedly me) (Exhibit 13). How then did the government match the voices as "identical" if the government never possessed the recordings and no one recorded the calls? The government didn't obtain the recordings from the Bakleys and bring them back to the FBI lab for enhancement? You are witnessing prosecutorial and investigative misconduct at its boldest.

CONFLICT OF INTEREST

While Attorney Doll'Osto attempts to convince this Honorable Court that I should not be allowed to assist Plaintiff Father Krumdick or the entities, not be allowed to listen in on proceedings, and that this Court should issue an Order of Protection, it is actually Attorney Doll'Osto and his firm, Gimbel, Reilly, Guerin and Brown (hereinafter the Guerin firm), whose participation in the 115Farmland criminal case and the 804Borst case which should be the subject of review for a Conflict of Interest. Attorney Doll'Osto's firm, the Guerin firm, previously represented me in a 2001 § 2255 Habeas Corpus petition seeking to vacate the federal 98-CR-176 conviction, case 01-CT-00584 (hereinafter CV584Dyer) (Exhibit 14). The record will reflect the fact that the Guerin firm, through Attorney Thomas Brown, visited me at the Oxford Prison Camp in 2001 relative to the CV584Dyer case and obtained a significant amount of case evidence. As part of our pursuit of relief, through the Habeas petition, the Guerin firm was given access to voluminous 98-CR-176 (hereinafter 176Dyer) case files and discovery. Additionally, in the course of Attorney Brown's representation, I made admissions of guilt relative to those proceedings. The record will reflect the fact that Bort met with the Guerin firm in July 2012 and engaged them shortly thereafter (Exhibit 15). Over the next approximately three (3) year, between the Guerin firm and Attorney Doll'Osto's engagement in July 2012, and the 115Farmland June 9, 2015, indictment, Attorney Doll'Osto worked with the U.S. Attorney's Office in Milwaukee on Borst's behalf, at my expense, convincing the government falsely of the fact that Borst (the firm's new client) was not guilty of any crimes and that Father Krumdick and I (the firm's old client) were guilty of running a fraud scheme using, in part, information the Guerin firm retained from their earlier representation. Two (2) days before trial, six (6) years into the investigation, on December 2, 2016, the government did an "about face", now alleging that Father Krumdick, too, was one of my victims (Exhibit 16). More recently, as the Court is aware, the Guerin firm and Attorney Doll'Osto again allege that Father Krumdick and I were partners and that Father Krumdick is my ventriloquist dummy.

It is in my opinion that the Guerin firm and Attorney Doll'Osto should recuse themselves from these proceedings and immediately inform the 115Farmland criminal case court and the U.S. Attorney's Office in Milwaukee of this conflict of interest. As an alternative, if the Guerin firm and Attorney Doll'Osto

refuse to recuse themselves voluntarily, I believe prudence demands the 804Borst Court order the Defendants to seek alternative representation for the remainder of the proceedings. In the interim, I will be filing a Grievance with the State of Wisconsin, Office of Attorney Regulation against Attorney Doll'Osto and his firm and reporting the ongoings to the Department of Justice in Washington and the respective courts in Milwaukee.

                                          Respectfully submitted,

                                          Todd A. Dyer
                                          Reg. No. 05409-089
                                          F.C.I. Elkton
                                          P.O. Box 10
                                          Lisbon, OH  44432