UNITED STATES OF AMERICA,

          Plaintiff,

    v.                            Case No. 19-cv-1319-pp

TODD A. DYER,

          Defendant.

## ORDER GRANTING IN PART GOVERNMENT'S MOTION FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 2) AND SETTING DATE FOR HEARING ON REQUEST FOR PROTECTIVE ORDER

On September 11, 2019, the government filed a complaint, alleging that the defendant has harassed and continues harass the victims in his underlying federal criminal cases, Case No. 15-cr-115-JPS and Case No. 16-cr-100-pp, including Mark Borst, Blakely Construction, Cindy Blakely and Borst and Blakely's immediate family members. Dkt. No. 1 at ¶2. The government also filed a motion for temporary restraining order and protective order under 18 U.S.C. §1514. Dkt. No. 2. Because §1514(a)(2)(A) does not require notice and the court finds a reasonable probability that the government will prevail on the merits based on the attachments to the verified complaint, the court will grant the motion for temporary restraining order and schedule a hearing as required by the statute.

# I. Application for Temporary Restraining Order and Motion for Protective Order (Dkt. No. 2)

### A. Application for Temporary Restraining Order

Under 18 U.S.C. §1514, also known as the Victim and Witness Protection Act (VWPA), the government may apply for a temporary restraining order or a protective order "prohibiting harassment of a victim or witness in a Federal criminal case." 18 U.S.C. §1514; United States v. Lewis, 411 F.3d 838, 843 (7th Cir. 2005). The court must find, based on an affidavit or verified complaint, that there are reasonable grounds to believe that harassment of an identified victim or witness exists. 18 U.S.C. §1514(a)(1). The statute defines the term "harassment" as "a serious act or course of conduct directed at a specific person that—(i) causes substantial emotional distress in such person; and (ii) serves no legitimate purpose." §1514(d)(1)(B)(i)-(ii). The term "course of conduct" means "a series of acts over a period of time, however short, indicating a continuity of purpose." §1514(d)(1)(A).

A court may issue a temporary restraining order without oral or written notice to the defendant if the court finds, on written certification of the facts by the government, that notice should not be required and that there is a reasonable probability that the government will prevail on the merits. 18 U.S.C. §1514(a)(2)(A). Any restraining order without notice must include the date and hour that the court issues it, 18 U.S.C. §1514(a)(2)(B), and it shall expire no later than fourteen days from the date of issuance, 18 U.S.C. §1514(a)(2)(C). The order itself must contain, in specific terms and reasonable detail, the acts to be restrained. 18 U.S.C. §1514(a)(2)(F).

In connection with the application for restraining order, the government cites 18 U.S.C. §3771, which identifies the rights of crime victims. The statute includes the right to be reasonably protected from the accused, and the right to be treated with fairness and with respect for the victim's dignity and privacy. 18 U.S.C. §§3771(a)(1) and (8). The crime victim and the attorney for the government may assert the rights described in §3771. 18 U.S.C. §3771(d)(1).

B.  Motion for Protective Order

The government also asks for a protective order. Section 1514(a)(2)(D) states that when the court issues a temporary restraining order without notice, "the motion for a protective order shall be set down for hearing at the earliest possible time and takes precedence over all matters except older matters of the same character . . . ." Section §1514(b)(1) requires the court to issue a protective order "prohibiting harassment of a victim or witness in a Federal criminal case or investigation if the court, after a hearing, finds by a preponderance of the evidence that harassment of an identified victim or witness in a Federal criminal case exists . . . ." At the hearing on the protective order, the defendant has the right to present evidence and cross-examine witnesses. 18 U.S.C. §1514(b)(3). If the court enters a protective order, it has the discretion to set the appropriate duration necessary to prevent harassment, for up to three years from the date it issues the order. 18 U.S.C. §1514(b)(5). The penalty for violating an order issued under §1514 is a fine, imprisonment of no more than five years, or both. 18 U.S.C. §1514(c).

C.    Analysis

1.    *The background of the defendant's federal convictions.*

The defendant is serving fifteen years following his guilty pleas in two complex fraud schemes involving the Borst and Bakley families. United States v. Dyer, Case Nos. 15-cr-115-JPS and 16-cr-100-pp.

a.    The case before Judge Stadtmueller

In the first scheme, the defendant and others solicited investments in the defendant's companies to purchase farm land; he never purchased any farms or farm land. United States v. Dyer, Case No. 15-cr-115, Dkt. No. 198. The defendant went to trial before a jury. Id., Dkt. No. 201. The trial began on December 5, 2016, with the defendant representing himself.[1] Id. The trial

_____

[1] The defendant has filed a response to the government's request, arguing among other things that he was denied his right to counsel. Dkt. No. 10. On July 10, 2015, Attorney Troy Owens of Owens & Laughlin in Lake in the Hills, Illinois filed a notice of appearance on the defendant's behalf. United States v. Dyer, Case No. 15-cr-115, dkt. no. 17. Owens represented the defendant at the arraignment and plea, id., dkt. no. 23, and continued to represent him until Owens filed a motion to withdraw on August 31, 2015, id., dkt. no. 35. The motion indicated that the defendant and Owens had suffered a breakdown in the attorney/client relationship. Id., Dkt. No. 35. Magistrate Judge William E. Duffin granted the motion, conditioned upon successor counsel filing a notice of appearance. Id., Dkt. No. 38. At a hearing on September 14, 2015, the defendant reported that he'd met with a lawyer but hadn't yet retained him; Magistrate Judge Nancy Joseph held the proceedings in abeyance and set a status conference for September 29, 2015. Id., Dkt. No. 40. At the September 29, 2015 hearing, however, the defendant reported that he'd talked to several attorneys and that none had agreed to represent him. Id., Dkt. No. 42. He asked the court to allow him to represent himself, and indicated that he wanted to file a number of motions, including a response to Attorney Owens' motion to withdraw. Id. Judge Joseph ordered that by October 2, 2015, the defendant needed to file a motion asking to represent himself. Id. The defendant filed that motion on October 5, 2015. Id., Dkt. No. 46. The motion said that the defendant "elects to represent himself." Id. Magistrate Judge Jones granted the motion, noting that the defendant was a certified paralegal

4

(although he hadn't practiced as one), that he had had a prior criminal case and had read criminal law books, and that the defendant had no "physical or mental impairments." <u>Id.</u>, Dkt. No. 48. The defendant advised Judge Jones that he was aware of the Federal Rules of Criminal Procedure, the Sentencing Guidelines, the Federal Rules of Evidence and the local rules of this court, that he had access to the rules on line and that he understood the charges. <u>Id.</u> at 1. The defendant also told Judge Jones that no one knew the facts of the case like he did and that he wasn't comfortable with an attorney handling his case. <u>Id.</u> Judge Jones told the defendant that it was a "special burden" to represent oneself at trial, that the defendant had to waive his right to counsel voluntarily and that the defendant would be required to comply with all the rules of the court. <u>Id.</u> at 2. Judge Jones ended up granting the defendant's motion to represent himself, but appointing standby counsel. <u>Id.</u> The hearing lasted thirty-six minutes. <u>Id.</u> at 1. On October 21, 2015, the court appointed Attorney Robert G. LeBell as standby counsel. <u>Id.</u>, Dkt. No. 53. The defendant ended up asking the court to allow LeBell to represent him. <u>Id.</u>, Dkt. No. 58. Judge Jones asked for a recommendation from Federal Defender Services about whether LeBell should be appointed, or whether the defendant would have to retain him. <u>Id.</u> On December 17, 2015, the defendant filed a motion asking permission to liquidate assets to pay counsel. <u>Id.</u>, Dkt. No. 62. That same day, Judge Jones appointed LeBell to represent the defendant. <u>Id.</u>, Dkt. No. 63. On May 18, 2016, Attorney LeBell moved to withdraw as counsel. <u>Id.</u>, Dkt. No. 86. Attorney LeBell, like Attorney Owens, cited a breakdown in the attorney/client relationship. <u>Id.</u>, Dkt. No. 86-1. Judge Jones held a hearing on the motion, <u>id.</u>, dkt. no. 87, and granted the motion on to withdraw on May 31, 2016. On June 10, 2016, the court appointed Attorney Patrick Cafferty as standby counsel. <u>Id.</u>, Dkt. No. 91. On July 14, 2016, Attorney Cafferty moved to withdraw as standby counsel. <u>Id.</u>, Dkt. No. 108. Cafferty indicated that on July 13, 2016, the defendant had contacted him and asked him to withdraw, saying that the defendant wanted to represent himself without the assistance of standby counsel. <u>Id.</u>, Dkt. No. 108-1. Judge Jones held a hearing on this motion, <u>id.</u>, dkt. no. 110, and granted the motion on August 3, 2016. On November 3, 2016, ahead of the trial scheduled for December 5, 2016, the government wrote to the trial judge noting that the defendant was representing himself, without standby counsel. <u>Id.</u>, Dkt. No. 156. The government suggested that it "may be in the interest of the Court and the parties (and certainly [the defendant]), for [the defendant] to have standby legal counsel during the trial—someone with whom [the defendant] can consult during trial for assistance in framing questions, introducing exhibits, etc." <u>Id.</u> While the government acknowledged that the defendant "may be reluctant to take advice from counsel," noting that three attorneys already had been appointed and then had withdrawn, it reminded the court that it had the inherent authority to appoint standby counsel for someone who refused representation. <u>Id.</u> Judge Jones held a hearing on November 10, 2016, at which point the defendant said he had no objection to the court appointing standby counsel. <u>Id.</u>, Dkt. No. 158. Judge

proceeded all day December 5 and 6. Id. at 1–18. On the morning of the third

day of trial, however, the prosecution reported that the defendant had indicated

(through standby counsel) that he wished to enter guilty pleas in the cases

before Judge Stadmueller and this court, and that the government likely would

dismiss a third case pending before Judge Adelman. Id. at 18-19. Judge

Stadtmueller took a recess at 9:06 a.m. to let the parties work through this

new development; he resumed the record at 2:00 p.m., by which time the

defendant had appeared before Magistrate Judge Jones and entered a guilty

plea. Judge Stadtmueller then discharged the jury and scheduled sentencing

for March 1, 2017. Id. at 19. The sentencing hearing was adjourned to March

8, 2017. Id., Dkt. No. 212. On March 7, 2017—the day before the sentencing

hearing—the defendant filed a motion to withdraw his guilty plea. Id., Dkt. No.

221. He alleged that the government had made false statements to the jury

---

Jones recommended that the defendant talk to Federal Defender Services. Id.
Four days later, on November 14, 2016, Judge Jones issued a text-only order
in which he ordered the appointment of standby counsel for the final pretrial
conference and at trial, on the condition that counsel was limited to helping the
defendant with presenting and admitting, or making objections to, evidence.
Judge Jones made clear that standby counsel was not to argue motions or
objections, seek to admit or object to evidence, question witnesses or draft
motions or arguments, and that under no circumstances would standby
counsel convert to lead counsel. Judge Jones said, "[The defendant] has waived
his right to counsel and has chosen to represent himself in this matter. His
decision will be respected. It will also be enforced. Standby counsel shall only
serve in the standby role and no other." On November 15, 2016, Attorney
Christopher Donovan filed a notice of appearance as standby counsel. Id., Dkt.
No. 161. The same day, Attorney Donovan's law partner, Martin Pruhs, also
filed a notice of appearance as standby counsel. Id., Dkt. No. 163. The jury trial
began on December 5, 2016, id., dkt. no. 201; on December 7, 2016, an
executed plea agreement was filed, signed by the defendant and by standby
counsel Pruhs, id., dkt. no. 198.

during trial and had presented perjured testimony. Id. at 2. He stated that the court and the prosecutors had "frustrated" him into pleading guilty, and that he pled guilty "temporarily in order to obtain sufficient time to prepare a defense that proved witnesses were committing perjury and robbing" him of his right to a fair trial. Id. at 3.[2] He also argued that the court had made comments showing that it had prejudged Dyer and was prejudiced toward him. Id. at 5–13. At the March 8, 2017 sentencing, Judge Stadtmueller found that the motion to withdraw the guilty plea was "without merit." Id., Dkt. No. 229 at 1. Judge Stadtmueller sentenced the defendant to serve 180 months in prison and ordered him to pay $1,802,483 in restitution to the victims (including $453,417 to Mark Borst). Id., Dkt. No. 231 at 5.

      b.      The case before Judge Pepper

In the second scheme, the defendant convinced Joan Bakley and her family that the insurance agent who had written Bakley's life insurance policy had made himself the beneficiary of the policy—a fact which Dyer knew was not true. United States v. Dyer, Case No. 16-cr-100, Dkt. No. 30 at 16. As the Bakley's "consultant," he had them sign consulting agreements, took $937,000 from their family and used it for his own purposes. Id. The defendant signed a plea agreement on December 7, 2016—the third day of the aborted trial before

---

[2] In the pleading he has filed in this current case, received by the court on September 30, 2019, the defendant stated, "I admitted guilt on only one day and that was the day I plead guilty, no doubt a result of my unmedicated bipolar illness of which there is a voluminous record." Dkt. No. 10 at 2.

Judge Stadtmueller.[3] Id. at 15. This court scheduled a sentencing hearing for March 7, 2017. Id., Dkt. No. 31. The sentencing was adjourned to March 23, 2017. That day, the court received a letter from the defendant, claiming that he had pled guilty in this case because he had not received a fair trial in the case before Judge Stadtmueller. Id., Dkt. No. 43 at 2.[4] He asserted that the judge had said prejudicial things before the jury, that the prosecutors had presented perjured testimony to the jury and that he also was seeking to withdraw his guilty plea in the case before Judge Stadtmueller. Id. at 2–3. This court orally denied the defendant's motion to withdraw his guilty plea during the March 23, 2017 sentencing hearing. Id., Dkt. No. 47 at 1–2. This court sentenced the defendant to serve 110 months imprisonment (concurrent with the term imposed by Judge Stadtmueller), along with three years of supervised release and ordered the defendant to pay $937,000 in restitution to Bakley Construction. Id., Dkt. No. 48 at 4.

---

[3] The grand jury indicted the defendant in case no. 16-cr-100 on June 28, 2016—two weeks after Patrick Cafferty was appointed standby counsel for the defendant in the case before Judge Stadtmueller. United States v. Dyer, Case No. 16-cr-100, Dkt. No. 1. Judge Jones conducted the arraignment, at which the defendant noted that he was representing himself in his other cases and wanted to represent himself in this one. Id., Dkt. No. 6 at 1. An attorney from Federal Defender Services was present as standby counsel for the arraignment. Id. The plea agreement in this case was signed by the defendant and his standby counsel from the case before Judge Stadtmueller, Attorney Pruhs. Id. at Dkt. No. 30, page 15.

[4] As noted in footnote 2, in this case, the defendant has asserted that he pled guilty because of unmedicated bipolar illness. Dkt. No. 10 at 2.

c. The appeal of both cases

The Seventh Circuit Court of Appeals affirmed the convictions in United States v. Dyer, 892 F.3d 910 (7th Cir. 2018).

2. *The evidence of harassment.*

a. The Backleys

The attachments to the verified complaint in this case begin with a November 27, 2017 letter to Cindy Bakley. In that letter, the defendant threatens to file a complaint for breach of contract against Bakley because she disclosed their "advisory/consulting" agreement to her "attorney, the FBI, the IRS, and the U.S. Attorneys Office." Dkt. No. 1–7 at 1. The defendant reminds Bakley that he had "strongly" suggested she not talk to the FBI. Id. He warns there will be another "indictment," says that Bakley has exposed her family to liability and threatens perjury charges if she denies the allegations in the new indictment when deposed by his father's attorney. Id. at 2.

The defendant sent Cindy Bakley a second letter on January 3, 2018, titled "Breach and Violation of Non-Disclosure Agreement and Demand of Payment." Dkt. No. 1-8 at 1. That letter states that the Bakley family breached their non-disclosure agreement with the defendant by showing the agreement to the FBI. Id.

On September 12, 2018, the defendant filed a lawsuit in McHenry County, Illinois against Cindy Bakley and her family based on the alleged breach of the consulting agreement. Dkt. No. 1-11; see Dyer v. Bakley, *et al.*, Case No. 18LA315 (McHenry County Circuit Court, Judge Costello presiding),

accessible at https://www.mchenrycountyil.gov/county-government/departments-a-i/circuit-clerk/online-services (last visited September 17, 2019). The defendant sought judgment in the amount of $500,000. Id. at 4.

On October 3, 2018, the defendant sent a fax addressed to Joan, Cindy, Kathleen and Ken Bakley, saying that he "filed a judgment for $500,000" for the family's breach of the advisory/consulting agreement. Dkt. No. 1-9 at 1. He said that he would go to the local police and the FBI, and that he would ask for the judge who heard the Bakleys' case against his father to hear the lawsuit he had filed against them. Id. The defendant also said that he "feel[s] the need to point out the risks should [the Bakley's] decide not to seek a settlement outside the purview of the Court." Id. He asserted that the judge would view the Bakleys' allegations against him as "outrageous, perhaps criminal," and warns that if the Bakleys proceeded with their version of the facts, they would open themselves up "to extreme liability from my dad and Attorney Hanlon for a civil suit if you have not already settled with him." Id.

On December 31, 2018, the defendant filed a second lawsuit in McHenry County against Joan Bakley, the Joan Bakley Trust, Cindy Jo Bakley, Kenneth Bakley, Jr., Kathleen Jensen and the Bakley Construction company, alleging that they committed fraud by making "repeated, changing, false statements to the FBI and the US Attorney's Office in Wisconsin." Dkt. No. 1-12 at 4; see Dyer v. Bakley, et al., Case No. 18LA436 (McHenry County Circuit Court, Judge Costello presiding), accessible at

https://www.mchenrycountyil.gov/county-government/departments-a-i/circuit-clerk/online-services (last visited September 17, 2019). He accused the Bakleys of recording telephone conversations in violation of Illinois "Wiretapping and Eavesdropping Laws."[5] Id. at 5. In that case, the defendant sought "actual" damages of not less than $800,000 and punitive damages in the amount of $2,400,000. Id. at 14.

In a letter to the Bakleys' attorney dated May 24, 2019, the defendant stated his belief that the lawsuits he'd filed against the Bakley family subjected them to "significant civil and potential criminal liability." Dkt. No. 1-10 at 1. He demanded that the Bakleys loan his company $1,000,000 on a sixty-month note at 1% over prime with principal and interest due at maturity, that they give him a sworn statement disclosing who they had given the telephone recordings and when, and give him a sworn affidavit "disclosing whether or not you were contacted by my father and/or Attorney Hanlon and/or if the Bakleys settled with my father since my incarceration." Id. at 1–2. The defendant represented that, in exchange, he would dismiss with prejudice the two cases he'd filed against the Bakleys, indemnify them against future litigation, agree "not to participate in any civil or criminal proceedings to the best of [his] ability within the confines of legal behavior," and "work with you and/or the Backleys to counter any attempts by my father and his counsel to bring suit against the Bakleys with evidence not in his or your clients possession." Id. at 2. The

---

[5] The government represents that it was not a violation of Illinois law to record the calls. See 720 ILCS 5/14-3(i).

defendant also stated that if the Bakleys had not settled with his father, *he* would settle with his father out of the loan proceeds from the Bakleys on their behalf, *and* that his company would sign a second note that would "allow the Bakley family to recover the consulting fees paid to me in connection with the May 1, 2015 Consulting Agreement in the event [his] settlement with publicly traded Farmland Partners . . . surpassed a certain benchmark level minus [his] tax obligation on that income," stating that by his estimate, "[t]he second note will be for approximately $600,000." Id. He concluded this letter by asking counsel to contact him if the terms were acceptable, and asking counsel to give his condolences to the Bakleys "regarding their mother's passing." Id.

On June 25, 2019, the McHenry County Circuit Court dismissed Case No. 18LA315, with prejudice. Dyer v. Joan Bakley Trust, *et al.*, Case No. 18LA315 (McHenry County Circuit Court, Judge Costello presiding), https://www.mchenrycountyil.gov/county-government/departments-a-i/circuit-clerk/online-services (last visited September 17, 2019). The government states in its brief that by this time, the Bakleys had spent $13,868 to defend the suit, along with $85 in costs.[6] Dkt. No. 3 at 6.

Less than two months later, on August 19, 2019, the plaintiff filed a third lawsuit in McHenry County Circuit Court. Dkt. No. 1-13; see Dyer v. Joan

---

[6] The McHenry County Circuit Court dismissed the second lawsuit on June 25, 2019 for lack of prosecution. Dyer v. Bakley, *et al.*, Case No. 18LA436 (McHenry County Circuit Court, Judge Costello presiding), accessible at https://www.mchenrycountyil.gov/county-government/departments-a-i/circuit-clerk/online-services (last visited September 17, 2019).

Bakley, *et al.*, Case No. 19LA244 (McHenry County Circuit Court, Judge Costello presiding), accessible at https://www.mchenrycountyil.gov/county-government/departments-a-i/circuit-clerk/online-services (last visited September 17, 2019). The complaint involved the events surrounding the insurance policy and the consulting agreement—the same events that gave rise to the defendant's conviction before this court, and the same events involved in the two previous McHenry County lawsuits he'd filed. In the third lawsuit, the defendant seeks "actual" damages of $800,000 and punitive damages of $2,400.00. Id. at 14. That case remains pending; there is a scheduling conference scheduled for November 18, 2019 at 9:00 a.m.

b.    Mark Borst

As for Mark Borst, the government provided an undated letter from Melvin Krumdick (a codefendant in the farmland case), written on the letterhead of one of the defendant's companies, threatening to file a lawsuit against Borst, Borst's wife and their marital property. Dkt. No. 1-14. Borst's attorney responded with a cease and desist letter. Dkt. No. 1-15. In a letter dated October 29, 2018, the defendant himself responded to Borst's attorney. Dkt. No. 1-16. The defendant claimed that Borst's attorney could be disbarred if he failed to investigate Borst's conduct in connection with the underlying fraud. Id. at 1. He indicated that he was looking for "a settlement commensurate with our original agreement and information that will allow us to proceed against the others involved . . . ." Id.

On December 21, 2018, Krumdick (in his individual capacity, as the "Managing General Partner of the Agri Business Investors LIMITED Partnerhship, and in his capacity as "trustee for the Todd A. Dyer Irrevocable Trust") filed a complaint against Mark, Daniel and Sydney Borst in Walworth County Circuit Court. <u>Krumdick v. Mark Borst, *et al.*</u>, Case No. 2018CV804 (Walworth County Circuit Court, Judge Johnson presiding), accessible at https://wcca.wicourts.gov (last visited September 17, 2019). Krumdick filed an amended complaint on February 20, 2019. Dkt. No. 1-17. The suit involves the facts that gave rise to the defendant's conviction in the case before Judge Stadtmueller; it seeks judgment in excess of $77,000,000. <u>Id.</u> at 5.

The government provided a letter from the defendant, dated May 21, 2019 and addressed to Borst's attorney, in which he stated that "we" would be amending the first amended complaint in the Walworth County case, to include the defendant as a plaintiff. Dkt. No. 1-18. The defendant expresses the belief that once discovery is complete, "you will see no need to attempt allowing your client to proceed to trial." <u>Id.</u>

The government also provided what appears to be an email message dated June 22, 2019 from the defendant to Krumdick, asking to confirm that Krumdick wanted the defendant to sign Krumdick's name and forward requests for admission to Borst's attorney. Dkt. No. 1-19 at 2. There appears to be a response from Krumdick on June 24, 2019, saying, "Todd, Yes, confirmation for you to sign my name as necessary for papers for the Mark Borst case." <u>Id.</u> In a letter dated the following day—June 25, 2019—from the

defendant, sent (according to the letter) by certified mail to Borst's attorney, the defendant indicates that he is sending Borst's counsel "Set No. 1 of the Request for Admissions for Walworth County Court Case No. 18CV000804." Id. at 1. The government attached this request for admissions; it consists of twenty-five pages containing 106 requests for admission. Id. at 3-27. The mailing envelope bears a return address of the defendant's incarceration facility, and his BOP inmate number. Id. at 28-29.

This case remains pending before the Walworth County Circuit Court; the public docket indicates that there is a status conference scheduled for November 21, 2019, a final pretrial conference scheduled for December 3, 2019 and a trial scheduled for December 9-11, 2019. Krumdick v. Mark Borst, et al., Case No. 2018CV804 (Walworth County Circuit Court, Judge Johnson presiding), accessible at https://wcca.wicourts.gov (last visited September 17, 2019).

       3.     *Requested Relief*

          a.     Injunctive relief against defendant Dyer

The government's proposed order contains the following language:

A.     Todd Dyer is temporarily enjoined from:

(i) directly or indirectly contacting or attempting to contact any witness or victim in Criminal Case Nos. 15-CR-115 (E.D. Wis.) or 16-CR-100 (E.D. Wis.), including Mark Borst, Bakley Construction, Cindy Bakley, or any immediate family member or representative of Mr. Borst or Ms. Bakley; or

(ii) directly or indirectly initiating, participating in, or continuing any state or federal lawsuit or appeal against any witness or victim in Criminal Case Nos. 15-CR-115 (E.D. Wis.) and 16-CR-100 (E.D. Wis.), including against Mark Borst, Bakley Construction, Cindy

Bakley, or any immediate family member or representative of Mr. Borst or Ms. Bakley, without prior approval from this Court.

Dkt. No. 7 at 1-2.

### b. Injunction of state court proceedings

The government's proposed order contains the following language:

B. Proceedings in the following lawsuits are temporarily enjoined:

(i) *Krumdick, et al. v. Borst, et al.*, Case No. 2018CV000804, State of Wisconsin Circuit Court for Walworth County;
(ii) *Dyer v. Bakley, et al.*, Appellate Case No. 19-0568, Appellate Court of Illinois, Second District; and
(iii) *Dyer, et al. v. Bakley, et al.*, Case No. 19LA00244, Circuit Court of the 22nd Judicial Circuit, McHenry County, Illinois.

Id. at 2.

### 4. *Application of the law to the facts*

### a. Enjoining Dyer from contacting witnesses or victims

The government's evidence has established that the defendant has engaged in a "course of conduct" within the meaning of 18 U.S.C. §1514. His harassment of the Bakleys began on November 27, 2017 with a letter to the Bakleys and continues with the 2019 case filed in McHenry County Circuit Court. The harassment of Borst began with the undated letter from Krumdick and continues through the lawsuit in Walworth County, including the recent service of 106 interrogatories on Borst's attorney.

In both cases, the defendant is demanding from the victims of the fraudulent schemes he has been convicted of committing the money he attempted to obtain by the very frauds that led to those convictions. In order to coerce them in to complying with his demands, the defendant threatens the

victims with embarrassment, expense, and costly, burdensome litigation. These threatening, bullying contacts, while portraying himself as the victim and asserting that he is protecting himself from the victims, seem the very definition of harassment.

The defendant accuses the victims of cooperating with federal authorities, taping their conversations, and breaching the agreements that were part of his fraudulent schemes. Indeed, in the case of the Bakleys, he appears to be trying to revive the scheme that led to his conviction, by "offering" to help them work out their problems with his father in exchange for a hefty consulting fee. While the defendant attempted to withdraw his guilty pleas in his federal cases, the Seventh Circuit affirmed his convictions, verifying that he is guilty of the fraud schemes in both cases. The evidence the government has presented provides "reasonable grounds to believe that harassment of an identified victim . . . in a Federal criminal case exists." 18 U.S.C. §1514(a)(1). The evidence shows that the defendant has committed "a serious act or course of conduct directed at . . . specific [people] that—(i) causes substantial emotional distress in such person; and (ii) serves no legitimate purpose." §1514(d)(1)(B)(i)-(ii). It shows that he has committed these acts over a period of time—November 2017 to the present as to the Bakleys and at least October 2018 to the present as to Borst—and that the acts "indicat[e] a continuity of purpose." §1514(d)(1)(A).

The court will grant the government's motion for a temporary restraining order enjoining the defendant from directly or indirectly contacting or

attempting to contact any witness or victim in Criminal Case Nos. 15-cr-115 (E.D. Wis.) or 16-cr-100 (E.D. Wis.), including Mark Borst, Bakley Construction, Cindy Bakley, or any immediate family member or representative of Mr. Borst or Ms. Bakley.

> b. Enjoining Dyer from participating in or continuing the pending state court lawsuits

The evidence also supports a conclusion that the defendant is suing the victims of his fraud schemes to either recover monies or force actions that he attempted to obtain or force by means of the fraudulent schemes.

In <u>United States v. Lewis</u>, 411 F.3d 838 (7th Cir. 2005), the defendant argued that the fact that he filed a civil lawsuit "could not, as a matter of law, constitute harassment for purposes of § 1514, because the act of filing a lawsuit does not constitute a 'course of conduct' as § 1514 defines that term." <u>Lewis</u>, 411 F.3d at 843. The defendant also argued that he filed his lawsuit in good faith for the purpose of asserting his rights, and that "the simple act of filing a lawsuit is incapable of causing substantial emotional distress." <u>Id.</u> at 844. The Seventh Circuit disagreed that filing a civil lawsuit could not constitute harassment. <u>Id.</u> at 845. Noting that the Supreme Court had found that lawsuits could constitute harassment for the purposes of restraining trade under antitrust laws, the court stated, "we see no reason why they cannot also be a form of harassment for the Victim Witness and Protection Act, 18 U.S.C. § 1514(c)." <u>Id.</u> (citing <u>Vendo Co. v. Lektro-Vend Corp.</u>, 433 U.S. 623 (1977)).

The government acknowledges that 28 U.S.C. §2283 (the Anti-Injunction Act) arguably could bar a federal court from issuing an injunction like the one it seeks here. The Anti-Injunction Act states that

> [a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. §2283. The statute is a "necessary concomitant of the Framers' decision to authorize, and Congress' decision to implement, a dual system of federal and state courts." Smith v. Bayer Corp., 564 U.S. 299, 306 (2011) (quoting Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 146 (1988)). The Supreme Court has explained that "[t]he statute is designed to prevent conflict between federal and state courts." Leiter Minerals, Inc. v. United States, 352 U.S. 220, 225 (1957). "By generally barring [frequent federal court] intervention, the Act forestalls 'the inevitable friction between the state and federal courts that ensues from the injunction of state judicial proceedings by a federal court.'" Chick Kam Choo, 486 U.S. at 146 (quoting Vendo, 433 U.S. at 630, 631).

The Anti-Injunction Act provides three exceptions to the prohibition against federal courts granting injunctions to stay proceedings in state courts. The first exception occurs if a federal injunction is "expressly authorized by Act of Congress." The second is if the federal injunction is "necessary in aid of [the federal court's] jurisdiction." The third is where the injunction is necessary for the federal court "to protect or effectuate its judgments." These exceptions are "narrow and are not to be enlarged by loose statutory construction." Smith,

19

564 U.S. at 306 (quoting <u>Atlantic Coast Line R. Co. v. Locomotive Engineers</u>, 398 U.S. 281, 282 (1970)).

The government contends that the bar does not apply to requests for injunctive relief by the United States. Dkt. No. 3 at 12. The government also asserts that 18 U.S.C. §1514 specifically authorizes the government to seek injunctions to prohibit harassment of federal victims and witnesses. <u>Id.</u>

In <u>United States v. Tison</u>, 780 F.2d 1569 (11th Cir. 1986), the Eleventh Circuit affirmed a district court's order enjoining criminal defendants and their counsel "from bringing a state civil action for slander against a prospective Government witness involved in a federal criminal trial." <u>Tison</u>, 780 F.2d at 1570. The court found that in passing §1514, Congress intended the criminal provisions, accompanied by the civil protective provision, to reach the threat of otherwise lawful conduct if such conduct was . . . harassing." <u>Id.</u> at 1572. It concluded that "[f]iling a civil lawsuit to avoid the restrictions on criminal discovery and thereby obtain documents that a defendant ordinarily would not be entitled to for use in his criminal case, while at the same time attempting to intimidate a witness from providing accurate information to federal law officials is exactly the kind of harassment this legislation was designed to eliminate." <u>Id.</u> at 1573.

In <u>Lewis</u>, the Seventh Circuit considered a district court's order restraining two criminal defendants from proceeding in lawsuits they'd filed against a witness against them. <u>Lewis</u>, 411 F.3d at 841. While the court indicated that "there might have been some question about the Anti-Injunction

Act when the district court initially entered its temporary restraining order and the protective order," that concern "evaporated" when the victim removed the cases to state court. Id. at 845. The court then said, "[w]e add that it is by no means clear that the Anti-Injunction Act would have prohibited [the district court's] order." Id. Noting that one of the exceptions to the Anti-Injunction Act's bar on federal courts enjoining someone from proceeding in state court is a case where a federal statute creates "a specific and uniquely federal right or remedy, enforceable in a federal court of equity, that could be frustrated if the federal court were not empowered to enjoin a state court proceeding," the Seventh Circuit said that "[s]ection 1514 may well satisfy that test." Id., quoting Mitchum v. Foster, 407 U.S. 225, 237–38 (1972).

In In re Grand Jury Subpoena, 267 F. Supp. 3d 741 (N.D. Tex. 2016), the government asked the district court to enjoin employees who were targets of a federal investigation from continuing a state civil lawsuit against other employees who intended to cooperate in the federal investigation. The district court found that §1514 was an exception to the Anti-Injunction Act. Id. at 744 (citing United States v. Camick, 2014 WL 644997, at *2 (D. Kan. Feb. 19, 2014)). It granted the government's motion, and ordered that "respondents and any of their affiliates or agents, are enjoined from continuing [the lawsuit] until the conclusion of the government's criminal investigation into [the target company] . . . ." Id. at 750. On appeal, the Fifth Circuit held that the district court had the authority to issue the injunction, on the ground that the Anti-Injunction Act did not apply when the United States was seeking the

21

injunction. In re Grand Jury Subpoena, 866 F.3d 231, 233 n.2 (5th Cir. 2017), citing Leiter Minerals, 352 U.S. at 225-26; NLRB v. Nash-Finch Co., 404 U.S. 138, 145-47 (1971); United States v. Lemaire, 826 F.2d 387, 388 n.2 (5th Cir. 1987).

The court concludes that §1514 is an act of Congress that expressly authorizes the court to enjoin the defendant from proceeding in the state court cases against his victims. The court will grant the government's motion for a temporary restraining order enjoining the defendant from directly or indirectly initiating, participating in, or continuing any state or federal lawsuit or appeal against any witness or victim in Criminal Case Nos. 15-CR-115 (E.D. Wis.) and 16-CR-100 (E.D. Wis.), including against Mark Borst, Bakley Construction, Cindy Bakley, or any immediate family member or representative of Mr. Borst or Ms. Bakley, without prior approval from this Court.

c.     Enjoining the pending state court lawsuits themselves

The government finally requests that the court enjoin the state court lawsuits themselves. The court declines this request at this stage.

First, the court notes that there are no hearings scheduled in the state cases until November 18 (a scheduling conference in the McHenry County, Illinois case) and November 21 (a status conference in the Walworth County, Wisconsin case).

More to the point, the court has concerns about enjoining state court proceedings, as opposed to enjoining the *defendant* from participating in the state court proceedings. In the cases the court discussed above, the courts

enjoined *individuals* from pursuing litigation against victims or witnesses. They did not enjoin the state courts themselves. In support of its assertion that this court may enjoin the state courts themselves, the government cites <u>Leiter Minerals</u>, 352 U.S. at 225-26; <u>Nash-Finch Co.</u>, 404 U.S. at 145-47; and <u>In re Grand Jury Subpoena</u>, 866 F.3d at 233-234.

It is true that the Supreme Court held in <u>Leiter Minerals</u> that "[t]he frustration of superior federal interests that would ensue from precluding the Federal Government from obtaining a stay of state court proceedings except under the severe restrictions of 28 U.S.C. s 2283, would be so great that we cannot reasonably impute such a purpose to Congress from the general language of 28 U.S.C. s 2283, alone." <u>Leiter Minerals</u>, 352 U.S. at 226. But the <u>Leiter Minerals</u> Court was considering a situation in which the federal government sought a stay of state proceedings "to prevent threatened irreparable injury to a national interest"—the ownership of mineral rights under land owned by the United States. <u>Id.</u> In that case, "a private party [was] seeking by a state proceeding to obtain property currently in the hands of persons holding under the United States," and the "United States [was] seeking to protect that possession and quiet title by a federal court proceeding." <u>Id.</u> at 228. Because the federal government's position was "essentially a defensive one," the court believed that the federal government should be allowed to choose the forum, "even though the state litigation has the elements of an action characterized as quasi in rem." <u>Id.</u>

In Nash-Finch Co., the National Labor Relations Board sought an injunction from the federal court to restrain the enforcement of a state-court injunction limiting union picketing activities, arguing that the state court's order had "regulated conduct governed exclusively by the National Labor Relations Act." Nash-Finch Co., 404 U.S. at 374. The Supreme Court concluded that "there is an implied authority of the Board, in spite of the command of s 2283, to enjoin state action where its federal power preempts the field." Id. at 377. The Court held, "The purpose of s 2283 was to avoid unseemly conflict between the state and the federal courts where the litigants were private persons, not to hamstring the Federal Government and its agencies in the use of federal courts to protect federal rights." Id. at 378.

These cases involve the federal government acting to protect national interests—ownership of federal mineral rights, or exclusive federal jurisdiction. Section 1514 undoubtedly protects the interests of the federal government in protecting federal victims and witnesses. The court will wait, however, to take such a drastic step until it has conducted the hearing on the motion for the protective order.

## II.    Hearing on Motion for Protective Order

The government also asks the court to issue a protective order continuing the injunction for a period of three years. Dkt. No. 2 at 2. Under 18 U.S.C. §1514(b)(1), the court "shall" issue a protective order if, after a hearing, the court finds by a preponderance of the evidence that the defendant has harassed a victim or a witness. At such a hearing, the defendant has a right to

present evidence, and to cross-examine witnesses. 18 U.S.C. §1514(b)(3). The court is required to hold the hearing no later than fourteen days after issuance of a temporary injunction. 18 U.S.C. §1514(b)(2).

Below, the court has scheduled the hearing for the protective order for Friday, October 11, 2019 at 9:00 a.m. Because the defendant is in custody, the court will arrange with his institution to have him appear by telephone. As the court has discussed in footnotes above, it is aware that in the underlying criminal cases, the defendant elected to represent himself and, while he had standby counsel, wanted that counsel's participation to be very limited. The court will contact the Federal Defender to arrange to have standby counsel available for the October 11, 2019 hearing, on whatever terms the defendant chooses. The court will notify the defendant of the identity of the standby counsel prior to the hearing date, so that he may communicate with counsel if he wishes.

### III.    Conclusion

The court **GRANTS IN PART** the plaintiff's motion for temporary restraining order. Dkt. No. 2.

The court **TEMPORARILY ENJOINS** the defendant from directly or indirectly contacting or attempting to contact any witness or victim in Criminal Case Nos. 15-cr-115 (E.D. Wis.) or 16-cr-100 (E.D. Wis.), including Mark Borst, Bakley Construction, Cindy Bakley, or any immediate family member or representative of Mark Borst or Cindy Bakley.

The court **TEMPORARILY ENJOINS** the defendant from directly or indirectly initiating, participating in, or continuing any state or federal lawsuit or appeal against any witness or victim in Criminal Case Nos. 15-cr-115 (E.D. Wis.) and 16-cr-100 (E.D. Wis.), including against Mark Borst, Bakley Construction, Cindy Bakley, or any immediate family member or representative of Mark Borst or Cindy Bakley, without prior approval from this Court.

The court **ORDERS** that this temporary restraining order shall remain in full force and effect for fourteen days from the date of the order until 4:00 p.m. (central time) on **Wednesday, October 16, 2019**, unless sooner modified or dissolved by this court, or unless extended in accordance with 18 U.S.C. §1514(a)(2)(C). The court enters the temporary restraining order at 4:00 p.m. (central time) on Wednesday, October 2, 2019.

The court **ORDERS** that the parties shall appear for a hearing on the government's motion for a protective order on **Friday, October 11, 2019 at 9:00 a.m.** (central time) in Room 222 of the Federal Courthouse, 517 East Wisconsin Avenue, Milwaukee, Wisconsin 53202. The court will arrange with the staff at F.C.I. Elkton for the defendant to appear by telephone.

Dated in Milwaukee, Wisconsin this 2nd day of October, 2019.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**

26