UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

           Plaintiff,

v.                                                  Case No. 19-cv-1319

TODD DYER,

           Defendant.

---

## PLAINTIFF'S PREHEARING BRIEF

---

The United States of America ("United States") respectfully submits this brief in advance of the hearing on the United States's motion for a protective order scheduled for October 11, 2019 at 9:00 a.m. Because the harassment in this case consists largely of civil litigation in state courts, the Court may find that the United States has discharged its burden under 18 U.S.C. §1514(b)(1) based solely upon materials of which the Court may take judicial notice. This brief is submitted in order to define the issues, avoid the unnecessary presentation of evidence concerning matters that cannot legitimately be contested, and to protect victims from further harassment. 18 U.S.C. § 3771(a)(identifying the rights of crime victims).

## PRELIMINARY STATEMENT

In his response to the United States's motion for a protective order, defendant Todd Dyer ("Dyer") attempts to mount a wide-ranging challenge to the validity of his convictions in the Farmland Case (15-CR-115) and the Insurance Case (16-CR-100), and to argue the merits of his current lawsuits against his victims. (*See generally* ECF 10.) However, neither the validity of Dyer's criminal convictions nor the merits of his lawsuits against his victims is at issue in this

1

case. The only question before the Court is whether a preponderance of the evidence establishes that harassment of an identified victim or witness in a Federal criminal case exists. 18 U.S.C. §1514(b)(1).

At the October 11 hearing, the United States intends to present testimony from victims of Dyer's harassment concerning how Dyer's threatened and actual litigation against them has caused them substantial emotional distress. *See* 18 U.S.C. § 1514(d)(1)(B)(i). The Court should not permit Dyer to use his right to present evidence and cross-examine witnesses as an opportunity to further harass his victims by delving into irrelevant matters or worse, accusing his victims of wrongdoing. As explained below, the Court should ensure that any cross-examination or presentation of evidence by Dyer is limited to the few and narrow issues relevant to the Court's determination under 18 U.S.C. § 1514(b)(1).

## ARGUMENT

### I. The Court Should Take Judicial Notice Of Dyer's Plea Agreements, Restitution Orders, and State Court Filings.

To the extent possible, the United States intends to confine its presentation of documentary evidence at the hearing to the materials attached as Exhibits 1-24 of the Verified Complaint. In addition to simplifying the parties' presentation of evidence, this will ensure that Dyer has copies of all of the United States's exhibits, notwithstanding the fact that he will not attend the hearing in-person.[1]

The majority of these documents are documents that were publicly filed with federal or state courts, including the following documents:

---

[1] In his response (ECF 10), Dyer acknowledges that he has received a "'copy and paste' version of the government's filing" (ECF 10, p. 2.). The United States is awaiting confirmation that Dyer has received personal service of the Verified Complaint and exhibits, and will notify the Court when it has received such confirmation.

2

- The Indictments in the Farmland Case and Insurance Case (ECF 1-1, 1-2)
- The Plea Agreements in the Insurance Case and Farmland Case (ECF 1-3, 1-4)
- The Judgments in the Insurance Case and Farmland Case (ECF 1-5, 1-6)
- The "Motion of Judgment by Confession and Default" filed in the Circuit Court of the 22nd Judicial Circuit in McHenry County, Illinois, Case 18LA000315 (ECF 1-11)
- The Complaint filed in the Circuit Court of the 22nd Judicial Circuit in McHenry County, Illinois, Case 18LA000436 (ECF 1-12)
- The Complaint filed in the Circuit Court of the 22nd Judicial Circuit in McHenry County, Illinois, Case 19LA000244 (ECF 1-13)
- The First Amended Complaint filed in Walworth County Circuit Court in Case No. 2018CV000804 (ECF 1-17)
- The letter from AUSA Benjamin Procter filed with the McHenry County Circuit Court in Case No. 18LA000315 (ECF 1-20)
- The Order of Dismissal in McHenry County, Illinois Case No. 18LA315 (ECF 1-21, p. 1)
- The Notice of Appeal filed in McHenry County, Illinois Case No. 18 LA 000315 (ECF 1-21, p. 2)
- The Docketing Statement in Appellate Case No. 19-0568 in the Appellate Court of Illinois, Second District (ECF 1-21, pp. 3-10)
- The August 28, 2019 letter from Dyer to Judge Johnson in Walworth County Circuit Court Case No. 2018CV000804 (ECF 1-24)

Pursuant to Federal Rule of Evidence 201(c), the United States requests that the Court take judicial notice of the plea agreement and judgments of conviction as proof of the facts recited therein; and that the Court take judicial notice of the materials filed in various state courts against Dyer's victims to establish that they were filed and to show their contents (but not as proof of the truth of their contents). *See, e.g., Scherr v. Mariott Intern., Inc.,* 703 F.3d 1069, 1073 (7th Cir. 2013)("We may take judicial notice of documents that are part of the public record, including pleadings, orders, and transcripts from prior proceedings in the case."); *Virnich v. Vowald,* 664 F.3d 206, 209 (7th Cir. 2011)(taking "judicial notice of the relevant state court proceedings"); *Ennenga v. Starns,* 677 F.3d 766, 774 (7th Cir. 2012)(finding that the district court properly "took

3

judicial notice of the dates on which certain actions were taken or were required to be taken in the earlier state-court litigation—facts readily ascertainable from the public court record and not subject to reasonable dispute"); *Scholes v. Lehmann,* 56 F.3d 750, 762 (7th Cir. 1995)("Admissions—in a guilty plea, as elsewhere—are admissions; they bind a party; and the veracity safeguards surrounding a plea agreement that is accepted as the basis for a guilty plea and resulting conviction actually exceed those surrounding a deposition"); *Frankfurt v. Mega Entm't Grp. II,* No. 15 CV 667, 2018 WL 488258, at *2n.5 (N.D. Ill. Jan. 19, 2018)("Regardless, [plaintiff] requests that judicial notice be taken of a complete copy of the plea agreement and the facts recited therein. That request is granted. Judicial notice may be taken of facts recited in a plea agreement."); *Minnesota Lawyers Mut. Ins. Co. v. Conour,* No. 1:12-cv-1671-WTL-MJD, 2014 WL 5089290, at *5 (S.D. Ind. Oct. 8, 2014)("The Court takes judicial notice of the criminal proceedings against [defendant] and the fact that [defendant] is under a Restitution Order by the criminal court.").

> **II.  The Court Should Find As A Matter Of Law That Cindy Bakley, Bakley Construction, And Mark Borst Are "Victims" Under 18 U.S.C. § 1514 And That Dyer's Litigation Against Them Constitutes A Course Of Conduct That Serves No Legitimate Purpose.**

While the United States intends to present additional evidence at the hearing concerning Dyer's harassment of victims prior to his actual initiation of state court litigation against them, the above publicly-filed documents—of which the Court may and should take judicial notice—satisfy the elements of 18 U.S.C. § 1514 on their own. In advance of the hearing, the Court should find that Cindy Bakley, Bakley Construction, and Mark Borst are "victims" within the meaning of 18 U.S.C. § 1514(b)(1); that Dyer has engaged in a course of conduct directed towards "specific

4

person[s]"[2] as defined in 18 U.S.C. § 1514(d)(1)(A), (G); that Dyer's conduct serves no legitimate purpose, 18 U.S.C. § 1514(d)(1)(B)(ii); and that Dyer's conduct has caused the objects of his harassment substantial emotional distress. 18 U.S.C. § 1514(d)(1)(B)(i).

> A. **The Court Should Find As A Matter Of Law That Cindy Bakley, Bakley Construction, And Mark Borst Are "Victims" Within The Scope Of 18 U.S.C. § 1514.**

The plea agreements and restitution orders in the Insurance Case and Farmland Case each establish that Cindy Bakley, Bakley Construction, and Mark Borst are victims of Dyer's fraud schemes.[3] *See* 18 U.S.C. § 3771(e)(defining a "victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense or an offense in the District of Columbia"); *Nat'l Treasury Emps. Union v. Chertoff,* 452 F.3d 839, 857 (D.C. Cir. 2006)("There is a presumption that Congress uses the same term consistently in different statutes"); *Smith v. City of Jackson, Miss.,* 544 U.S. 228, 233 (2005)(beginning statutory interpretation "with the premise that when Congress uses the same language in two statutes having similar purposes, particularly when one is enacted shortly after the other, it is appropriate to presume that Congress intended that text to have the same meaning in both statutes"). In the plea agreement in the Insurance Case, Dyer admitted that he harmed Cindy Bakley and other members of the "Joan B." (Joan Bakley) family by engaging in an elaborate fraud scheme against them. (EDWI Case No. 16-CR-100, ECF 30; *also* ECF 1-3, pp. 2-3.) The restitution order entered in the Insurance Case reflects that the

---

[2] A "specific person" is defined as "a victim or witness in a Federal criminal case or investigation, and includes an immediate family member of such victim or witness." 18 U.S.C. § 1514(d)(1)(G); *see also* 18 U.S.C. § 1514(d)(1)(C)(incorporating definition of "immediate family member" in 18 U.S.C. § 115(c)(2), which includes a spouse, parent, brother or sister, or child or person to whom the individual stands in loco parentis, and any other person living in the individual's household related to him or her by blood or marriage, and also including grandchildren).

[3] The evidence presented at the hearing will also establish that Ms. Bakley and Mr. Borst are "witnesses" within the meaning of 18 U.S.C. § 1514.

5

fraud scheme resulted in a restitution order of $937,000 in favor of the Bakley Construction company, further illustrating the significance of the harm that Dyer's fraud caused the Bakley family and Bakley Construction. (*See* ECF 1-5, p. 4.) Likewise, in the plea agreement in the Farmland Case Dyer admitted that he knowingly devised and participated in a scheme to defraud multiple victims. (EDWI Case No. 15-CR-115, ECF 98; ECF 1-4, pp. 2 & 16-21.) The restitution order specifically identifies those victims, including Mark Borst (to whom Dyer owes $453,417) and others, and confirms the extent of the financial harm that Dyer's conduct caused his victims. (ECF 1-6, pp. 5-6.)

Thus, Cindy Bakley, Bakley Construction and Mark Borst are victims of Dyer's crimes as a matter of law. The United States requests that the Court treat Cindy Bakley, Bakley Construction, and Mark Borst's status as victims as established, and that the Court preclude Dyer from attempting to cross examine his victims concerning their status as such at the October 11 hearing.

> **B**. **The Court Should Find As A Matter Of Law That Dyer's Repeated State Court Filings Constitute A "Course Of Conduct" As Defined In 18 U.S.C. § 1514(d)(1)(A).**

The publicly-filed court records already before the Court also establish that Dyer's repeated state court filings against his victims in Wisconsin and Illinois state courts constitutes a "series of acts over a period of time . . . indicating a continuity of purpose." 18 U.S.C. § 1514(d)(1)(A)(defining "course of conduct"). The Court should so find as a matter of law. However, as noted above, to assist the Court's analysis of the United States's motion for a protective order, the United States also intends to present evidence at the hearing concerning Dyer's contacts with his victims and actions prior to his initiation of litigation against them,

6

including the various threatening letters provided with the United States's Verified Complaint. (*See* ECF 1-7, 1-8, 1-9, 1-10, 1-14, 1-16, 1-18.)

> **C. The Evidence Will Show that Dyer's Harassment Has Caused His Victims Substantial Emotional Distress.**

In *U.S. v. Tison*, 780 F.2d 1569 (11th Cir. 1986), which also involved "harassment" under 18 U.S.C. § 1514 that consisted of state court litigation, the court noted that "[t]he substantial emotional distress prong of the harassment test is virtually conceded" and that the defendant had stipulated at the hearing that "'the prospect of being sued is likely to be worrisome to anybody.'" *Id.* at 1571-72. Here, too, there is no serious question that Dyer's lawsuits against his victims—in which he demands hundreds of thousands or millions of dollars from individuals whom he already defrauded—has caused them substantial emotional distress, and Dyer does not attempt to dispute this in his response. (*See* ECF 10; *see also* ECF 1-22, 1-23.) Nevertheless, to assist the Court's analysis of this matter, if necessary, at the October 11 hearing Cindy Bakley, Mark Borst, and Mr. Borst's wife, Sydney Borst, will testify concerning the impact that Dyer's threatened and actual litigation has had on them, including the substantial emotional distress that they have experienced as a result of Dyer's actions.

> **D. The Court Should Find As A Matter Of Law That Dyer's State Court Litigation Against His Victims Serves No Legitimate Purpose.**

Based on Dyer's recent submission to the Court (ECF 10), the United States anticipates that at the October 11 hearing Dyer will attempt to challenge the validity of his criminal convictions or argue the purported merits of his claims against his victims. The Court should not permit him to do so. In addition to being a waste of time and resources, permitting Dyer to argue the merits of his criminal convictions or claims against his victims could result in Dyer further harassing his victims at the hearing. The finding of harassment is warranted based on the face of

7

Case 2:19-cv-01319-PP   Filed 10/09/19   Page 7 of 11   Document 14

Dyer's pleadings alone, and the Court should find as a matter of law that Dyer's lawsuits against his victims serve no legitimate purpose.

Although Dyer's state court filings appear to be frivolous on their face, the analysis under 18 U.S.C. § 1514(d)(1)(B) is not tantamount to a frivolousness inquiry. *See In re Grand Jury Subpoena,* 267 F. Supp. 3d 741, 749 (N.D. Tex. 2016)(noting that a lawsuit "need not be totally devoid of merit to be part of a course of conduct that serves no legitimate purpose" and granting injunction where "the government has proved by a preponderance of the evidence that this is not the purpose for Company's bringing the lawsuit"). The relevant issue is simply whether Dyer's claims against his victims—whatever they are—are brought for a legitimate purpose. Dyer's own representations to this Court and to state courts demonstrate that the lawsuits have no legitimate purpose.

First, Dyer's filings show that he is motivated by a desire to simply harass his victims for the purpose of causing them emotional distress, which is not a legitimate purpose. *See* 18 U.S.C. § 1514. As the Court put it in its October 2, 2019 Order, Dyer's "threatening, bullying contacts, while portraying himself as the victim and asserting that he is protecting himself from the victims, seem the very definition of harassment." (ECF 12, p. 17.)

Relatedly, Dyer's filings make clear that he is retaliating against his victims for their cooperation with law enforcement in connection with his conviction. This is not a legitimate purpose. Indeed, in addition to requiring a Court to grant a protective order to prevent harassment of a victim or witness, 18 U.S.C. § 1514(b)(1) also requires entry of a protective order if necessary "to prevent and restrain an offense . . . under section 1513 of [title 18]." As is relevant here, Section 18 U.S.C. § 1513(e) provides that:

> Whoever knowingly, with intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for

8

providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 1513(e). In addition to easily satisfying the definition of "harassment," the United States anticipates that the evidence presented at the hearing will also demonstrate that Dyer's state court litigation against his victims has been harmful to them and could potentially interfere with their lawful employment or livelihood. Thus, the United States respectfully requests that the Court find that a protective order is necessary to prevent and restrain an offense under 18 U.S.C. § 1513 as a separate, additional basis for granting the United States's motion for a protective order.

Further, it is clear from Dyer's submissions that his litigation against his victims is motivated by an irrational belief that if he applies enough pressure, they will help him overturn his convictions in the Farmland Case and Insurance Case. Indeed, in his correspondence of May 24, 2019 with the Bakley's attorney, Dyer offered to "settle" his suit if the Bakley's loaned him $1,000,000 and gave him "a sworn affidavit . . . disclosing who and when they gave the telephone records to (U.S. Attorney's Office, IRS, and/or FBI) and/or if the recordings were destroyed in lieu of turning them over to me." (ECF 1-10, p. 2.) The reference to the "recordings" is peppered throughout Dyer's correspondence with this Court attempting to attack his conviction. (*See e.g.*, EDWI Case No. 19-CV-752, ECF 6-10.) As this Court has already correctly observed, however, the Seventh Circuit Court of Appeals has affirmed Dyer's convictions, "verifying that he is guilty of the fraud schemes in both cases." (ECF 12, p. 17.) A civil lawsuit against victims is simply not a legitimate vehicle for Dyer to challenge his criminal convictions.

Finally, Dyer is also simply seeking money from his victims—victims he has already defrauded out of hundreds of thousands of dollars. Given that Dyer already owes nearly $3 million in restitution to his victims in the Insurance Case and the Farmland Case (including $453,517 to

9

Case 2:19-cv-01319-PP   Filed 10/09/19   Page 9 of 11   Document 14

Mark Borst, and $937,000 to Bakley Construction), his attempt to obtain even more money from these same victims is not a legitimate purpose.

In sum, a review of Dyer's publicly filed documents in his lawsuits against his victims, when viewed in light of Dyer's plea agreements and restitution orders, precludes Dyer from establishing that his lawsuits against his victims serve any legitimate purpose. Accordingly, the Court should find that Dyer's lawsuits serve no legitimate purpose as a matter of law.

## CONCLUSION

For the reasons explained above, the United States respectfully requests that the Court take judicial notice of the documents identified above, and that based on those documents the Court find as a matter of law that Cindy Bakley, Bakley Construction, and Mark Borst are victims and that Dyer's state court lawsuits against them constitute a course of conduct that serve no legitimate purpose. The evidence that the United States will present at the October 11 hearing will confirm that Dyer's conduct has caused his victims substantial emotional distress. The Court should also enter a protective order for the separate, independent reason that such order is necessary to prevent and restrain an offense under 18 U.S.C. § 1513.

As requested in the United States's Verified Complaint and motion for a protective order, the United States requests that the protective order, for a term of three years, 18 U.S.C. § 1514(b)(5):

(a) prohibit Dyer from (i) directly or indirectly contacting or attempting to contact any witness or victim in Criminal Case Nos. 15-CR-115 (E.D. Wis.) or 16-CR-100 (E.D. Wis.), including Mark Borst, Bakley Construction, Cindy Bakley, or any immediate family member or representative of Mr. Borst or Ms. Bakley; or (ii) directly or indirectly initiating, participating in, or continuing any state or federal lawsuit or appeal against any witness or victim in Criminal Case Nos. 15-CR-115 (E.D. Wis.) and 16-CR-100 (E.D. Wis.), including against Mark Borst, Bakley Construction, Cindy Bakley, or any

immediate family member or representative of Mr. Borst or Ms. Bakley, without prior approval from this Court, and

(b) enjoin further proceedings in the following lawsuits, which serve no legitimate purpose and which are causing witnesses and victims substantial emotional distress: (i) *Krumdick, et al. v. Borst, et al.,* Case No. 2018CV000804, State of Wisconsin Circuit Court for Walworth County; (ii) *Dyer v. Bakley, et al.,* Appellate Case No. 19-0568, Appellate Court of Illinois, Second District; and (iii) *Dyer, et al. v. Bakley, et al.,* Case No. 19LA000244, Circuit Court of the 22nd Judicial Circuit, McHenry County, Illinois.

Dated this 9th day of October, 2019.

                                        MATTHEW D. KRUEGER
                                      United States Attorney

By:    /s/ Emily A. Constantine

            EMILY A. CONSTANTINE
            Assistant U.S. Attorney
            Wisconsin Bar No.1087257
            Benjamin W. Proctor
            Wisconsin Bar No. 1051904
            Office of the United States Attorney
            Eastern District of Wisconsin
            517 East Wisconsin Avenue, Room 530
            Milwaukee, WI 53202
            Telephone: (414) 297-1700
            Fax: (414) 297-4394
            emily.constantine@usdoj.gov
            benjamin.proctor@usdoj.gov