UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

          Plaintiff,

v.                                               Case No. 19-cv-1319

TODD DYER,

          Defendant.

**REPLY BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

The United States of America submits this reply in support of its motion for judgment on the pleadings.

## ARGUMENT

**I.    Dyer's Conduct Serves No Legitimate Purpose As A Matter Of Law.**

Todd Dyer's state court lawsuits are premised on allegations that his victims lied to law enforcement, that federal investigators and prosecutors got it wrong, and that Dyer committed no crimes. (*See, e.g.,* ECF 1-13, pp. 4, 7-8; *see generally* ECF 1-11, 1-12; ECF 1-17, pp. 4-5, *see also* ECF 24, ¶ 22.) Because Dyer's criminal convictions have not been invalidated or set aside, under both *Heck v. Humphrey* and offensive collateral estoppel Dyer's lawsuits against his victims, witnesses, and their immediate family members serve no legitimate purpose as a matter of law. None of Dyer's arguments in his response to the United States's motion even remotely suggest otherwise. The Court should grant the United States's motion and enter the requested injunction.

1

A. **Under *Heck v. Humphrey,* Dyer's State Court Lawsuits Are Improper Attempts To Collaterally Attack His Criminal Convictions And Serve No Legitimate Purpose As A Matter Of Law.**

Dyer focuses the majority of his response on whether his state court lawsuits run afoul of the rule articulated in *Heck v. Humphrey,* 512 U.S. 477 (1994). In *Heck,* the Supreme Court held that a civil lawsuit that by its nature challenges the validity of a conviction or sentence is not cognizable unless or until the sentence or conviction is "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck,* 512 U.S. at 487. Although the *Heck* analysis is focused on whether the factual allegations in the civil suit imply the invalidity of the criminal convictions at issue, Dyer avoids any substantive discussion or examination of the factual allegations in his state court lawsuits in his response. Instead, Dyer makes a variety of arguments that are unsupported by the facts or law.

First, Dyer contends that because he is suing his victims and witnesses for "breach of contract," *Heck* does not apply. (ECF 47, p. 1-3.) But how Dyer characterizes his claims does not affect the *Heck* analysis. "*Heck's* logic . . . applies to any claim—including state-law claims—based on factual allegations that are necessarily inconsistent with the validity of a conviction that has been neither reversed, expunged, nor otherwise declared invalid." *Puckett v. Walmart Store & 5823,* No. 3:15-cv-2029-D-BN, 2017 WL 6612944, at *8 (N.D. Tex. Nov. 6, 2017). "Courts have extended *Heck's* rationale . . . to a variety of situations where a plaintiff has been convicted of a federal crime and later files a civil action which, if successful, would necessarily imply the invalidity of the plaintiff's conviction." *Terry v. U.S. Small Business Admin.,*[1] 699 F. Supp. 2d 49,

---

[1] In his response, Dyer attempts to distinguish *Terry* on the grounds that the court dismissed the case for lack of subject matter jurisdiction. Dyer fails to acknowledge that the *Terry* court also

2

55-56 (D.D.C. 2010); *see also, e.g., Davit v. Davit,* 366 F. Supp.2d 641, 653 & n. 10 (N.D. Ill. 2004); *Derrow v. Bales,* No. 06-CV-137, 2007 WL 1511997, at *3 (E.D. Tex. May 22, 2007)(*Heck* barred claims under the APA and Privacy Act).

Dyer offers no explanation or analysis regarding how the factual allegations in his state court lawsuits can be reconciled with the facts conclusively established by his criminal convictions. No such reconciliation is possible. As a result, *Heck* bars Dyer from attempting to show in this proceeding that his state court lawsuits against his victims and witnesses (and associated threatening communications) serve a legitimate purpose.

Dyer next argues that *Heck* does not apply because his state court lawsuits do not undermine his federal convictions. In making this argument, Dyer entirely ignores the actual factual allegations that form the basis for Dyer's state court lawsuits, which are premised on the theory Dyer committed no wrongdoing. For example, Dyer alleges in his state court lawsuit against Bakley Construction and members of the Bakley family that the Bakleys made "repeated . . . false statements to the FBI and U.S. Attorney's Office in Wisconsin" and that they made "false statements alleging they paid [Dyer] more than $900,000 to steal evidence from [Dyer's] father." (ECF 1-13, pp. 4, 7-8; *see generally* ECF 1-11, 1-12). In the litigation against Mark Borst and his family, Dyer alleges that Mark Borst "convinced the State of Wisconsin, Department of Securities, State of Illinois, Securities Department; the FBI, the IRS, the United States Attorney Office in Wisconsin, and investors that [Mark Borst] was a passive, unknowing investor who had been victimized by Dyer and that [Mark Borst] had bought [Dyer's] American Farmland Partners Corporation stock warrants in a 2012 transaction." (ECF 1-17, pp. 4-5, *see also* ECF 24, ¶ 22.)

---

decided the case on the basis of *Heck* as an additional ground for dismissal. *See Terry,* 699 F.Supp.2d at 55-56.

Like the plaintiff in *Okoro* and other cases where *Heck* has applied, Dyer's allegations inescapably imply that his convictions were invalid. *Okoro v. Callaghan,* 324 F.3d 488 (7th Cir. 2003) ("Okoro [plaintiff] adhered steadfastly to his position that there were no drugs, that he was framed; in so arguing, he was making a collateral attack on his conviction, and *Heck* holds that he may not do that in a civil suit, other than a suit under the habeas corpus statute ...."). As in *Okoro,* it is impossible to logically reconcile Dyer's allegations against his victims with his criminal convictions having been valid.

Dyer also attempts to mischaracterize the rule of *Heck* by repeatedly contending, without support, that *Heck* applies only if the state courts lawsuit required an explicit finding that his convictions were invalid. (*See, e.g.,* ECF pp. 4-5). *Heck*'s reach is far broader than Dyer claims. It is irrelevant whether Dyer "disclaims any intention of challenging his conviction; if he makes allegations that are inconsistent with his conviction's having been valid, *Heck* kicks in and bars his civil suit." *Okoro,* 324 F.3d at 490; *Helman v. Duhaime,* 742 F.3d 760, 763 (7th Cir. 2014)(*Heck* barred claim where "Helman's version of the facts would necessarily imply the invalidity of his state court conviction for resisting law enforcement."). Dyer's allegations imply the invalidity of his conviction; as a result, *Heck* precludes him from attempting to prove those allegations or argue that those allegations have merit in this proceeding—whether to try to show that his state court lawsuits serve a legitimate purpose or for any other reason.

> **B.** **Offensive Collateral Estoppel Bars Dyer From Attempting To Show That His State Court Lawsuits Serve A Legitimate Purpose Or Otherwise Have Merit In This Proceeding.**

Dyer incorrectly contends that collateral estoppel does not bar him from attempting to argue the merits of his state court lawsuits in this case because "[c]ollateral [e]stoppel is an affirmative defense that must be pleaded by a party in a civil action" and "the United States is not a party in any of Dyer's state actions and therefore does not have standing to raise the defense of collateral estoppel." (ECF 47, p. 6.) Dyer misrepresents the United States's argument. The United

4

Case 2:19-cv-01319-PP   Filed 06/22/20   Page 4 of 9   Document 50

States is invoking the *offensive* use of collateral estoppel in this proceeding to prevent Dyer from attempting to prove that his state court lawsuits have merit and thus serve a legitimate purpose. *See Allen v. McCurry,* 449 U.S. 90, 94-95 (1980); *Plunkett v. Commissioner,* 465 F.2d 299, 305-07 (7th Cir. 1972).

As explained above and in the United States's opening brief, Dyer's state court lawsuits—like his other communications to the Court—are clear attempts to attack the validity of his criminal convictions accusing his victims and witnesses of lying and criminal wrongdoing and attempting to establish his own innocence. Indeed, in his *pro se* letter to the Court responding to the United States's Complaint and Motion for Temporary Restraining Order in this civil action, Dyer spends four, single-spaced pages asserting that his lawsuits against the victims are justified because he never engaged in any fraud scheme. (*See generally* ECF 10.) Offensive collateral estoppel precludes this type of conduct. It precludes Dyer from attempting to relitigate in this proceeding the factual bases for his convictions, whether under the guise of attempting to show that his lawsuits serve a legitimate purpose or otherwise. *Nathan v. Tenna,* 560 F.2d 761, 763 (7th Cir. 1977) ("In this Circuit, a criminal conviction based upon a guilty plea conclusively establishes for purposes of a subsequent civil proceeding that the defendant engaged in the criminal act for which he was convicted.").

    **C.**    **Dyer's Constitutional Arguments Are Without Merit.**

Dyer also argues that he has "a constitutional right to pursue his state court actions to address his contractual grievances[.]" (ECF 47, p. 8.) But because Dyer is presently incarcerated, Dyer is wrong. The constitutional right to court access does not

> guarantee inmates the wherewithal to transform themselves into litigation engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools [that the law] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigation capacity is simply one of the incident (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey,* 518 U.S. 343, 355 (1996); *see also, e.g., Spencer v. Sommers,* No. 10–cv–288–bbc, 2011 WL 111581, at *3 (W.D. Wis. Jan. 13, 2011)("Because a prisoner's right to access to the courts is limited to challenges to their sentences and confinement, it does not include the right to participate in a John Doe proceeding against a third party. Because the John Doe proceeding plaintiff identifies is one in which he is an alleged victim, not a potential defendant, no constitutional claim can arise from prison officials' alleged interference in plaintiff's attempts to participate in that proceeding.").

In sum, Dyer's harassment of his victims, witnesses, and their immediate family members is not entitled to constitutional protection merely because Dyer has chosen state court lawsuits as the vehicle for his harassment. Dyer's conduct serves no legitimate purpose as a matter of law.

**II.     Dyer Has Engaged In A Course Of Conduct As A Matter Of Law; Dyer's Subjective Intent Is Not Relevant Under 18 U.S.C. § 1514.**

Dyer's sole argument for how his threatening correspondence and lawsuits against his victims do not constitute a course of conduct is his contention that "the 'course of conduct' in 18 U.S.C. § 1514(d)(1)(A) requires a showing of an intent to cause substantial emotional distress." In support of this claim, Dyer cites *United States v. Lolo,* No. 8:18-CR-133-T-17AEP, 2018 WL 6619803 (M.D. Fla. Dec. 18, 2018), which is entirely inapposite. The *Lolo* decision did not construe or even mention 18 U.S.C. §1514(d)(1)(B). *See generally id.*

The plain language of Section 1514 defeats Dyer's claim that the definition of "course of conduct" requires an intent to cause substantial emotional distress. Section 1514(d)(1)(A) defines a "course of conduct" as "a series of acts over a period of time, however short, indicating a continuity of purpose." Dyer's actions towards his victims and witnesses clearly meet this statutory definition, and Dyer does not even attempt to argue otherwise.

6

Based on his faulty premise that the "course of conduct" element includes a scienter requirement, Dyer also argues that "[i]ntent is a material issue of fact that requires an evidentiary hearing." (ECF 47, p. 7.) However, intent is not an issue in this case. *None* of the elements of harassment under 18 U.S.C. § 1514 require an examination of Dyer's subjective intent; rather, whether each of the elements are satisfied is determined with respect to objective criteria (*i.e.* whether Dyer's actions "indicat[e] a continuity of purpose"), or from the perspective of the victim without regard to Dyer's intent (*i.e.* whether Dyer's actions causes a person "substantial emotional distress"). *See* 18 U.S.C. § 1514(d)(1). Thus, Dyer's arguments regarding "intent" are without merit.

**III.   Dyer's Conduct Has Caused His Victims, Witnesses, And Their Immediate Family Members To Experience Substantial Emotional Distress.**

Dyer's only argument for why his repeated threatening letters and lawsuits have not caused the targets of his actions to experience substantial emotional distress is that the statements that Dyer's victims provided that are on file with the Court are not "under oath." (ECF 47, p. 7.) This argument elevates form over substance; as other courts have recognized, "the prospect of being sued is likely to be worrisome to anybody." *United States v. Tison,* 780 F.2d 1569, 1571-72 (11th Cir. 1986). Dyer's undisputed conduct is sufficiently offensive and outrageous that emotional distress should be presumed. *C.f., Aiello v. Providian Financial Corp.,* 257 B.R. 245, 250 (N.D. Ill. Bankr. 2000)(explaining that in bankruptcy context "emotional distress can be reasonably presumed where the stay violation is sufficiently offensive"). Other than Dyer's conclusory denial based on lack of information or knowledge (ECF 24, ¶¶ 19, 25), Dyer has provided no reason to

7

Case 2:19-cv-01319-PP   Filed 06/22/20   Page 7 of 9   Document 50

call into question whether his conduct has caused his victims to experience substantial emotional distress.[2]

To the extent that the Court finds that the record is not sufficient with respect to whether Dyer's conduct has caused his victims to experience substantial emotional address, this would be the sole issue to be addressed at a hearing in this matter. Should the Court require a hearing on this narrow issue, the United States requests that Dyer be required to submit any cross-examination questions to the Court in advance to ensure that Dyer's victims, witnesses, and their family members are not subjected to further harassment in the form of irrelevant, abusive, or otherwise improper questions.

---

[2] As noted in the government's various filings in this case, Dyer's lawsuits against his victims, witnesses, and their immediate family members have caused them substantial emotional distress and have cost them thousands of dollars in legal fees. Those costs continue to accumulate—while this federal civil case has been pending, the state courts considering Dyer's suits have continued to hold hearings and order briefing. *See, e.g.*, *Dyer v. Bakley, et al.*, Case No. 19LA00244 (McHenry Co. Ill.)(holding scheduling conference on Nov. 18, 2019, and "status checks" on Nov. 22, 2019, and Feb. 25, 2020); *Krumdick v. Borst, et al.*, Case No. 2018CV00804 (Walworth Co. Wis.) (per CCAP, denying defendants' motion to stay proceedings based on federal proceedings, holding hearing on March 13, 2020 with counsel, and ordering further briefing on motions).

## **CONCLUSION**

For the foregoing reasons, and for the reasons explained in the United States's opening brief, the United States respectfully requests that the Court grant its motion for judgment on the pleadings and enter the requested protective Order. (ECF 2.)

Dated this 22nd day of June, 2020.

        MATTHEW D. KRUEGER
        United States Attorney

By:   s/  *Emily A. Constantine*

        EMILY A. CONSTANTINE
        Assistant United States Attorney
        Wisconsin Bar No.1087257
        Office of the United States Attorney
        Eastern District of Wisconsin
        517 East Wisconsin Avenue, Room 530
        Milwaukee, WI 53202
        Telephone: (414) 297-1704
        Fax: (414) 297-4394
        emily.constantine@usdoj.gov