UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

  v.                              Case No. 19-cv-1319-pp

TODD A. DYER,

        Defendant.

## ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS (DKT. NO. 43)

## I.    Introduction

On September 11, 2019, the government filed a complaint seeking a temporary restraining order and protective order against the defendant under 18 U.S.C. §§1514 and 3771. Dkt. No. 1. The complaint alleges that the defendant harassed victims and witnesses from his previous criminal cases by filing lawsuits against them in state court. Id. at 9. Under 18 U.S. §1514, a defendant has a right to a hearing where he may "present evidence and cross-examine witnesses." 18 U.S.C. 1514(b)(3); dkt. no. 12 at 24-25.

The court scheduled that evidentiary hearing more than once. See Dkt. No. 39 at 1. It adjourned the hearing when defense counsel joined the case, and again when the defendant said that a "significant" witness was not available. Id. At a hearing on February 26, 2020, the government expressed concern that the defendant planned to use the evidentiary hearing to re-litigate

1

his federal criminal convictions. Id. The government also asked the court to allow the parties to brief the question of whether the lawyer representing the defendant in one of the state-court lawsuits could provide expert witness testimony as to whether that lawsuit was filed for legitimate purposes. Id. at 1-2. The court removed the then-scheduled April 13, 2020 evidentiary hearing from the calendar, extended the temporary restraining order and, when the government indicated it was considering filing a motion for summary judgment, gave the government a deadline of March 20, 2020 by which to do so. Id. at 2. The court schedules oral arguments on the summary judgment motion for May 8, 2020 at 1:30 p.m. Id. at 3. The government later asked for an extension of time by which to file the summary judgment motion, dkt. no. 40; the court granted that motion and ordered the government to file its motion by April 3, 2020, with briefing to conclude by May 8, 2020; it removed the May 8, 2020 oral argument from the calendar, dkt. no. 41.

On April 3, 2020, the government filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Dkt. No. 43. The defendant opposes that motion. Dkt. No. 47.

## II. Background

The court's October 2, 2019 order issuing a temporary restraining order (TRO) described the background of the case. Dkt. No. 12 at 4-8.

> The defendant is serving fifteen years following his guilty pleas in two complex fraud schemes involving the Borst and Bakley families. United States v. Dyer, Case Nos. 15-cr-115-JPS and 16-cr-100-pp.

> a. The case before Judge Stadtmueller

2

In the first scheme, the defendant and others solicited investments in the defendant's companies to purchase farm land; he never purchased any farms or farm land. United States v. Dyer, Case No. 15-cr-115, Dkt. No. 198. The defendant went to trial before a jury. Id., Dkt. No. 201. The trial began on December 5, 2016, with the defendant representing himself. [footnote omitted] Id. The trial proceeded all day December 5 and 6. Id. at 1–18. On the morning of the third day of trial, however, the prosecution reported that the defendant had indicated (through standby counsel) that he wished to enter guilty pleas in the cases before Judge Stadmueller and this court, and that the government likely would dismiss a third case pending before Judge Adelman. Id. at 18-19. Judge Stadtmueller took a recess at 9:06 a.m. to let the parties work through this new development; he resumed the record at 2:00 p.m., by which time the defendant had appeared before Magistrate Judge Jones and entered a guilty plea. Judge Stadtmueller then discharged the jury and scheduled sentencing for March 1, 2017. Id. at 19. The sentencing hearing was adjourned to March 8, 2017. Id., Dkt. No. 212. On March 7, 2017—the day before the sentencing hearing—the defendant filed a motion to withdraw his guilty plea. Id., Dkt. No. 221. He alleged that the government had made false statements to the jury during trial and had presented perjured testimony. Id. at 2. He stated that the court and the prosecutors had "frustrated" him into pleading guilty, and that he pled guilty "temporarily in order to obtain sufficient time to prepare a defense that proved witnesses were committing perjury and robbing" him of his right to a fair trial. Id. at 3. [footnote omitted] He also argued that the court had made comments showing that it had prejudged Dyer and was prejudiced toward him. Id. at 5–13. At the March 8, 2017 sentencing, Judge Stadtmueller found that the motion to withdraw the guilty plea was "without merit." Id., Dkt. No. 229 at 1. Judge Stadtmueller sentenced the defendant to serve 180 months in prison and ordered him to pay $1,802,483 in restitution to the victims (including $453,417 to Mark Borst). Id., Dkt. No. 231 at 5.

b.     The case before Judge Pepper

In the second scheme, the defendant convinced Joan Bakley and her family that the insurance agent who had written Bakley's life insurance policy had made himself the beneficiary of the policy—a fact which Dyer knew was not true. United States v. Dyer, Case No. 16-cr-100, Dkt. No. 30 at 16. As the Bakley's "consultant," he had them sign consulting agreements, took $937,000 from their family and used it for his own purposes. Id. The defendant signed a plea agreement on December 7, 2016—the third day of the aborted

3

trial before Judge Stadtmueller. [footnote omitted] Id. at 15. This court scheduled a sentencing hearing for March 7, 2017. Id., Dkt. No. 31. The sentencing was adjourned to March 23, 2017. That day, the court received a letter from the defendant, claiming that he had pled guilty in this case because he had not received a fair trial in the case before Judge Stadtmueller. Id., Dkt. No. 43 at 2. [footnote omitted] He asserted that the judge had said prejudicial things before the jury, that the prosecutors had presented perjured testimony to the jury and that he also was seeking to withdraw his guilty plea in the case before Judge Stadtmueller. Id. at 2–3. This court orally denied the defendant's motion to withdraw his guilty plea during the March 23, 2017 sentencing hearing. Id., Dkt. No. 47 at 1–2. This court sentenced the defendant to serve 110 months imprisonment (concurrent with the term imposed by Judge Stadtmueller), along with three years of supervised release and ordered the defendant to pay $937,000 in restitution to Bakley Construction. Id., Dkt. No. 48 at 4.

### c. The appeal of both cases

The Seventh Circuit Court of Appeals affirmed the convictions in United States v. Dyer, 892 F.3d 910 (7th Cir. 2018).

### 2. *The evidence of harassment.*

### a. The Backleys

The attachments to the verified complaint in this case begin with a November 27, 2017 letter to Cindy Bakley. In that letter, the defendant threatens to file a complaint for breach of contract against Bakley because she disclosed their "advisory/consulting" agreement to her "attorney, the FBI, the IRS, and the U.S. Attorneys Office." Dkt. No. 1–7 at 1. The defendant reminds Bakley that he had "strongly" suggested she not talk to the FBI. Id. He warns there will be another "indictment," says that Bakley has exposed her family to liability and threatens perjury charges if she denies the allegations in the new indictment when deposed by his father's attorney. Id. at 2.

The defendant sent Cindy Bakley a second letter on January 3, 2018, titled "Breach and Violation of Non-Disclosure Agreement and Demand of Payment." Dkt. No. 1-8 at 1. That letter states that the Bakley family breached their non-disclosure agreement with the defendant by showing the agreement to the FBI. Id.

On September 12, 2018, the defendant filed a lawsuit in McHenry County, Illinois against Cindy Bakley and her family based on the alleged breach of the consulting agreement. Dkt. No. 1-11;

4

see Dyer v. Bakley, *et al.*, Case No. 18LA315 (McHenry County Circuit Court, Judge Costello presiding), accessible at https://www.mchenrycountyil.gov/county-government/departments-a-i/circuit-clerk/online-services (last visited September 17, 2019). The defendant sought judgment in the amount of $500,000. Id. at 4.

On October 3, 2018, the defendant sent a fax addressed to Joan, Cindy, Kathleen and Ken Bakley, saying that he "filed a judgment for $500,000" for the family's breach of the advisory/consulting agreement. Dkt. No. 1-9 at 1. He said that he would go to the local police and the FBI, and that he would ask for the judge who heard the Bakleys' case against his father to hear the lawsuit he had filed against them. Id. The defendant also said that he "feel[s] the need to point out the risks should [the Bakley's] decide not to seek a settlement outside the purview of the Court." Id. He asserted that the judge would view the Bakleys' allegations against him as "outrageous, perhaps criminal," and warns that if the Bakleys proceeded with their version of the facts, they would open themselves up "to extreme liability from my dad and Attorney Hanlon for a civil suit if you have not already settled with him." Id.

On December 31, 2018, the defendant filed a second lawsuit in McHenry County against Joan Bakley, the Joan Bakley Trust, Cindy Jo Bakley, Kenneth Bakley, Jr., Kathleen Jensen and the Bakley Construction company, alleging that they committed fraud by making "repeated, changing, false statements to the FBI and the US Attorney's Office in Wisconsin." Dkt. No. 1-12 at 4; see Dyer v. Bakley, *et al.*, Case No. 18LA436 (McHenry County Circuit Court, Judge Costello presiding), accessible at https://www.mchenrycountyil.gov/county-government/departments-a-i/circuit-clerk/online-services (last visited September 17, 2019). He accused the Bakleys of recording telephone conversations in violation of Illinois "Wiretapping and Eavesdropping Laws." [footnote omitted] Id. at 5. In that case, the defendant sought "actual" damages of not less than $800,000 and punitive damages in the amount of $2,400,000. Id. at 14.

In a letter to the Bakleys' attorney dated May 24, 2019, the defendant stated his belief that the lawsuits he'd filed against the Bakley family subjected them to "significant civil and potential criminal liability." Dkt. No. 1-10 at 1. He demanded that the Bakleys loan his company $1,000,000 on a sixty-month note at 1% over prime with principal and interest due at maturity, that they give him a sworn statement disclosing who they had given the telephone recordings and when, and give him a sworn affidavit "disclosing whether or not you were contacted by my father and/or Attorney Hanlon and/or if the Bakleys settled with my father since my incarceration." Id. at 1–2. The defendant represented that, in

5

exchange, he would dismiss with prejudice the two cases he'd filed against the Bakleys, indemnify them against future litigation, agree "not to participate in any civil or criminal proceedings to the best of [his] ability within the confines of legal behavior," and "work with you and/or the Backleys to counter any attempts by my father and his counsel to bring suit against the Bakleys with evidence not in his or your clients possession." Id. at 2. The defendant also stated that if the Bakleys had not settled with his father, *he* would settle with his father out of the loan proceeds from the Bakleys on their behalf, *and* that his company would sign a second note that would "allow the Bakley family to recover the consulting fees paid to me in connection with the May 1, 2015 Consulting Agreement in the event [his] settlement with publicly traded Farmland Partners . . . surpassed a certain benchmark level minus [his] tax obligation on that income," stating that by his estimate, "[t]he second note will be for approximately $600,000." Id. He concluded this letter by asking counsel to contact him if the terms were acceptable, and asking counsel to give his condolences to the Bakleys "regarding their mother's passing." Id.

On June 25, 2019, the McHenry County Circuit Court dismissed Case No. 18LA315, with prejudice. Dyer v. Joan Bakley Trust, *et al.*, Case No. 18LA315 (McHenry County Circuit Court, Judge Costello presiding), https://www.mchenrycountyil.gov/county-government/departments-a-i/circuit-clerk/online-services (last visited September 17, 2019). The government states in its brief that by this time, the Bakleys had spent $13,868 to defend the suit, along with $85 in costs. [from footnote: The McHenry County Circuit Court dismissed the second lawsuit on June 25, 2019 for lack of prosecution. Dyer v. Bakley, *et al.*, Case No. 18LA436 (McHenry County Circuit Court, Judge Costello presiding), accessible at https://www.mchenrycountyil.gov/county-government/departments-a-i/circuit-clerk/online-services (last visited September 17, 2019).] Dkt. No. 3 at 6.

Less than two months later, on August 19, 2019, the plaintiff filed a third lawsuit in McHenry County Circuit Court. Dkt. No. 1-13; see Dyer v. Joan Bakley, *et al.*, Case No. 19LA244 (McHenry County Circuit Court, Judge Costello presiding), accessible at https://www.mchenrycountyil.gov/county-government/departments-a-i/circuit-clerk/online-services (last visited September 17, 2019). The complaint involved the events surrounding the insurance policy and the consulting agreement—the same events that gave rise to the defendant's conviction before this court, and the same events involved in the two previous McHenry County lawsuits he'd filed. In the third lawsuit, the

6

defendant seeks "actual" damages of $800,000 and punitive damages of $2,400.00. Id. at 14. That case remains pending; there is a scheduling conference scheduled for November 18, 2019 at 9:00 a.m.

### b.    Mark Borst

As for Mark Borst, the government provided an undated letter from Melvin Krumdick (a codefendant in the farmland case), written on the letterhead of one of the defendant's companies, threatening to file a lawsuit against Borst, Borst's wife and their marital property. Dkt. No. 1-14. Borst's attorney responded with a cease and desist letter. Dkt. No. 1-15. In a letter dated October 29, 2018, the defendant himself responded to Borst's attorney. Dkt. No. 1-16. The defendant claimed that Borst's attorney could be disbarred if he failed to investigate Borst's conduct in connection with the underlying fraud. Id. at 1. He indicated that he was looking for "a settlement commensurate with our original agreement and information that will allow us to proceed against the others involved . . . ." Id.

On December 21, 2018, Krumdick (in his individual capacity, as the "Managing General Partner of the Agri Business Investors LIMITED Partnerhship, and in his capacity as "trustee for the Todd A. Dyer Irrevocable Trust") filed a complaint against Mark, Daniel and Sydney Borst in Walworth County Circuit Court. Krumdick v. Mark Borst, et al., Case No. 2018CV804 (Walworth County Circuit Court, Judge Johnson presiding), accessible at https://wcca.wicourts.gov (last visited September 17, 2019). Krumdick filed an amended complaint on February 20, 2019. Dkt. No. 1-17. The suit involves the facts that gave rise to the defendant's conviction in the case before Judge Stadtmueller; it seeks judgment in excess of $77,000,000. Id. at 5.

The government provided a letter from the defendant, dated May 21, 2019 and addressed to Borst's attorney, in which he stated that "we" would be amending the first amended complaint in the Walworth County case, to include the defendant as a plaintiff. Dkt. No. 1-18. The defendant expresses the belief that once discovery is complete, "you will see no need to attempt allowing your client to proceed to trial." Id.

The government also provided what appears to be an email message dated June 22, 2019 from the defendant to Krumdick, asking to confirm that Krumdick wanted the defendant to sign Krumdick's name and forward requests for admission to Borst's attorney. Dkt. No. 1-19 at 2. There appears to be a response from Krumdick on June 24, 2019, saying, "Todd, Yes, confirmation for you to sign my name as necessary for papers for the Mark Borst

7

case." Id. In a letter dated the following day—June 25, 2019—from the defendant, sent (according to the letter) by certified mail to Borst's attorney, the defendant indicates that he is sending Borst's counsel "Set No. 1 of the Request for Admissions for Walworth County Court Case No. 18CV000804." Id. at 1. The government attached this request for admissions; it consists of twenty-five pages containing 106 requests for admission. Id. at 3-27. The mailing envelope bears a return address of the defendant's incarceration facility, and his BOP inmate number. Id. at 28-29.

This case remains pending before the Walworth County Circuit Court; the public docket indicates that there is a status conference scheduled for November 21, 2019, a final pretrial conference scheduled for December 3, 2019 and a trial scheduled for December 9-11, 2019. Krumdick v. Mark Borst, *et al.*, Case No. 2018CV804 (Walworth County Circuit Court, Judge Johnson presiding), accessible at https://wcca.wicourts.gov (last visited September 17, 2019).

### 3. *Requested Relief*

#### a. Injunctive relief against defendant Dyer

The government's proposed order contains the following language:

A. Todd Dyer is temporarily enjoined from:

(i) directly or indirectly contacting or attempting to contact any witness or victim in Criminal Case Nos. 15-CR-115 (E.D. Wis.) or 16-CR-100 (E.D. Wis.), including Mark Borst, Bakley Construction, Cindy Bakley, or any immediate family member or representative of Mr. Borst or Ms. Bakley; or

(ii) directly or indirectly initiating, participating in, or continuing any state or federal lawsuit or appeal against any witness or victim in Criminal Case Nos. 15-CR-115 (E.D. Wis.) and 16-CR-100 (E.D. Wis.), including against Mark Borst, Bakley Construction, Cindy Bakley, or any immediate family member or representative of Mr. Borst or Ms. Bakley, without prior approval from this Court.

Dkt. No. 7 at 1-2.

Dkt. No. 12 at 4-16.

8

The court's October 2, 2019 order issuing the temporary restraining order was to remain in effect until October 16, 2019. Id. at 26. The court scheduled an October 11, 2019 evidentiary hearing to take evidence on whether to issue the protective order. Id.

At the October 11 hearing, the defendant's counsel informed the court that he and the defendant were not prepared for a hearing due to time constraints, asserting that the defendant had received the complaint only the day before. Dkt. No. 20 at 1. The defendant agreed to waive time limits on when the hearing for a protective order must be held and the court ordered that the TRO would remain in place until the next hearing. Id. at 1, 3. The court did not hear argument on the protective order at that time and the government requested additional time for the parties to agree on a day for an adjourned evidentiary hearing. Id. at 3. On November 13, 2019, the court scheduled a hearing for February 14, 2020.

In the meantime, on November 21, 2019 the defendant filed an answer to the complaint. Dkt. No. 24. He also filed a motion for stay of action on January 10, 2020, dkt. no. 25, which court struck on January 27, 2020, dkt. no. 31, on the government's motion, dkt. no. 26. On January 17, 2020, the defendant filed a motion to adjourn the February 14, 2020 hearing for sixty-five days. Dkt. No. 27. The court ordered the defendant to indicate whether he agreed to extend the TRO until the adjourned hearing date, dkt. no. 30, which he did, dkt. no. 32. The court granted the defendant's motion to adjourn the hearing and rescheduled the hearing for April 13, 2020. Dkt. No. 33. The defendant's

9

counsel then informed the court that a key defense witness was unavailable on April 13, 2020, dkt. no. 34, and requested that the hearing be adjourned and scheduled for another date, dkt. no. 35. He also notified the court that the defendant had agreed to extend the TRO until the rescheduled hearing. Id.

The court scheduled a status conference for February 26, 2020. Dkt. No. 37. At that conference the court ordered the government to file a motion for summary judgment and set a briefing schedule leading to oral arguments on May 8, 2020. Dkt. No. 39. The government then filed an unopposed motion for extension, dkt. no. 40, which the court granted, dkt. no. 41. As part of that order, the court removed the May 8, 2020 hearing date from the calendar and stated that "[i]f, after briefing on the plaintiff's summary judgment motion is concluded, the court determines oral argument is necessary, it will re-set the hearing." Id. The defendant (without counsel) then filed a motion to dismiss under Rule 12(b)(6), dkt. no. 42, which the court denied, dkt. no. 46.

On April 3, 2020, the government filed a motion for judgment on the pleadings rather than for summary judgment. Dkt. No. 43. Five months later, the government filed a motion for order to permit disclosure of potentially privileged materials pursuant to the crime-fraud exception. Dkt. No. 52. In the latter motion, the government has alleged that the defendant violated the court-ordered TRO. Id.

### III. Analysis

#### A. Standard

"Judgment on the pleadings is appropriate when there are no disputed issues of material fact and it is clear that the moving party . . . is entitled to judgment as a matter of law." Unite Here Local 1 v. Hyatt Corporation, 862 F.3d 588, 595 (7th Cir. 2017). "When a plaintiff moves for judgment on the pleadings, the motion should not be granted unless it appears beyond doubt that the nonmovant cannot prove facts sufficient to support its position, and that the plaintiff is entitled to relief." Scottsdale Ins. Co. v. Columbia Ins. Group, Inc., 972 F.3d 915, 919 (7th Cir. 2020). The plaintiff "must demonstrate that there are no material issues of fact to be resolved." Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc., 983 F.3d 307, 313 (7th Cir. 2020) (internal quotation marks omitted). The court's analysis is restricted to matters presented in the pleadings and must "consider those pleadings in the light most favorable" to the non-movant. Unite Here, 862 F.3d at 595. For the purposes of judgment on the pleadings, the "pleadings" include "the complaint, the answer, and any written instruments attached as exhibits." Federated, 983 F.3d at 312-13; Fed. R. Civ. P. 10(c).

#### B. Application of the Law to the Facts

The complaint alleges a single claim: harassment of victims and witnesses under 18 U.S.C. §1514. Dkt. No. 1 at ¶28. Section §1514(b)(1) requires the court to issue a protective order "prohibiting harassment of a victim or witness in a Federal criminal case or investigation if the court, after a

hearing, finds by a preponderance of the evidence that harassment of an identified victim or witness in a Federal criminal case exists . . . ." At such a hearing, the defendant has the right to present evidence and cross-examine witnesses. 18 U.S.C. §1514(b)(3). If the court enters a protective order, it has the discretion to set the appropriate duration necessary to prevent harassment, for up to three years from the date it issues the order. 18 U.S.C. §1514(b)(5). The penalty for violating an order issued under §1514 is a fine, imprisonment of no more than five years or both. 18 U.S.C. §1514(c).

In issuing the temporary restraining order, the court determined that there were reasonable grounds to believe that "the defendant ha[d] engaged in a 'course of conduct' within the meaning of 18 U.S.C. §1514." Dkt. No. 12 at 16. The court found that the defendants in the state court proceedings were the victims of the fraudulent schemes of which the defendant was convicted in federal court. Id. The court stated that

> [The defendant's] harassment of the Bakleys began on November 27, 2017 with a letter to the Bakleys and continues with the 2019 case filed in McHenry County Circuit Court. The harassment of Borst began with the undated letter from Krumdick and continues through the lawsuit in Walworth County, including the recent service of 106 interrogatories on Borst's attorney.

> In both cases, the defendant is demanding from the victims of the fraudulent schemes he has been convicted of committing the money he attempted to obtain by the very frauds that led to those convictions. In order to coerce them in to complying with his demands, the defendant threatens the victims with embarrassment, expense, and costly, burdensome litigation These threatening, bullying contacts, while portraying himself as the victim and asserting that he is protecting himself from the victims, seem the very definition of harassment.

Dkt. No. 12 at 16-17.

But the court made those findings in the context of issuing a temporary restraining order, which requires only a finding based on "reasonable grounds." To warrant issuance of a protective order, the government must prove the elements of harassment by a preponderance of the evidence. 18 U.S.C. 1514(b)(1).

While there is no dispute that the defendant contacted Borst and the Bakleys and that he sued them, to obtain a protective order the government must prove by a preponderance of the evidence that those actions constituted *harassment* of the victims. Dkt. No. 12 at 24 ("Under 18 U.S.C. §1514(b)(1), the court 'shall' issue a protective order if, after a hearing, the court finds by a preponderance of the evidence that the defendant has harassed a victim or a witness."). "Harassment" is defined as "a serious act or course of conduct directed at a specific person that (i) causes substantial emotional distress in such person; and "(ii) serves no legitimate purpose." 18 U.S.C. §§1514(d)(1)(B)(i)-(ii).

The government advised the court in February 2020 that it was considering filing a motion for summary judgment. Instead, it has filed a motion for judgment on the pleadings. It explains this change in strategy in a footnote in its brief, stating that "[a]lthough the United States initially anticipated filing a motion for summary judgment, this motion can be resolved solely with reference to documents that may be considered in deciding a Rule 12(c) motion, including the pleadings, attachments to the pleadings, and facts and documents subject to judicial notice." Dkt. No. 44 at 13.

13

The court does not agree. First, government's motion for judgment on the pleadings does not address the fact that §1514(b)(1) requires a hearing. The government has not provided the court with any authority allowing it to grant judgment on the pleadings when the relief requested is injunctive relief under a statute that mandates a hearing prior to issuance of the order granting that injunctive relief. The Seventh Circuit has stated that "[d]istrict courts should not allow motions for judgment on the pleadings to deprive the non-moving party of the opportunity to make its case." Federated, 983 F.3d at 313 (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* §1368 (3d ed. 2002). The court issued that instruction even though Federated did not involve a request for relief under a statute that mandated a hearing; Federated involved an insurance dispute. If the Seventh Circuit has cautioned courts against depriving non-movants of the right to present evidence when that right is not mandated by statute, the same caution is required when the movant seeks relief under a statute that mandates a hearing.

Second, there are material issues of fact. The court, viewing the facts and inferences in the light most favorable to the non-moving party (Dyer), see Federated, 983 F.3d at 313 (citing Alexander v. City of Chi., 994 F.2d 333, 336 (7th Cir. 1993)), cannot conclude on this record that it "appears beyond doubt that the nonmovant cannot prove facts sufficient to support [his] position, and that the plaintiff is entitled to relief." Id. (quoting Scottsdale, 972 F.3d at 919).

1. *No legitimate Purpose*

The first material issue of fact is whether the defendant's state-court lawsuits had any legitimate purpose and whether they were intended to harass the witnesses and victims of his previous criminal cases in federal court. Dkt. No. 44 at 14.

a. <u>Heck v. Humphrey</u>

The government asserts "regardless of [the defendant's] subjective intent," the allegations in the state lawsuits are "irreconcilable with the facts conclusively established" by his guilty pleas in the federal lawsuits. <u>Id.</u> The government reasons that no matter what the defendant may have intended when he brought the state lawsuits, the lawsuits "constitute an impermissible collateral attack on [his] valid criminal convictions." <u>Id.</u> In support of this argument, the government relies on <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994). <u>Id.</u>

Heck was convicted in state court, and while his appeal was pending, he filed a federal civil rights lawsuit under 42 U.S.C. §1983, alleging that the state prosecutors and law enforcement violated his civil rights. <u>Heck</u>, 512 U.S. at 479. In affirming the district court's dismissal of Heck's suit, the Supreme Court applied the "hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments" "to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction confinement, just as it has always applied to actions for malicious prosecution." <u>Id.</u> at 486. The Court concluded

15

that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination , or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

Id. at 486-87.

The defendant's state-court suits did not allege civil rights violations and did not assert causes of action under §1983. The defendant and others sued Mark Borst, Daniel Borst and Sydney Borst in Walworth County, Wisconsin Circuit Court in Case No. 18CV00804. Dtk. No. 1-17 at 1. The first amended complaint, which the government attached as an exhibit to the complaint in this case, does not state a specific cause of action, but there are several paragraphs at the end of the amended complaint that seem to state the plaintiffs' claims. Those paragraphs allege that

30. Defendant,[1] Plaintiff,[2] and others had contracts, verbal and written, as enumerated in this Complaint relating to possession, conversion, income, and the eventual sale of securities issued to Defendant and Plaintiff's designatee, AGRI BUSINESS INVESTORS LIMITED PARTNERSHIP. These contracts created obligations. Those obligations were breached, and as a result, Plaintiff and others were damaged. Defendant breached his contract with Plaintiff through the following acts or omissions:

---

[1] The amended state-court complaint repeatedly refers to "Defendant" in the singular, even though the amended complaint names *three* defendants. Dkt. No. 1-17.

[2] The amended state-court complaint repeatedly refers to "Plaintiff" in the singular, even though the amended complaint names several plaintiffs. Dkt. No. 1-17.

16

31.    The Defendant and others convinced the State of Wisconsin, Department of Securities, State of Illinois, Securities Department, FBI IRS, US Attorney Office in Wisconsin, and investors that the Defendant was a passive, unknowing investor who had been victimized by Plaintiff and that Defendant had bought Plaintiff's AMERICAN FARMLAND PARTNERS CORPORATION stock warrants in a 2012 transaction.

32.    In truth, and as Defendant well knew, Plaintiff continues to own and control all business concepts, intellectual property, and trade secrets.

33.    Further, Plaintiff controls all five million four hundred and ninety-nine thousand (5,499,000) AMERICAN FARMLAND PARTNERS CORPORATION stock warrants, 1,000 common shares, and through them, affiliated, private, limited partnership, AMERICAN FARMLAND LIMITED PARTNERSHIP.

34.    Based on material misrepresentations, omissions, and attestations, Defendant exchanged AMERICAN FARMLAND PARTNERS CORPORATION stock warrants and AMERICAN FARMLAND LIMITED PARTNERSHIP interests belonging to Plaintiff's designatee, AGRI BUSINESS INVESTORS LIMITED PARTNERSHIP, for publicly traded FARMLAND PARTNERS, INC.'s common stock, FARMLAND PARTNERS OPERATING PARTNERSHIP, L.P., units and/or cash, thereby denying Plaintiff the return of his original investment, a return on his original investment (profit) and control over the world's fastest growing farmland Real Estate Investment Trust (REIT), publicly traded FARMLAND PARTNERS, INC., and its affiliated, private, limited partnership, FARMLAND PARTNERS OPERATING PARTNERSHIP, L.P.

Dkt. No. 1-17 at 4-5. These claims appear to sound in breach of contract and fraud, not civil rights violations.

In December 2018, the defendant sued Joan Bakley, the Joan Bakley Trust, Cindy Jo Bakley, Kenneth Bakley, Jr., Kathleen Jensen, and Bakley Construction, Inc. in McHenry County, Illinois. Dkt. No. 12-1. He alleged that these individuals illegally recorded phone calls with him without his consent in violation of 720 Ill. Comp. Stat. 5/14. Dkt. No. 1-12 at 5-6. That case was

17

dismissed for lack of prosecution on June 25, 2019.

https://caseinfo.mchenrycountyil.gov/pca/CaseView/18LA000436?isSearch=True&isCaseNumberSearch=True&searchType=CaseNumberSearch&searchValue=18LA000436&requestAction=search&rowOffset=0&totalResults=1. Two months later, on August 19, 2019, the plaintiff again sued these defendants in McHenry County on the same claims. Dkt. No. 1-13. That case was dismissed for lack of prosecution on October 21, 2020.

https://caseinfo.mchenrycountyil.gov/pca/CaseView/19LA000244?isSearch=True&isCaseNumberSearch=True&searchType=CaseNumberSearch&searchValue=19LA000244&requestAction=search&rowOffset=0&totalResults=1.

Again, neither of the McHenry County lawsuits alleged civil rights violations. Admittedly, they did allege "facts" that seem unrelated to the illegal recording claim, and that are reminiscent of the arguments the defendant has made in federal court challenging his federal convictions. For example, the defendant asserted:

> 1.     Beginning on or about April 2013, Plaintiff and Defendants entered into a series (more than 10) of Consulting Agreements known herein as the "Consulting Agreement" . . . The Consulting Agreement was mutually agreed by both Plaintiff and Defendants and was construed in a legal and lawful manner and never were any illegal or unlawful service or conduct expected or implied by either party. Defendants later falsely memorialized and testified to the FBI that Plaintiff was hired by Defendants to steal evidence from James Dyer, his company, and others in order to induce a suit involving James Dyer's Errors and Omissions insurance. The Defendants' repetitive alterations as to the series of events constitutes perjury. (Exhibit 6)
>
> . . .

18

3. Contained within the Consulting Agreement is the existence of a binding non-reliance clause, stating the following:

> "There are not warranties or guarantees expressed or implied other than those listed in the Agreement."

Based on this clause, Plaintiff and Defendants had a mutual agreement that Plaintiff was to perform the work outlined in the Consulting Agreement and that at no time were there nefarious plans such as Defendants, specifically Cindy Jo Bakley, testified to investigators in successive, changing, perjured interviews. (Exhibit 6)

Dkt. No. 1-12 at 7-8.

Because the state suits are not §1983 claims, one wonders why the government relies on <u>Heck</u> for its argument that the plaintiff could not have had a legitimate purpose in filing the suits. The government addresses that question by asserting that "[a] civil lawsuit runs afoul of *Heck* where the allegations in the civil lawsuit are inconsistent with the facts underlying a criminal conviction." Dkt. No. 44 at 15. The government cites several cases in support of this proposition.

First, it cites <u>Okoro v. Callaghan</u>, 324 F.3d 488 (7th Cir. 2003). <u>Id.</u> The government quotes a line from the decision: "Okoro [plaintiff] adhered steadfastly to his positions that there were no drugs, that he was framed; in so arguing, he was making a collateral attack on his conviction, and *Heck* holds that he may not do that in a civil suit, other than a suit under the habeas corpus statute . . . ." <u>Id.</u> (quoting <u>Okoro</u>, 324 F.3d at 490). The government reads <u>Okoro</u> too broadly. Okoro sued federal officers for the return of items seized during a search of his home. <u>Id.</u> at 489. The district court dismissed the suit, the Seventh Circuit reversed and remanded, and the district court held a

19

bench trial and entered judgment against Okoro because the judge did not believe Okoro's version of events. Id. When Okoro appealed, the Seventh Circuit said, "The appeal has no possible merit—the issue on which the judgment pivots was a straightforward issue of credibility—and we write only to respond to the defendants' argument that the district judge should never have allowed the case to go to trial, even after our remand." Id.

The Seventh Circuit explained:

> Okoro had been arrested in his home by several of the defendants on suspicion of being a heroin dealer, and it was during a search incident to arrest that the defendants are alleged to have stolen the gems and cash. The Supreme Court held in *Heck v. Humphrey*, 512 U.S. 477, 486-87 . . . (1994), that a convicted criminal may not bring a civil suit questioning the validity of his conviction until he has gotten the conviction set aside. Okoro could be guilty of drug violations yet also have been the victim of a theft by the officers who arrested him. But we noted in our previous opinion that from the outset he has insisted that he was not trying to sell the officers heroin, as they testified; he was trying to sell them gems and they stole them. If this is true, then almost certainly he was convicted in error, for that testimony was an essential part of the evidence against him in the criminal case; and if he cannot prevail in his claim for the return of the gems without undermining the criminal case against him, then he is barred by *Heck* unless and until he knocks out his conviction, which he has never done. But as this point had not been raised by the defendants, we did not consider it an appropriate ground for affirming the judgment.

> On remand, however, the defendants pleaded *Heck*. Without suggesting that they had done so too late . . . , the court rejected it because of the theoretical possibility mentioned in our opinion that the defendants had both found illegal drugs in Okoro's home and stolen gems and cash that they also found there. This was in error. Okoro adhered steadfastly to his position that there were no drugs, that he was framed; in so arguing he was making a collateral attack on his conviction, and *Heck* holds that he may not do that in a civil suit, other than a suit under the habeas corpus statute or its federal-defendant equivalent, 28 U.S.C. §2255. It is irrelevant that he disclaims any intention of challenging his conviction; if he makes allegations that are inconsistent with the conviction's having been

valid, *Heck* kicks in and bars his civil suit. *Edwards v. Balisok*, 520 U.S. 641, 646-48 . . . (1997); *Ryan v. DuPage County Jury Commission*, 105 F.3d 329, 330-31 (7th Cir. 1996) (per curiam). He is the master of his ground. He could argue as we have suggested that the defendants had taken both drugs and gems, and then the fact that they had violated his civil rights in taking the gems (if they did take them) would cast no could over the conviction. Or he could simply argue that they took the gems and not say anything about the drugs, and then he wouldn't be actually challenging the validity of the guilty verdict. But since he is challenging the validity of the guilty verdict by denying that there were any drugs and arguing that he was framed, he is barred by *Heck*.

Id. at 489-490.

The plaintiff in Otero filed suit in federal court for return of property and argued that the property ought to be returned because, in part, he was not guilty of the offense of conviction. Here, the defendant filed suit in *state* court—a court (or courts) incapable of invalidating his conviction—alleging breach of contract, fraud and illegal recording. While he asserted facts in all of the state lawsuits that arguably are inconsistent with the facts he to which he admitted when he pled guilty in federal court, the court does not read Okoro to state that any time a former criminal defendant brings any civil suit in any court for any cause of action and alleges facts inconsistent with the facts that led to his conviction, that suit is Heck-barred.

The government also cites Helman v. Duhaime, 742 F.3d 760 (7th Cir. 2014). Dkt. No. 44 at 15. Helman involved a classic application of Heck; the plaintiff brought a §1983 suit against the officers who arrested him for the offense of which he was convicted. Helman, 742 F.3d at 761. The issue in Helman was whether the Seventh Circuit's prior holding in Evans v. Poskon,

21

603 F.3d 362 (7th Cir. 2010) that a plaintiff could bring a Fourth Amendment excessive force claim under §1983 without necessarily implying the invalidity of his conviction would allow Helman to pursue his excessive force claim. Id. at 762. The Seventh Circuit concluded that Helman's claim that he had not drawn his weapon until after the officers used excessive force "would necessarily imply the invalidity of his state court conviction for resisting law enforcement." Id. at 763. The court found Helman's claim Heck-barred. Id. The defendant's state suits were not Fourth Amendment excessive force claims.

Citing four district court decisions from Texas, the District of Columbia and Illinois, the government argues that Heck bars any claim—including state-court claims—based on factual allegations that are inconsistent with the offense of conviction. Dkt. No. 44 at 15. In Davit v. Davit, 366 F. Supp. 2d 641, 644 (N.D. Ill. 2004), the plaintiff filed federal RICO claims against his former spouse and judges and attorneys involved in the plaintiff's state-court divorce proceedings and criminal proceedings related to the divorce. In a footnote, the district court for the Northern District of Illinois stated:

> Although the Court need not rule on this issue, Davit's complaint is almost surely barred, in part, under the principles articulated in *Heck v. Humphrey*, 512 U.S. 477 . . . (1994), which teaches that a federal plaintiff cannot recover damages relating to an allegedly illegal sentence or conviction obtained in state court unless "the conviction or sentence has been reversed on direct appeal," "called into question by a federal court's issuance of a writ of habeas corpus," or otherwise invalidated by process of state law. *Id.* at 486-87 . . . . In his pleadings and other ancillary filings that purport to explain them, David complaints [sic] of purported false testimony by his ex-wife in connection with his criminal conviction by a "jury of 12" for criminal "violation of an order of protection" and "resisting arrest from the Lisle Police Department." . . . This proceeding is apparently the subject of a pending criminal appeal in the state

22

courts of Illinois. (*Id.* at 16.) These complaints appear to be clearly *Heck*-barred.

Id. at 653 n.10.

This is a short nail on which to hang the argument that the plaintiff's state lawsuits are Heck-barred; it is dicta from a district court decision not binding on this court and is stated in indefinite terms (the complaints "appear to be" Heck-barred).

Derrow v. Bales, No. 9:06cv137, 2007 WL 1511997 (E.D. Tex. 2007) is a report and recommendation from a magistrate judge, recommending that the district court dismiss an inmate's attempt—one of several—to collaterally attack his conviction by "filing a civil lawsuit focusing on the grand jury proceedings."[3] Id. at *2. In a prior order, the magistrate judge had recommended that the district court dismiss the suit as Heck-barred; the plaintiff objected, arguing that he was not alleging civil rights violations under §1983 but seeking damages under the Privacy Act. Id. On that basis, the district court appears to have declined to dismiss. Id. After the defendants answered, the magistrate judge again recommended that the district court dismiss the suit as Heck-barred because a favorable outcome would necessarily imply the validity of the plaintiff's conviction. Id. at 3. The magistrate judge found that the plaintiff was "posturing" his case as a "mere civil lawsuit," as opposed to a challenge to his conviction. Id. In contrast, the

---

[3] The court notes that the defendant has filed several letters to the court, both in this case and in his now closed and final criminal cases, asserting error with his criminal convictions based on issues with the grand jury. The defendant has not filed a lawsuit on that basis.

defendant filed his suits in state courts—courts incapable of invalidating his federal convictions. While the defendant's state suits may be based, in part, on his apparent belief that he did not nothing to warrant being convicted of a crime, it is hard to discern how he could have filed those suits for the purpose of invalidating his federal conviction.

In <u>Terry v. U.S. Small Bus. Admin</u>, 699 F. Supp. 2d 49 (D.C. 2010), the district court found the plaintiff's claims that the SBA had improperly put his loans in default was based in part on allegations that there was no basis for his prosecution or conviction and that the prosecutors made false representations. <u>Id.</u> at 55-56. For that reason, the court found that the plaintiff's claims "necessarily require this Court to step impermissibly 'into the shoes of the court which originally imposed sentence in his case.'" <u>Id.</u> at 56 (citations omitted). The facts and procedural posture of <u>Terry</u> seem closer to the facts in the case at bar, but again, the defendant in this case filed suits in courts that could not step into the shoes of the court that originally imposed the sentence.

Finally, <u>Puckett v. Walmart Store #5823</u>, No. 3:15-cv-2029, 2017 WL 6612944 (N.D. Tex. 2017) involved a §1983 suit—again, a classic example of the <u>Heck</u> facts.

Regardless of whether the reasoning in these cases is persuasive, or whether there is good reason to conclude that a federally-convicted defendant's protestations of innocence in state damages suits should be <u>Heck</u>-barred, the Seventh Circuit has not extended <u>Heck</u> as far as the government urges this

court to do. The court is not willing to stretch <u>Heck</u> beyond the outer limits articulated by the Seventh Circuit.

In its discussion of <u>Heck</u>, the government also argues that as to the Illinois lawsuit against the Bakleys, the Bakleys had a valid defense under 720 ILCS 5/14-3(i). Dkt. No. 44 at 18. The defendant sued the Bakley family and Bakley Construction for recording their conversations with the defendant without his knowledge. Dkt. No. 1-12 at 5. Under 720 ILCS 5/14-2(a)(2), recording a private conversation without the consent of all other parties to the conversation is unlawful. The defendant sued under 720 ILCS 5/14-6, which provides a civil remedy to injured persons recorded without their consent. The defendant claimed to have been recorded by the Bakleys up to seventy-five times. Dkt. No. 1-12 at 6. He claimed that he did not have knowledge of the recordings until he reviewed discovery (in the federal criminal case) "which revealed Cindy Jo Bakley's cooperation with and admittance in FBI 302's of her production of Surreptitious phone call recordings." <u>Id.</u>

The government asserts that there is an exception to the prohibition against recording someone without the person's knowledge; 720 ILCS 5/14-3(i) provides an exception when a party records a conversation with "reasonable suspicion that another party to the conversation is committing, is about to commit, or has committed a criminal offense against the person or a member of his or her immediate household, and there is reason to believe that evidence of the criminal offense may be obtained by the recording." The government argues that the defendant's claims that the Bakleys illegally recorded him were "based

on the false premise that [the defendant] was not engaged in a scheme to defraud Cindy Bakley at the time the recordings were allegedly made." Id.

This seems to be something of an inverse invocation of the Heck doctrine—that because the defendant admitted in federal court to defrauding the Backleys, he must have realized when he filed suit against them in state court alleging that they had illegally recorded him that he could not prevail because there is a fraud exception to the statute under which he sued. This argument begs the question to be answered, as the court will explain.

b.    Collateral estoppel

The government also argues that the defendant is barred by the doctrine of collateral estoppel from "presenting evidence or argument inconsistent with his guilty pleas in this lawsuit—whether to attempt to show that his lawsuits against his victims serve a legitimate purpose or for any other reason." Dkt. No. 44 at 19. The doctrine of collateral estoppel provides that "once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit involving a party to the litigation." Easley v. Reuss, 247 F. Appx. 823, 826 (7th Cir. 2007) (citing Harrell v. U.S. Postal Serv., 445 F.3d 913, 921 (7th Cir. 2006)). The government seeks to use the theory of "offensive" collateral estoppel; it argues that "[t]here is no material fact as to whether [the defendant] engaged in the conduct he admitted as part of his guilty pleas, and he is not entitled to advance theories that are inconsistent with his guilty pleas in this proceeding." Dkt. No. 44 at 19.

26

"Offensive collateral estoppel occurs when the plaintiff seeks to foreclose a defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party." U.S. v. Approximately $3,174.00 in U.S. Currency, 928 F. Supp. 2d 1035, 1039 (E.D. Wis. 2012) (quoting Michelle T. v. Crozier, 173 Wis.2d 681 (1993)). The defendants in the state lawsuits could have raised offensive collateral estoppel to prevent the defendant from re-litigating his guilt in the state suits (had he attempted to do so). If the defendant attempts to re-litigate his convictions in the federal criminal cases as part of his defense against the government's request for a protective order, the government may assert offensive collateral estoppel—issue preclusion. But the argument that the defendant cannot relitigate his federal criminal convictions does not establish, as a matter of law, that the state lawsuits did not serve a legitimate purpose.

c.     The Relevance of the Defendant's Intent

The government's arguments that the defendant's state suits were Heck-barred, that they were barred by collateral estoppel and that there was a defense (based on the defendant's federal conviction) for the claims against the Bakleys boil down to an argument that the suits could not have "served a legitimate purpose" because there were legal defenses to them. While the court could find little law instructing district courts on what they should consider in deciding whether the alleged harassing actions "served a legitimate purpose," a few cases have implied that the alleged harasser's intent is critical. In United States v. Tison, 780 F.2d 1569 (11th Cir. 1986)—a case the government cited,

27

albeit for different reasons—the Eleventh Circuit considered a case in which federal criminal defendants indicted in Florida threatened to file a defamation lawsuit against a witness who had been subpoenaed before the grand jury after that witness refused to submit to an interview by the defendants' counsel about what information the witness had provided the government. Id. at 1570-71. In considering whether the threat of the defamation lawsuit "served a legitimate purpose," the Eleventh Circuit said, "[f]iling a civil lawsuit to avoid the restrictions on criminal discovery and thereby obtain documents that a defendant would not ordinarily be entitled to for use in his criminal case, while at the same time attempting to intimidate a witness from providing accurate information to federal law officials is exactly the kind of harassment [18 U.S.C. §1514] was designed to eliminate." Id. at 1573. The court put great weight on the timing of the lawsuit, circumstantial evidence of the reason the defendants had threatened to bring it. Id. at 1572.

In United States v. Camick, No. 13-10042-01-JTM, 2014 WL 544997, at *2 (D. Kan. 2014), the district court found that the jury had "determined, beyond a reasonable doubt, that Camick filed *Camick v. Wattley* with the intent to intimidate or harass witnesses in this case." In In re Grand Jury Subpoena, 267 F. Supp. 3d 741, 749 (N.D. Tex. 2016), the district court found that the government had proven the "served no legitimate purpose" element, finding that "the purpose of the course of conduct was to deprive Employee A and Employee B (two Target Company insiders who possessed personal knowledge and other evidence that could be incriminating) of funds to retain their own

counsel and to prevent them from sharing information (including information on computers and electronic devices) with government investigators." The court explained that

> At the hearing, respondents focused on what they maintain is the legitimate *dispute* between the parties in Lawsuit A. But the statutory inquiry is whether the course of conduct serves a legitimate *purpose*. In other words, a specific *dispute* within a course of conduct can itself be legitimate, but that specific dispute can still be employed in a manner that causes the entire course of conduct to serve no legitimate *purpose*. . . . Moreover, Lawsuit A need not be totally devoid of merit to be part of a course of conduct that serves no legitimate purpose. *See Tison*, 780 F.2d at 1572 (suggesting that lawsuit could have legitimate purpose in the long run, even though it lacked legitimate purpose due to its timing).
>
> In fact, Lawsuit A *may* be a meritorious dispute, but the government has proved by a preponderance of the evidence that this is not the purpose for the Company's bringing the lawsuit. Why would the parent company of an entity facing serious criminal charges spend resources launching, and then aggressively litigating, a civil lawsuit over $200,000 and a few pieces of computer and electronic equipment? If, as here, it did so shortly after targets of the investigation learned that two former high-ranking company insiders intended to cooperate with the government, and that they might possess incriminating evidence that the government had not yet seized, it can reasonably be inferred that the lawsuit is all about cutting off the insiders' funding for personal attorneys, getting back the evidence that they intend to turn over to the government, and restraining them by court order from disclosing what they know based on personal knowledge. This is a course of conduct, directed at specific persons, that serves no *legitimate* purpose.

Id. at 749-50.

The closest the Seventh Circuit has come to opining on this issue is United States v. Lewis, 411 F.3d 838 (7th Cir. 2005). In Lewis, the defendant argued that his civil lawsuit against the witness who provided information about the bank robbery the defendant committed served a legitimate purpose.

In particular, he argued that "lawsuits are not the kind of thing that can constitute 'harassment' for the purposes of § 1514." Id. at 845. The Seventh Circuit disagreed, noting that the statute said nothing of the kind and comparing the situation to the facts of Vendo Co. v. Lektro-Vend Corp., 422 U.S. 623 (1977), "in which the question was whether one lengthy state court proceeding could amount to an anticompetitive practice, because it was brought *solely to harass the target company unlawfully and to eliminate competition.*" Id. (emphasis added). The court implied that whether a lawsuit could constitute harassment turned on the purpose for which the plaintiff brought the lawsuit.

The government argues that "regardless of [the defendant's] intent," the state suits were invalid for various legal reasons. But if intent is the critical component—if what matters is *why* the defendant brought the state suits—it does not matter that he could not have prevailed on those suits. What matters is whether he *knew* that he could not prevail on those suits but brought them anyway. That is an issue of material fact, and one the defendant disputes. That disputed issue of material fact means the court cannot grant the plaintiff's motion for judgment on the pleadings.

2.     *Substantial Emotional Distress*

The second material issue of fact is the question of whether the record evidence proves by a preponderance that the defendant's actions caused substantial emotion distress.

Citing Tison, 780 F.2d at 1571-72, the government asserts that by stating that "there is no serious question that [the defendant's] lawsuits against his victims and related letters to his victims—in which he demands hundreds of thousands or millions of dollars from individuals whom he already defrauded—would cause any target of such conduct to experience substantial emotional distress." Dkt. No. 44 at 23. As the government concedes, however, the defendant in Tison had "stipulated at the district court hearing 'that the prospect of being sued is likely to be worrisome to anybody.'" 780 F.3d at 1571-72. There is no such stipulation in this case. The defendant disputes the government's assertion that he caused the state defendants substantial emotional distress.

The government next directs the court to the defendant's letters and lawsuits. The complaint alleged that the defendant's lawsuits against and letters to Ms. Bakley, her family and Mr. Borst caused substantial emotional distress, dkt. no. 1 at ¶¶19, 25, but in his answer, the defendant "denie[d] knowledge or information sufficient to form a belief as to the allegations contained therein," dkt. no. 24 at ¶¶19, 25. The simple fact that the government asserts in the complaint that the defendant caused substantial emotional distress does not prove it by a preponderance of the evidence, when the statute entitles the defendant to a hearing.

The government relies on two letters written to AUSA Emily Constantine, one by Ms. Bakley and another by the attorney for Mr. Borst. Dkt. Nos. 1-22, 1-23. The letters describe in detail the impact the defendant's lawsuits had on

31

the authors. Ms. Bakley described being "haunted" by the defendant's actions, feeling "sickened" when she received the summons for the state case and being unable to move on from her decision to get involved with the defendant, as well as the financial impossibility of continuing to defend against the defendant's suits. Dkt. No. 1-22. Mr. Borst's attorney described how "troubling and distressing" the defendant's actions have been to Mr. Borst and his family, the financial drain of retaining counsel and the defendant's anxiety and stress. Dkt. No. 1-23.

These letters constitute evidence that the defendant's actions caused severe emotional distress, but the court cannot rely on those letters to determine, as a matter of law, that the defendant's course of conduct caused substantial emotional distress. The defendant points out that the documents are not sworn under oath. Dkt. No. 47 at 7. He reminds the court that §1514(b)(3) affords him the right to present evidence and to cross-examine witnesses, including the authors of these letters. Id. The court agrees.

The government also attached to the complaint letters to and complaints against the victims by the defendant. In a letter from the defendant to the Bakley family, the defendant said that he felt "the need to point out the risks should you decide not to seek a settlement outside the purview of the Court" as he warned the Bakley family of his incipient lawsuit. Dkt. No. 1-9 at 1. He warned that the complaint "could be very embarrassing to your family." Id. He made similar statements in a letter to Borst and Borst's wife, in which the defendant gave the Borsts "10 calendar days from the receipt of this letter to

contact us and settle or the suit will be filed." Dkt. No. 1-14 at 1. Again, while these letters constitute circumstantial evidence of substantial emotional distress, the defendant has not stipulated that he caused such distress, and the statute entitles him to a hearing to present evidence and to cross-examine the government's witness.

This issue of disputed material fact prevents the court from finding, as a matter of law, that the defendant's course of conduct has caused substantial emotional distress.

## IV. Next Steps

In its reply brief, the government asserted that if the court does not agree that the current record is sufficient to prove substantial emotional distress as a matter of law, the court should limit any hearing to that issue only—the question of whether the defendant has caused substantial emotional distress to the victims. Dkt. No. 50 at 8. It asked that the court require the defendant to submit any cross-examination question in advance, "to ensure that [the defendant]'s victims, witnesses, and their family members are not subject to further harassment in the form of irrelevant, abusive, or otherwise improper questions." Id.

The court has discussed the fact that the statute entitles the defendant to a hearing and that there are disputed issues of material fact which cannot be resolved on the pleadings as a matter of law. At that hearing, the government will need to present evidence on both the question of whether the defendant's course of conduct caused substantial emotional distress and the

33

question of whether the conduct served a legitimate purpose. The court understands the government's desire to avoid subjecting victims and witnesses to further stress and cost, but the defendant has a right to test the government's evidence. At the hearing scheduled for March 23, 2021 at 1:30, the court will discuss with the parties the scheduling of the evidentiary hearing. The court will also discuss with the parties any parameters for the presentation of evidence.

At the temporary restraining order stage, the government sought an order prohibiting the defendant from contacting any victims or witnesses in the two federal cases, from participating in any state or federal lawsuit or appeal against any victim or witness in those cases and enjoining the proceedings in the lawsuits that were pending when the government filed the complaint. See Dkt. No. 7 at 2.

None of the lawsuits that were pending at the time the government filed the complaint remain pending. The Walworth County, Wisconsin suit against Mark Borst and others was dismissed on July 21, 2020. Krumdick, et al. v. Borst, et al., Case No. 2018CV000804, State of Wisconsin Circuit Court for Walworth County (https://wcca.wicourts.gov/caseDetail.html?caseNo=2018CV000804&countyNo=64&index=0). The two cases against the Bakleys were closed on June 25, 2019 and October 21, 2020, respectively. Dyer v. Bakley, et al., Appellate Case No. 19-0568, Appellate Court of Illinois, Second District (https://caseinfo.mchenrycountyil.gov/pca/CaseView/18LA000436?

isSearch=True&isCaseNumberSearch=True&searchType=CaseNumberSearch& searchValue=18LA000436&requestAction=search&rowOffset=0&totalResults= 1); <u>Dyer, et al. v. Bakley</u>, *et al.*, Case No. 19LA00244, Circuit Court of the 22nd Judicial Circuit, McHenry County, Illinois (https://caseinfo.mchenrycountyil. gov/pca/CaseView/19LA000244?isSearch=True&isCaseNumberSearch=True& searchType=CaseNumberSearch&searchValue=19LA000244&requestAction=se arch&rowOffset=0&totalResults=1).

At the March 23, 2021 at 1:30 p.m., the court anticipates that the government will clarify the specific relief it is seeking in the protective order. The court also anticipates that the government will tell the court whether it still wishes an opportunity to brief the question of whether the attorney who represented the defendant in one (or more) of the state cases may testify as an expert at the evidentiary hearing.

Finally, while the court cannot grant judgment on the pleadings when §1514(b) mandates a hearing, and while the evidence the government attached to the complaint does not warrant overriding that mandate, the court notes that the standard for proving harassment is preponderance of the evidence. That standard is not as rigorous as the "beyond a reasonable doubt" standard in a criminal prosecution. At the evidentiary hearing, the government will need only convince the court that it is more likely than not that the defendant's course of conduct has caused substantial emotional distress and that his actions served no legitimate purpose.

35

## V.    Conclusion

The court **DENIES** the government's motion for judgment on the pleadings. Dkt. No. 43.

Dated in Milwaukee, Wisconsin this 22nd day of March, 2021.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**