UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

  v.

TODD A. DYER,

        Defendant.

Case No. 19-cv-1319-pp

**ORDER DENYING MOTION FOR WRIT OF *HABEAS CORPUS AD TESTIFICANDUM* AND TRANSFER OF CUSTODY (DKT. NO. 70), DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR PERMISSION TO CONDUCT A DEPOSITION OF WITNESS (DKT. NO. 81), AND DECLINING TO APPOINT SUCCESSOR COUNSEL**

On March 23, 2021, the court conducted a hearing at which it denied the government's motion for judgment on the pleadings, denied the defendant's motion for approval to litigate and discussed various concerns the government expressed about the evidentiary hearing required by the statute and the likelihood that the defendant would attempt to use that hearing to relitigate his criminal convictions. Dkt. No. 68. At that time, the defendant was represented by counsel. At the end of the hearing, the court asked the parties to file a notice giving it several options for hearing dates; it said that once it saw those options and got a sense of how much time the parties thought they would need for the hearing, it would decide whether to hold the hearing in person or by videoconference. Id. at 3.

On July 16, 2021, the government filed a status report, explaining that it had tried several times to discuss potential hearing dates with defense counsel, but that while the government was prepared to conduct the hearing as soon as the court's schedule permitted, it had not been able to get dates from defense counsel. Dkt. No. 73. The government pointed out that the defense had filed one motion and expressed an intention to depose a witness and that the court's ruling on the motion could affect scheduling. Id. at 2. Finally, the government explained that while it believed the hearing should take, at most, two to three hours, the defense had asserted that it believed the hearing should be scheduled for two days. Id. at 2-3. The government ended by suggesting a hearing sometime between October 18 and November 5. Id. at 3.

The motion to which the government referred was the defendant's July 1, 2021 motion for a writ of *habeas corpus ad testificandum*, asking to have the defendant brought from FPC Yankton, South Dakota (where he was incarcerated at the time) to the Kenosha County Detention Center in Wisconsin so that counsel could meet with the defendant and review the "voluminous" papers that the defendant had "accumulated over the years." Dkt. No. 70. The motion indicated that the Yankton facility was denying defense counsel the ability to meet with the defendant in person, despite the fact that counsel and the defendant were vaccinated and the prison was allowing incarcerated persons to have face-to-face social visits with family. Id. at 2. Counsel represented that trying to meet with the defendant via telephone and Zoom had been unproductive, and he argued that even if Yankton allowed an in-person

2

meeting, it likely would not permit the defendant and counsel to exchange documents. Id. Counsel concluded by stating that "[h]aving the defendant close to Milwaukee will make preparation for this hearing substantially more convenient, easier, and effective," and that "[b]eing in the Milwaukee area will help facilitate [the] defendant's attendance at the hearing when scheduled." Id.

The government opposed the motion. Dkt. No. 72. The government pointed out that this proceeding is not a criminal prosecution, and that the defendant has no right to attend it in person. Id. at 1-2. It asserted that the defendant had stated no basis for why he needed to attend the hearing in person, and that the motion had focused instead on the difficulties counsel was having meeting with his client. Id. at 2. The government asserted that COVID-19-related restrictions were easing,[1] which should make it easier for the defendant and his counsel to meet; the government also pointed out that the defendant never had had difficulty filing voluminous documents with the court when he wanted the court to see them. Id.

The government also argued that because the evidentiary hearing would not be an opportunity for the defendant to re-litigate his criminal convictions, he should not need "voluminous" documents, and those documents need not be transported to Wisconsin. Id. at 3. The government pointed to the cost of

---

[1] At the time the government filed its response on July 16, 2021, Wisconsin was seeing 160 to 200 new confirmed cases per week, with an average of 1.7 to 1.8% of daily tests coming back positive and anywhere from one to six deaths per week. https://www.dhs.wisconsin.gov/covid-19. These statistics stand in stark contrast to the numbers the state has seen in the past several months, as the omicron variant has driven the numbers up—including among vaccinated individuals who have received booster shots.

3

transporting the defendant from the custody of the Bureau of Prisons to the Milwaukee area. Id. at 3-4. Finally, the government expressed concern that bringing the defendant back to Wisconsin would give him another opportunity to intimidate or harass the very victims the government had brought this lawsuit to protect. Id. at 4.

The court will deny the defendant's motion for a writ of *habeas corpus ad testificandum*. The reason the defense counsel gave for making the motion was the difficulty he had encountered in obtaining an in-person meeting with his client. Since the parties briefed the motion, two things have occurred that moot this issue. First, Attorney Penegor was able to go to FPC Yankton and meet with the defendant in person. See Dkt. No. 76 (August 9, 2021 letter from Attorney Penegor indicating that he had received approval to visit the defendant at Yankton on August 18-19, 2021); Dkt. No. 78 (August 26, 2021 letter from Attorney Penegor confirming that he had had the opportunity to meet with the defendant and that he intended to call two witnesses at the evidentiary hearing). Second, Attorney Penegor and the defendant subsequently reached a point where they were at loggerheads and both asked that the court allow Attorney Penegor to withdraw from representing the defendant. See Dkt. No. 84 (October 28, 2021 letter from the defendant to the court asking that Attorney Penegor withdraw); Dkt. No. 85 (Attorney Penegor's November 1, 2021 motion to withdraw). The court granted that motion on January 28, 2022. Dkt. No. 92.

4

These events moot the reason for the motion—to bring the defendant to Wisconsin so that he could meet and prepare with his appointed attorney. That leaves the second question the government raised—whether it is necessary to bring the defendant to Wisconsin to be personally present for the evidentiary hearing once it is scheduled.

"The constitutional right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment . . . ." United States v. Gagnon, 470 U.S. 522, 526 (1985). But "[t]he Sixth Amendment does not apply to civil proceedings." Callahan v. C.I.R., 334 F. App'x 754, 755 (7th Cir. 2009) (citing United States v. George, 403 F.3d 470, 473 (7th Cir. 2005)). Over forty years ago, the Seventh Circuit stated:

> We find no support in the Constitution or in judicial precedent for the proposition that a prison inmate has a fundamental interest in being present at the trial of a civil action to which he is a party, sufficient to outweigh, as a matter of course, the interest of the state in avoiding expense. The due process requirements of the Fifth and Fourteenth Amendments, which guarantee access to the courts, do not grant a prisoner the right to attend court in order to carry on the civil proceedings which he initiates.

Matter of Warden of Wis. State Prison (Moeck v. Zajackowski), 541 F.2d 177, 180 (7th Cir. 1976).

In a case considering an incarcerated person's argument that he should have been produced from prison to appear in person at the trial in the civil rights case he had filed, rather than by video, the Seventh Circuit reiterated that an incarcerated person's right to access to courts was satisfied by the opportunity to consult with counsel and to present his case to the court. Perotti v. Quinones, 790 F.3d 712, 721 (7th Cir. 2015). "The opportunity to

5

appear before the court in support of his claim is a matter addressed to the court's discretion;" "[i]n exercising that discretion, the court must weigh the inmate's interest in being present in court to give testimony in support of his claim against the government's interest in maintaining his confinement." Id. (citing Stone v. Morris, 546 F.2d 730, 737 (7th Cir. 1976)). The court explained that

> Our opinion in *Stone* identifies the following factors that the court should consider in weighing these competing interests: (1) the cost and inconvenience of transporting the plaintiff to court from his place of incarceration; (2) the potential danger or security risk that the plaintiff would pose to the court; (3) the substantiality of the matter at issue; (4) any need for an early determination of the claim; (5) the possibility of postponing trial until the plaintiff is released from prison; (6) the plaintiff's probability of success on the merits of his claim; (7) the integrity of the correctional system; and (8) the plaintiff's interests in presenting his testimony in person rather than by alternate means, such as by deposition. *Stone* added that the last of these factors—the plaintiff's interest in testifying in person rather than by other means—subsumes other considerations, including (a) whether the case will be tried to the bench or to a jury; (b) whether the plaintiff has other witnesses to call or is the sole person who can provide testimony consistent with his compliant; and (c) whether the defendants themselves plan to testify. *See Moeck v. Zajackowski*, 541 F.2d 177, 181 (7th Cir. 1976) (identifying similar factors); *see also Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987); *Jerry v. Francisco*, 632 F.2d 252, 255 (3d Cir. 1980); *Ballard v. Spradley*, 557 F.2d 476, 480-81 (5th Cir. 1977). We have adhered to *Stone's* balancing test in subsequent cases. *See Verser [v. Barfield]*, 741 F.3d [734,] at 739 [(7th Cir. 2013)]; *Thornton [v. Snyder]*, 428 F.3d [690], at 698-99 [(7th Cir. 2005)]; *Jones [v. Hamelman]*, 869 F.2d [1023], at 1030 [(7th Cir. 1989)].
>
> What has most notably changed in the intervening decades since we decided *Stone* is the availability of remote appearance by video conferencing, which informs the eighth *Stone* factor—the plaintiff's interest in appearing at the trial in person rather than by other means. *Stone* itself assumed that, as a practical matter, the likely alternative to having an inmate transported to court to testify in support of his complaint was having his deposition testimony read

> aloud in court. (Citations containing examples omitted). . . . Video conferencing, by contrast, enables both the plaintiff in prison and those present in the courtroom to simultaneously see and hear one another in real time, and in that sense represents a great leap forward from the alternatives to in-court appearance that were available forty years ago. (Citations to descriptions of videoconference capability omitted.)

Id. at 721-22.

The Stone factors weigh against producing the defendant from his current facility (USP Leavenworth in Leavenworth, Kansas) to appear in person at the evidentiary hearing in Wisconsin. The U.S. Marshals Service—already understaffed because of budget cuts and staff shortages resulting from the COVID-19 pandemic—would be required to incur the expense and time of transportation and of housing the defendant locally during the pendency of the proceeding. As the court is aware from other cases, the time it would take the USMS to transport the defendant to Wisconsin would depend on the availability of the transport, how many other prisoners would be picked up *en route* heading in the same direction and the availability of transport personnel, and could take weeks. This factor weighs against the defendant appearing in person.

The court has no evidence that the defendant poses a danger or security risk to the court; this factor weighs in favor of an in-person appearance, or at minimum, is a non-factor.

As to the substantiality of the matter at issue, this is a civil proceeding to enjoin the defendant, in which the government has asked the court to enter a protective order prohibiting him from filing civil suits against the victims of the

7

crimes of which he has been convicted. It is a substantial matter to the victims, as the government has represented repeatedly. The defendant asserts that it is a substantial matter to him because he believes himself a victim and believes that he can be vindicated only by suing those whom he asserts victimized him. At the defendant's sentencing hearing, the court expressed its skepticism of the defendant's views as they related to Case No. 16-cr-100 and nothing that the defendant has filed over the past several years has lessened that skepticism. While the court cannot say that the matter is insubstantial as to the defendant, it is not substantial enough to warrant the cost and inconvenience of transporting him from Kansas to Wisconsin.

Regarding the need for early determination of the claim, in some respects that ship has sailed. The government asked the court to decide the case on the pleadings and the court declined. Logistical considerations preventing the defendant's prior counsel from being able to visit him at his prior facility caused some delay; the pandemic and this court's docket have caused further delay. The delay to date notwithstanding, however, the court can much more expeditiously schedule a hearing if the defendant appears by videoconference than if he must be transported to Wisconsin. This factor weighs against the defendant's personal appearance.

The court cannot postpone the evidentiary hearing until the defendant is released from prison. As it is, the case has been pending for two years and four months. The Bureau of Prisons' web site indicates that the defendant's

projected release date is December 20, 2029—almost eight years from now. This weighs against the defendant's personal appearance.

The defendant's probability of success on the merits of his defense is low. The government needs only to prove by a preponderance of the evidence that the lawsuits the defendant brought in the past and intends to bring in the future are harassing and brought for no legitimate purpose. The court has repeatedly warned the defendant that he cannot defend against the suit by litigating the merits of his criminal convictions. This factor weighs against the defendant's personal appearance.

The integrity of the correctional system is not an issue; this proceeding does not involve claims against the correctional system. This factor does not weigh in favor of or against the defendant's personal appearance.

Finally, as for the defendant's interests in presenting his testimony in person, the Seventh Circuit's comments about the availability of videoconferencing resolve this factor. The hearing will be to the court only; there will be no jury. By videoconference, the defendant will be able to see the court and the government lawyers, and they will be able to see him. It is possible that the government's witnesses may prefer to testify by video, as may any witnesses the defendant may call. Given the current virus numbers related to the omicron variant of the COVID-19 virus,[2] the court is holding many

---

[2] In the week prior to the court's writing of this order (January 14-18, 2022), Wisconsin saw between 5,700 and 8,000 new confirmed cases per day, with between 22% and 24% of those tested daily testing positive. There were between 40 and 95 COVID deaths per day that week, 91% of hospital beds

*criminal* hearings by videoconference, and has had at least one witness in a criminal case testify by videoconference. The options are no longer binary—have the defendant appear in person or not have him seen or heard at all. Now, with video capability, the defendant can see and hear, and be seen and heard, without being physically present. This factor weighs against the defendant appearing in person.

The court will exercise its discretion and will not order the defendant to be produced in person for the evidentiary hearing. Once the court has scheduled the hearing, the court's staff will work with the staff at USP Leavenworth to ensure the defendant's attendance. If the defendant wishes to present exhibits, he may identify any that already are on the docket. If he wishes to present exhibits other than those already on the docket, he may file them with the court. The court notes, however, that the defendant has filed thousands of pages of documents in his three criminal cases and his *habeas* case over the past several years. He must limit the number of new documents he files, keeping in mind that, as the court has told him, he will *not* be litigating his guilt or innocence in Case Nos. 15-cr-115 and 16-cr-100 at the evidentiary hearing in this case.

In his August 26, 2021 letter to the court (which followed his visit to the defendant at Yankton), Attorney Penegor stated that it was his "intention" to call two witnesses, one of whom would be the defendant. Dkt. No. 78. A month

---

were in use and almost 93% of ICU beds were in use. https://www.dhs.wisconsin.gov/covid-19.

later, on September 27, 2021, Attorney Penegor filed a motion for permission to conduct a deposition of a witness. Dkt. No. 81. The motion indicated that the defendant "may name Father Mel Krumdick" as a witness at the evidentiary hearing. Id. at 1. Attorney Penegor told the court that on June 22, 2021, he had traveled to visit Krumdick at Krumdick's home in Oak Park, Illinois, and "had observed the frail condition of Father Krumdick;" he stated that Krumdick had "informed counsel of the health issues he is dealing with." Id. Attorney Penegor stated that he believed Krumdick had knowledge of relevant facts and could offer "testimony to support that the defendant's actions were for a legitimate purpose." Id. at 2. Attorney Penegor stated that he contacted the plaintiff's counsel to schedule the deposition, but that the government had objected; accordingly, Attorney Penegor asked the court to grant the defendant permission to schedule the deposition, "to preserve the witness's testimony for the upcoming hearing." Id. at 2. In the alternative, Attorney Penegor asked that Krumdick be allowed to testify by videoconference. Id.

The government opposed the motion. Dkt. No. 82. The government construed Attorney Penegor's request as a request to conduct discovery and argued that the request was inappropriate. Id. at 1. The government first noted that it was the *defendant*, not the government, who might possibly call Krumdick; the government pointed out that the defendant did not need to use the discovery process to find out what his own witness might say at the evidentiary hearing. Id. The government noted that Attorney Penegor already had met with Krumdick once and could do so again, if he thought it necessary.

Id. at 1-2. Second, the government pointed out that under Federal Rule of Civil Procedure 26, there is a procedure for conducting discovery in civil cases, including the fact that under Rule 26(f), the parties must confer and come up with a plan for the timing of discovery (including taking depositions). Id. at 2. The government argued that discovery was not necessary and that the defendant had not asked for it during the time this case has been pending (and that defense counsel had waited four months after meeting with the defendant to file this motion). Id. The government also argued that the expedited procedure contemplated under 18 U.S.C. §1514 did not contemplate discovery. Id.

Third, the government argued that the defendant had not demonstrated that Krumdick was "unavailable" for the evidentiary hearing, citing Fed. R. Civ. P. 32. Id. The government pointed out that Krumdick's last known address was within 100 miles of the courthouse and that the defendant had not specified what "health issues" might make Krumdick unavailable. Id. at 2-3.

Finally, the government expressed concern that allowing the defendant to present Krumdick's deposition testimony, rather than having Krumdick testify in person at the evidentiary hearing, could result in the defendant veering into territory the court has said he may not visit—the validity of his prior conviction in Case No. 15-cr-115—and that it would deprive the government of the opportunity to cross-examine Krumdick. Id. at 3.

The instant case is not the typical situation in which a person sued in civil litigation may not have access to the evidence the plaintiff plans to rely on

at trial or in summary judgment. The government's "evidence" is likely to consist of the testimony of the victims that the defendant's lawsuits caused them distress. The defendant has telegraphed that he wants to demonstrate that he filed the lawsuits for a legitimate purpose, but whatever evidence he may wish to represent in that regard is evidence he already possesses (as evidenced by the many, many pages of documents he has filed over the years). Arguably, a suit for injunctive relief under 15 U.S.C. §1514 is "a proceeding ancillary to a proceeding in another court," Fed. R. Civ. P. 26(a)(1)(B)(2)(viii), and thus is exempt from the requirement that the parties make initial disclosures under Rule 26(a)(1)(A) or hold a discovery conference as required by Rule 26(f). The court, however, could find no case—either in the Seventh Circuit or nationally—addressing the question of whether the rules of discovery apply in a case filed under 15 U.S.C. §1514.

The more relevant question is why the defendant would need to depose a witness he, himself, proposes to call. Attorney Penegor provided two reasons: that Krumdick lived more than 100 miles from the courthouse and that Krumdick appeared "frail" and had advised Penegor of "health issues he was dealing with." In other words, Attorney Penegor wanted to get Krumdick's testimony under oath in the event that Penegor could not subpoena Krumdick or Krumdick would be unavailable to testify.

Rule 45(c)(1)(A) says that a party may subpoena someone to attend a hearing only if that hearing is "within 100 miles of where the person resides, is employed, or regularly transacts business in person." The government asserts

13

that Krumdick's last known address was 1178 South Elmwood Avenue, Oak Park, IL 60304. Dkt. No. 82 at 2. That address is 94.7 miles from the Milwaukee federal courthouse via I-94, and 99.2 miles via I290-E and I-94, according to Google Maps. The defendant could subpoena Krumdick for the hearing (assuming he has concerns that Krumdick would not appear voluntarily).

The more pertinent concern expressed by Attorney Penegor was his concern about Krumdick's health. Rule 32(a)(4)(C) says that a party may use the deposition of a witness in a court proceeding if the court finds that the witness "cannot attend or testify because of age, illness, infirmity, or imprisonment." The government argues that Penegor provided no specifics about Krumdick's health situation and has not shown that he could not attend or testify because of illness or infirmity. But five years ago, the government had significant concerns about Krumdick's health. Krumdick was a co-defendant in Case No. 15-cr-115. On December 2, 2016—days before the trial was to begin in that case—the government filed a motion to dismiss the indictment against Krumdick. United States v. Dyer, *et al.*, Case No. 15-cr-115, Dkt. No. 185. Judge Stadtmueller granted that motion. Dkt. No. 189. In explaining why it moved to dismiss the indictment, the government explained the following:

> 1. The undersigned prosecutor has had several meetings with the defendant's two attorneys regarding a number of matters that were important considerations in the decision to charge Mr. Krumdick in this case. These meetings and other communications with defense counsel (including two excellent memorandum) gives this prosecutor pause. Pause is troubling. As this Court well knows, a charging decision involves considerations outside of the government's ability to prove a defendant guilty behind a reasonable

14

doubt. In this case, at this time, those considerations have been resolved to the benefit of the defendant.

2.      Defense counsel has provided this prosecutor with background information that calls into question the strength of the government's evidence against the defendant, evidence which when considering the charging decision, appeared facially strong and persuasive. Much less so now.

3.      Defense counsel has provided information to the prosecution team, including the IRS case agent, that explains a very large amount of funds that the defendant appeared to have had at one time, again, a factor among other[s] that led to charges against Mr. Krumdick. Suffice to say that the investors were not the only victims in this case.

4.      The issue of Mr. Krumdick's wearing of clerical garb occurred in a meeting with only one investor—a federal undercover agent at that. Broadly speaking, though, it is clear to this prosecutor now that Mr. Krumdick genuinely does not understand that Church rules bar him from wearing his clerical garments in public. Quite clearly, being a priest, or being considered a priest, is Mr. Krumdick's major, and possibly only, source of identity.

5.      Defense counsel has shared with this prosecutor Mr. Krumdick's medical records and prescription medicine regime. In a word, Mr. Krumdick's health is terrible. Outside of possibly general deterrence, prosecution—even to conviction—satisfies none of the considerations set forth by Congress in Title 18, U.S.C. § 3553(a).

6.      The government's pretrial interview of witnesses is nearly complete. Mr. Krumdick was not a factor in any individual's decision to invest money in the charged fraud scheme. Most witnesses did not even recognize his name.

Id. at Dkt. No. 190.

Like Attorney Penegor, the government did not give specifics about Krumdick's health situation, but the government called it "terrible" and cited it as one of the bases for dismissing the charges against Krumdick. One might presume that Krumdick's health has not improved in the five-plus years since,

15

and Attorney Penegor's observation that Krumdick was "frail" and that he had "health issues" seems to warrant that presumption.

That said, allowing the defendant to present Krumdick's testimony by deposition at the evidentiary hearing presents its own problems. It is not clear to the court that the defendant fully understands that this evidentiary hearing will not be an opportunity for him to prove that he is not guilty of the crimes of which he was convicted in Case No. 15-cr-115. The court suspects that even if the defendant still had an attorney representing him, and if the court allowed that attorney to depose Krumdick, that deposition would elicit a great deal of information that this court would not allow to be presented at the evidentiary hearing in this case. The government likely would object—successfully—to significant portions of the deposition testimony. And the court would not be able to judge Krumdick's credibility or to interject if the defendant began to elicit testimony from him that went beyond the limited scope of the hearing.

The solution to this problem is the alternative Attorney Penegor proposed. If the defendant wishes to call Krumdick as a witness at the evidentiary hearing, Krumdick need not travel to Wisconsin during a pandemic when his health is frail. He may appear remotely. If he does not have a cell phone or a computer, the court can investigate the possibility of his going to a courthouse near Oak Park and utilizing one of their computers. The defendant will be able to see and question Krumdick, as will government counsel.

The court will deny the motion to the extent that the defendant asks to be allowed to conduct a deposition of Krumdick. The court will grant the

16

Case 2:19-cv-01319-PP   Filed 02/01/22   Page 16 of 20   Document 95

motion to the extent that the defendant asks that Krumdick be allowed to testify remotely.

Finally, as the court has noted, the defendant and Attorney Penegor reached a point where they no longer were able to work together and the court has allowed Attorney Penegor—at the defendant's request—to withdraw. United States v. Dyer, Case No. 19-cv-1319, Dkt. No. 92. In his letter to the court listing the reasons he no longer wished Attorney Penegor to represent him, the defendant stated that he wanted "all of [his] previous writings relating to the 19-cv-1319-TRO case to be adopted into the record and be considered by the court," then stated, "that when the Court appoint new counsel they have a business litigation background." Id. at Dkt. No. 86.

The defendant assumes that the court will appoint successor counsel to Attorney Penegor and demands that that successor counsel have a particular area of expertise. This is a civil lawsuit. "There is no constitutional or for that matter statutory right to counsel in federal civil cases . . . ." Farmer v. Haas, 990 F.2d 319, 323 (7th Cir. 1993). There is a statute—28 U.S.C. §1915(e)(1)—that says that a court "may request an attorney to represent any person unable to afford counsel." But there is no constitutional or statutory requirement that the court appoint counsel.

When the court issued the temporary restraining order on October 2, 2019, it stated the following:

> . . . [the court] is aware that in the underlying criminal cases, the defendant elected to represent himself and, while he had standby counsel, wanted that counsel's participation to be very limited. The court will contact the Federal Defender to arrange to have standby

17

counsel available for the October 11, 2019 hearing, on whatever terms the defendant chooses. The court will notify the defendant of the identity of the standby counsel prior to the hearing date, so that he may communicate with counsel if he wishes.

Dkt. No. 12 at 25. The court then issued an order asking Federal Defender Services—which provides representation to indigent *criminal* defendants in *criminal* investigations and prosecutions—to appoint standby counsel for the defendant in case he would like assistance at the hearing. Dkt. No. 13.

At the October 11, 2019 hearing, Attorney Penegor appeared, conferred with the defendant by telephone and indicated that the defendant wanted Attorney Penegor to represent him (a fact the defendant confirmed). Dkt. No. 20 at 1. Attorney Penegor told the court that he needed more time to prepare for the hearing on the government's request for a protective order. Id. The government reminded the court that the defendant did not have a constitutional right to counsel in a civil case, explained that the government had three witnesses who had taken off work to travel to the court to testify and asked that the court allow them to testify that day. Id. at 2.

> The court agreed that the government had filed a civil suit for injunctive relief, but that violation of the injunction carried criminal penalties. The court explained that it had confirmed with the Administrative Office of U.S. Courts that appointment of counsel was appropriate and authorized in this situation, where the defendant could face prison if the court issued the protective order and the defendant subsequently violated it.

Id. The court then stated that it was appointing Attorney Penegor "solely for the purpose of representing the defendant in the court's determination of whether the court should enter the protective order to prevent him from engaging in harassing behavior like the court had concluded occurred after the defendant's

18

conviction and appeal," and "emphasized that the purpose of the hearing is not to reopen and re-litigate the criminal convictions that led to the defendant's incarceration or to reopen the defendant's appeal." Id.

There was no requirement that the court appoint counsel—standby or otherwise. The court's decision to appoint counsel was an attempt to protect the defendant from himself. That decision resulted in significant delay of a hearing that had been scheduled to take place two and a half years ago now. Since then, the defendant has filed in one of the underlying criminal cases a letter accusing the court of making "untruthful" statements in its October 2, 2019 order in this case. United States v. Dyer, Case No. 16-cr-100, Dkt. No. 95. He has asked the court to terminate Attorney Penegor's representation, just as he asked other judges to terminate the representation of two lawyers in his criminal cases. Another of his criminal lawyers moved to withdraw due to disagreements and the defendant has filed complaints against the two lawyers who acted as standby counsel in Case No. 15-cr-115. In this case, as he has in other cases, the defendant has persisted in filing documents on his own even when represented by a lawyer. As the court stated when it denied the defendant's motion to appoint counsel in his *habeas* case, the defendant's history with lawyers gives the court little reason to believe that the defendant would be able to get along with any successor counsel. Dyer v. United States, Case No. 19-cv-752, Dkt. No. 54 at 26-28.

The court will not appoint successor counsel to represent the defendant in this civil case. The court will schedule a date for the evidentiary hearing, at

which the defendant will represent himself. Ahead of the hearing, the court will issue an order requiring the parties to file witness and exhibit lists. It will also clarify, as best it can, issues and arguments that the court will not allow the defendant to raise (because they would constitute an attempt to litigate his final criminal convictions).

The court **DENIES** the defendant's motion for writ of *habeas corpus ad testificandum* and transfer of custody. Dkt. No. 70.

The court **DENIES** the defendant's motion for permission to conduct a deposition of witness. Dkt. No. 81.

The court **GRANTS** the defendant's motion to allow witness Mel Krumdick to testify remotely (if the defendant elects to call Krumdick as a witness). Dkt. No. 81.

The court **DECLINES** to appoint successor counsel to represent the defendant.

Dated in Milwaukee, Wisconsin this 1st day of February, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**