

FROM: 05409089
TO: Blumling, Ryan; Dyer, Todd; Krumdick, Father Mel
SUBJECT: Motion to Reconsider Motion to Determine Ownership
DATE: 05/01/2022 12:34:40 PM

UNITED STATES OF AMERICA
EASTERN DISTRICT OF WISCONSIN,
Plaintiff,

v.

TODD A. DYER,
Defendant,

Case No. 19-CV-1319-PP Temporary Restraining Order ("TRO")

MOTION REQUESTING COURT RECONSIDER ITS ORDER DENYING DEFENDANT'S MOTION REQUESTING COURT DETERMINE OWNERSHIP OF THE AMERICAN FARMLAND PARTNERS CORPORATION STOCK WARRANTS

NOW COMES, Todd A. Dyer, pro se with his Motion Requesting Court Reconsider its Order Denying Defendant's Motion Requesting Court Determine Ownership of American Farmland Partners Corporation Stock Warrants, and offers in support the following;

### Background

On February 1, 2022 Dyer filed a motion entitled "Motion Requesting Court Determine Ownership of the American Farmland Partners Corporation Stock Warrants".

On April 14, 2022 the Court denied Dyer's motion.

### Argument

The Court claims not to understand the significance of the stock warrant ownership issue relative to establishing the legitimacy of the the suit against Borst and the other investors.

The Court summarizes stating basically that, by pleading guilty, Dyer has forgone any right to profit from the alleged fraud scheme. The Court states, in part;

"The court is mystified about how the question of who owns the stock warrants issued by Nicholas Hindman -- who has plead guilty to and been convicted of the fraud described in Case No. 15-CR-115 -- has any relevance to whether any lawsuit the defendant might have brought or might bring against anyone identified as a victim in that case has a legitimate purpose."

Dyer and Krumdick's intent was and is to bringing a legitimate suit against the proper parties that will be successful in resolving their grievances.

Establishing standing is a necessary component to establishing any legitimate lawsuit.

Standing is a position from which a person or entity may assert and enforce legal rights.

Dyer certainly has standing to protect his business model, intellectual property and trade secrets ("IP") from unauthorized use and transfer without compensation.

Who and/or what other individuals or entities have standing to litigate against the 15-CR-115-JPS "Farmland" ("115Farmland") case victims and others is central to the legitimacy of the Walworth County lawsuit and future anticipated lawsuits.

Establishing standing is also necessary to determine if the individual or entity identified as having standing can even be prohibited by any Court from exercising a constitutional right to redress grievances, right to the court, right to equal protection and due process because, as Dyer and Krumdick allege, the proper entity with standing, the Agri Business Investors Limited

Partnership ("ABILP"), was not a party to the 115Farmland case or judgment, and not created until after the March 2008 to September 2011 scheme operation dates. (Exhibit# 1)

Dyer has attached a number of recent filings with the ILSOS to support further the claim of standing. (Exhibits# 2 and #3).

Dyer is equally mystified by the Court's apparent belief that just because Dyer plead guilty to the 115Farmland case, the Court believes none of the victims behavior since the scheme is alleged to have ended in September 2011, a decade ago, is subject to possible litigation. Dyer has the right to have a Court determine what happened to his business model, intellectual property and trade secrets ("IP") after September 2011.

The Court also states confusingly in its recent motion that, the entity that owns the stock warrants possesses a right to purchase stock in a company funded through fraud, as if that is the only right its owner possesses. The Court states in its motion;

"If the stock warrants exist and if anyone "owns" them, that person owns the right to purchase stock in a company funded through fraud."

Is the Court suggesting that, because of the fraud determination, American Farmland Partners Corporation ("AFPC") and American Farmland Limited Partnership ("AFLP") had no value?

Dyer believes the Court is again, incorrect.

If there is any truth to the Court's claim, it is only partially accurate.

If anyone "owns" the stock warrants, that person or entity owns a pro rata share of AFPC, and a share of AFPC's pro rata ownership in AFLP.

That person or entity also has the right to purchase stock in any successor to AFPC, and participate in any income or appreciation generated by AFPC, AFLP and their successors. According to the stock warrant;

"This stock warrant shall be binding on any successor to AFPC."

According to Dyer and Father Krumdick, that includes successor publicly-traded FPI, and its affiliated, private, limited partnership, Farmland Partners Operating Partnership, L.P. ("FPOP").

If anyone "owns" the stock warrants, that person or entity has a claim against the assets of AFPC and AFLP, including the 18 million dollars Hindman raised from investors, Dyer's IP, and funds recovered in a possible bankruptcy proceeding. (Exhibit# 4).

It is noteworthy that, Borst's attorney, Raymond Dall' Osto has already acknowledged, in a motion to dismiss the Walworth County case that, the correct entity with standing is, the entity itself, Agri Business Investors Limited Partnership (Tax ID.# 47-3429124)("ABILP").

Likewise, Borst acknowledged in an April 26, 2016 agreement entitled "Memorandum Documenting the Private Agreement Between Partners of Agri Business Investors Limited Partnership" (Exhibit# 5) that the rightful owner of the stock warrants is ABILP, and that his $800,000 investment was a loan and not for the purchase of securities. Footnote 1.

The Court also claims it does not understand Dyer's reference to the FPI's $10,000,000 stock buy back article or why investors receiving money back would be relevant to the suit. The Court states, in part;

"It is unclear why the defendant believes that a reference in a partnership agreement that was worth $10,000,000 relates to the public offering of a seemingly unrelated company called Farmland Partners, nor does it understand why he believes that this somehow shows that the victims in Case No. 15-CR-115 got some of their money back. But if the victims did get some of their money back, the defendant -- one of the people who defrauded them of that money -- certainly would not be entitled to it."

First, Dyer would like the Court to point out where Dyer has ever stated that he is entitled to any of the 10 million dollars allegedly paid to previous Midwest and American Farmland Partners officers, directors and investors.

Dyer never said any such thing.

To be abundantly clear, the Government's 115Farmland case alleges Midwest and American Farmland Partners were pre-planned schemes to defraud, created by Dyer, that these entities failed, causing investors to lose, collectively, $1,800,000.

Dyer received an 18 point sentence enhancement for that "actual" loss amount.

Judge Stadtmueller termed Dyer's claims that there is a connection between Midwest, American and publicly-traded FPI as "hogwash" and "balderdash". Footnote 2.

Both the 115Farmland and 16-CR-100-PP "Bakley" case Courts have also repeatedly admonished Dyer that he cannot attack his sentence further. Dyer begs to differ.

A conviction based on fraud is vulnerable to attack at any time via a Fed. R. Civ. P. 60(b)(3) motion.

Dyer has a pending Fed. R. Civ. P. 60(b)(3) motion. (Court of Appeals, Case No. 21-3037).

If Midwest and American Farmland Partners did not fail but instead were restructured as publicly traded FPI after the Government's September 2011 scheme end date, and the Government knew about it, and assisted in concealing it through a motion in limine, by changing the scheme end dates or other means -- that is fraud and/or fundamentally unfair.

If Borst, Hindman and Hook (in collusion with other investors) stole Dyer's IP after September 2011, as Dyer and Krumdick allege in the Walworth County suit, then ABILP has a legitimate suit, in spite of the 115Farmland conviction.

If investors did not lose money but instead profited from the initial public offering of FPI, then the 18 point sentencing enhancement for "actual loss" may be an error. At a minimum, Dyer would have a constitutional right to be resentenced based on accurate information.

And, as noted, the Agri Business Investors Limited Partnership ("ABILP"), the rightful owner of the stock warrants, according to Dyer and Krumdick, would be entitled to be compensated like other investors.

To be abundantly clear, Dyer alleges Hindman and Borst fraudulently removed ABILP from the buyout, again, an entity not formed at the time of the September 2010 buyout agreement but, identified as the recipient of the stock warrants, and replaced it with ABIGP, an entity whose partners (including Borst and other 115Farmland victims) were willing to take ten million dollars for Dyer's business model, intellectual property and trade secrets, excluding Dyer and Krumdick, in lieu of the tens of millions of dollars actually due ABILP.

The Court, Government, and those involved should accept the fact that this is not going away.

All should understand that Dyer is not going go quietly and do 15 years for something he didn't do, for something that didn't happen, and allow anyone to steal, at minimum, tens of millions of dollars without those responsible, whomever that might be, being brought into the "light", however that has to happen.

ABILP will be compensated for Dyer's business model, intellectual property and trade secrets, as agreed.

To clarify once again, Dyer does not want part of the 10 million allegedly received by previous Midwest and American Farmland Partners officers, directors and investors as the Court misstates, but rather, wants ABILP to be paid -- like them.

Dyer also does not "argue that he has a right to ill-gotten gains resulting from that fraud" as the Court suggest.

Rather, that the trusts set up for the care and maintenance of Dyer and his children by individuals other than Dyer, in the case of the Todd A. Dyer Irrevocable Trust dated October 4, 1994, some thirty years ago, get paid through the Agri Business Investors Limited Partnership, just like every other investor.

Dyer and Krumdick (to include Borst) also expect that their entity, the Midwest Farmland Acquisitions Corporation, not Borst, Dyer and/or Krumdick individually, will receive the 10% commission due on farmland acquisitions, at present, a figure exceeding 200 million dollars.

### Relief Requested

Dyer requests the Court reconsider its earlier decision and determine the ownership of the American Farmland Partners

Corporation stock warrants to verify Dyer and Krumdick's standing to bring a suit, and future anticipated suits on behalf of the proper entity.

If the Court chooses not to reconsider Dyer will appeal.

Respectfully submitted,

Todd Dyer
Reg.# 05409-089
Federal Prison Camp Leavenworth
P.O. Box 1000
Leavenworth, KS 66048

Footnote 1
Borst's $800,000 investment was a series of loans made in 2008 and 2009 and not for the purchase of securities like the other investors. Consequently, Borst's alleged loss of more than $500,000 was not part of the "continuing course of conduct" or "continuing offense" identified, was outside the five year statute of limitations, and should be removed to reflect a lower, more accurate loss figure.

Footnote 2
In a 29 minute conversation with Ryan Blumling, an individual assisting Dyer and Krumdick in the fraud investigations of the farmland entities, and current acting managing general partner of ABILP, AFPC's Chairman, Nicholas C. Hindman, Sr. acknowledged the fact that previous Midwest and American Farmland Partners officers directors and investors may have restructured these predecessors into publicly traded Farmland Partners, Inc. (FPI: NYSE), as would be their right, according to Hindman but, Hindman himself was not involved. Hindman is wrong. Investors do not have the right to restructure and exclude any investor as a means of enhancing their own returns.

                    Certificate of Service

I hereby certify under penalty of perjury that on May 3, 2022 I did mail to the clerk of courts via first class US mail this Motion Requesting Court Reconsider its Motion Denying Defendant's Motion Requesting Court Determine Ownership of the American Farmland Partners Corporation Stock Warrants and request the clerk share it with all relevant parties through the court's electronic mail system.

Todd Dyer
Reg.# 05409-089
Federal Prison Camp Leavenworth
P.O. Box 1000
Leavenworth, KS 66048