TRULINCS 05409089 - DYER, TODD A - Unit: LVN-F-F
--------------------------------------------------------------------

U.S. DISTRICT COURT
EASTERN DISTRICT. WI
FILED

2022 MAY 31 P 1: 47

...... OF COURT

FROM: 05409089
TO: Blumling, Ryan; Dyer, Todd; Krumdick, Father Mel
SUBJECT: 19-CV-1319-PP Hindman's TRO Questions
DATE: 05/08/2022 06:11:27 PM

Hindman's Questions

Question #1:
Do you understand you are being asked questions to support the legitimacy of Todd Dyer ("Dyer") and Father Melvin E. Krumdick's ("Krumdick") Walworth County lawsuit, and future anticipated lawsuits which allege, Midwest Farmland Partners and American Farmland Partners did not fail, but rather, were restructured as publicly traded Farmland Partners, Inc. (FPI: NYSE) by you, in transactions designed to conceal, outside the 15-CR-115-JPS "Farmland" scheme operation dates of March 2008 to September 2011?

Question #2:
In a February 2010 conference call for Midwest Farmland Partners -- American Farmland Partners Corporation ("AFPC") co-founder and director, Frank Imparato suggested the name be shortened to simply, Farmland Partners ... is that correct? (Exhibit #1).

Question #3:
As chairman of AFPC you agreed to buy the business model, intellectual property and trade secrets ("IP") developed by Todd Dyer for Midwest Farmland Partners in September 2010 ... is that correct? (Exhibit #2).

Question #4:
That agreement required American Farmland Partners Corporation to be publicly traded within one year at a minimum share price of $5.00 ... is that correct?

Question #5:
The agreement provided that Borst, Dyer and Krumdick, operating as the Agri Business Investors Limited Partnership ("ABILP") were to receive four million stock warrants as payment. There was a provision in the buyout agreement for an additional one and half million "penalty" or "bonus" stock warrants if the company failed to meet certain milestones ... is that correct?

Question #6:
The buyout strictly prohibited AFPC and AFLP from creating any new corporations, partnerships, divisions, spin-offs or other entities without including Borst, Dyer and Krumdick through ABILP ... is that correct? (Exhibit #3).

Question #7:
AFPC failed to meet the milestones as agreed ... is that correct?

Question #8:
The September 2010 buyout agreement was worth then, at minimum, more than 20 million dollars, more, if the company went public at a higher price ... is that correct?

Question #9:
AFPC never did pay Borst, Dyer, Krumdick or ABILP the 20 million dollars as agreed ... is that correct?

Question #10:
Where is Dyer's IP now?

Question #11:
There was also a commission agreement between Dyer and Krumdick's Midwest Farmland Acquisitions Corporation and Midwest Farmland Limited Partnership, and later, American Farmland Limited Partnership, that entitled them up to a 10% commission on all farmland purcahases throughout the project period" ... is that correct? (Exhibit #4)(Exhibit #5).

Question #12:
In an August 10, 2010 letter from victim Trent Griffith's attorney, John Duncan to you -- Griffith's attorney was already referring to Midwest and American Farmland Partners by its future name -- "Farmland Partners" ... is that correct? (Exhibit #6).

Question #13:
Following the September 2010 buyout, you produced a signed Securities and Exchange Commission ("SEC") Form 10 to become a publicly-traded company but listed the Agri Business Investors General Partnership ("ABIGP") as owner of the stock warrants ... is that correct? (Exhibit #7).

Question #14:
On October 5, 2010 you performed a "discounted cash flow analysis" of AFPC which you emailed to Dyer valuing the company at $3.09 per share and more that 60 million dollars ... is that correct? (Exhibit #8).

Question #15:
In a December 10, 2010 private placement memorandum for AFLP you confirmed the fact that the company had previously operated as the Midwest Farmland Limited Partnership ... is that correct? (Exhibit #9).

Question #16:
In a December 20, 2010 email you informed Dyer that you would use Milwaukee based investment bank Robert W. Baird with whom you have had a decades long relationship to take Midwest and American Farmland Partners public ... is that correct? (Exhibit #10).

Question #17:
Publicly-traded Farmland Partners, Inc. (FPI: NYSE), in fact, used Robert W. Baird in Milwaukee to go public ... didn't they? (Exhibit #11).

Question #18:
In early 2011 you told Dyer and investor Michael Dinapoli that the farmland companies, AFPC and AFLP had raised 18 million dollars in capital ... is that correct? (Exhibit #12).

Question #19:
In June and July of 2011 you issued Mark Borst, Hyatt Bangert and other Midwest Farmland Partners investors new American Farmland Limited Partnership ("AFLP") interests in anticipation of an initial public offering (IPO) ... is that correct? (Exhibit #13) (Exhibit #14).

Question #20:
You failed to issue Dyer, Krumdick and/or ABILP any AFLP interests ... is that correct?

Question #21:
In August 2011 investors like Rick Hesler were already aware of the name change to Farmland Partners and were calculating their potential returns based on FPI's forthcoming initial public offering (IPO) ... is that correct? (Exhibit #15).

Question #22:
In a September 26, 2011 filing with the State of Illinois, Secretary of State, Securities Department ("ILSOS") entitled "Answer of Respondent American Farmland Partners Corporation" you and AFPC vice president George C. Hook, Sr. ("Hook") stated untruthfully that, AFPC had purchased the right, title and interest of Midwest Farmland Limited Partnership and Midwest Farmland Management Corporation free of all liabilities from a Wisconsin Partnership (the Agri Business Investors General Partnership)("ABIGP") in 2011 by issuing that entity AFPC stock warrants ... is that correct? (Exhibit #16). See paragraph number 11.

Question #23:
In fact, AFPC had purchased the right, title and interest from Illinois Partnership ABILP in 2010, and issued ABILP the stock warrants ... is that correct? (Exhibit # 17).

Question #24:
You and Hook also state in that same September 26, 2011 filing that, AFPC had assets and expressed as a goal to become a publicly traded company ... is that correct? See: Paragraph 20.

Question #25:
You and Hook made these false attestations so that the ILSOS and investors would allow an otherwise valid business model to proceed without Dyer's involvement ... is that correct?

Question #26:

In an October 12, 2011 email to Dyer you informed him of the fact that you had just completed a meeting with Robert W. Baird investment advisor John Anthony (Steele) wherein he agreed to "spend basically" full-time raising money for AFPC and AFLP ... is that correct? (Exhibit #18)(Exhibit #19).

Question #27:
On October 24, 2011 you sent an email informing Dyer of the fact that you had moved the AFPC/AFLP offices from suburban Chicago to 250 Wisconsin Ave, 18th Floor, Milwaukee, WI. 53202, less than 1/3 of a mile from investment bank Robert W. Baird's Milwaukee offices ... is that correct? (Exhibit #20)(Exhibit #21).

Question #28:
In transactions which occurred in late 2011 and early 2012 Mark Borst bought Dyer and Krumdick out of the Agri Business Investors General Partnership ("ABIGP") ... is that correct? (Exhibit #22).(Exhibit #23).

Question #29:
Those buyouts allege there was a redesignation changing the recipient of the stock warrants from ABILP to ABIGP on September 30, 2010 but, as of 2011, it still had not been executed ... is that correct? (Exhibit #24).

Question #30:
The purpose of these "bogus" buyouts, like the September 26, 2011 filing with the ILSOS, was to convince everyone that Dyer and Krumdick had been bought out ... is that correct?

Question #31:
In late October and/or early November 2011 Dyer made a presentation to a group of investors and potential investors in St. Charles, Missouri including individuals associated with Carrollton Bank, owned by members of the Hough family ... is that correct? (Exhibit #25).(Exhibit #26).(Exhibit #27).

Question #32:
Relative Jesse Hough is a co-founder of FPI ... is that correct? (Exhibit #28).

Question #33:
In a January 10, 2012 email to Borst and Hook you stated that you were restructuring the buyout so that Borst would have very little to pay Dyer and Krumdick (less than $300,00) ... is that correct? (Exhibit #29).

Question #34:
On January 24, 2012 you allowed investor Rick Hesler to listen in on the call which confirmed bank financing for the farmland entities was coming through. That bank was First Midwest Bank who later loaned FPI 30 million dollars ... is that correct? (Exhibit #30).

Question #35:
On January 26, 2012 you issued Mark Borst 1,482,187 the "penalty"/"bonus" stock warrants instead of issuing them to ABILP ... is that correct? (Exhibit #31).

Question #36:
In a February 17, 2012 email to investor David Gee, you claimed Dyer was bought out of the farming venture. In reality, Borst bought Dyer out of ABIGP not the stock warrants ... is that correct? (Exhibit #32).

Question #37:
On February 19, 2012 you sent a letter to Midwest and American Farmland Partners investors stating that, Borst had bought Dyer and Krumdick's share of the stock warrants, and that the company would be moving forward following the resolution of the ILSOS investigation ... is that correct? (Exhibit #33).

Question #38:
In April 2012 Dyer made an email request for the records of AFPC and AFLP which you refused to provide stating neither Dyer nor any of his conduit entities (ABILP) were direct investors ... is that correct? (Exhibit #34).

Question #39:
In contradiction to your claims that AFPC and AFLP failed, on January 22, 2013, you informed Charles Sorensson via email that you had resolved the ILSOS investigation as it related to the companies, and they were now free to move forward with a new board of directors and management team ... is that correct? (Exhibit #35).

Question #40:
You negotiated a Consent Order that resolved your personal issues with the ILSOS on March 19, 2014, and five days later, on March 24, 2014 -- FPI, announced its forthcoming initial public offering (IPO) through your long time investment bank, Robert W. Baird ... is that correct? (Exhibit #36).(Exhibit #37).

Question #41;
In July 2014, following its April 2014 IPO, Denver, Colorado based FPI and its related entities borrowed 30 million dollars from First Midwest Bank of Itasca, Illinois, a bank located just 12 miles from your Glen Ellyn, Illinois home ... is that correct? (Exhibit #38)(Exhibit #39).

Question #42:
In May of 2015 you, as chairman of AFPC converted 1,000 of ABILP's stock warrants in AFPC from your suburban Chicago offices... is that correct? (Exhibit #40).

Question #43:
The conversion of the stock warrants for ABILP is a contradiction to your assertions that Dyer and Krumdick, operating as ABILP had been bought out, and that ABIGP owned the stock warrants ... is that correct?

Question #44:
On June 3, 2015 the law firm of Owens and Laughlin made a request for the business records of AFPC and AFLP pursuant to the Illinois Business Corporation Act 805 ILCS 5/7.75 on behalf of ABILP. You agreed to provide records in an email but, failed to produce any records ... is that correct? (Exhibit #41).

Question #45:
On April 14, 2016 the law firm of Johnson and Bell made another request for the business records of AFPC and AFLP pursuant to the Illinois Business Corporation Act 805 ILCS 5/7.75 on behalf of ABILP. You failed to provide any records as requested ... is that correct? (Exhibit #42).

Question #46:
In December of 2016 you plead guilty to the 15-CR-115-JPS "Farmland" case ... is that correct?

Question #47:
As part of your guilty plea you made certain admissions including the fact that you used investor funds for personal use, and for your other businesses, paying your wife for work she didn't do, and that the American Farmland Partners Corporation and American Farmland Limited Partnership were simply a name change from Midwest Farmland Partners ... is that correct? (Exhibit #43)

Question #48:
ABILP attempted to convert all of its 5 plus million stock warrants prior to their 10 year expiration in September 2020 and documented that attempt through an Illinois County Court ... is that correct? (Exhibit #44).

Question #49:
In a July 2020 filing you described Dyer's business model as "failed", one in which a farm would be purchased with a "combination of cash, stock, partnership interests and/or other ownership interests" ... is that correct? (Exhibit #45).

Question 50:
Similarly, in 2016, FPI acquired a 197 million dollars of Illinois farmland for "50 million dollars in cash, and 147 million worth of limited partnership and preferred operating partnership interests" didn't they? (Exhibit #46).

Question #51:
In an recent call with Ryan Blumling, an individual assisting Dyer with the farmland fraud investigation, you stated that you don't have anything to do with Farmland Partners but, that Midwest and American Farmland Partners' officers, directors and investors may have put Farmland Partners together, as was their right ... is that correct? (Exhibit #47).