UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                  Case No. 19-CV-1319

TODD DYER,

        Defendant.

---

**UNITED STATES' PREHEARING MEMORANDUM
IN ADVANCE OF JULY 18, 2022 HEARING**

---

The United States of America ("United States") respectfully submits this brief in advance of the hearing on the United States's motion for a protective order scheduled for July 18, 2022.

For ease of reference, this memorandum repeats some arguments and statements made in the government's prior prehearing brief submitted on October 9, 2019, Dkt. #14, while accounting for developments in the case since that submission. The government's responses to Dyer's proposed questions to witnesses are being filed as a separate document.

I.    PRELIMINARY STATEMENT

Title 18, United States Code Section 1514(b)(1) provides:

> A United States district court, upon motion of the attorney for the Government, or its own motion, shall issue a protective order prohibiting harassment of a victim or witness in a Federal criminal case or investigation if the court, after a hearing, finds by a preponderance of the evidence that harassment of an identified victim or witness in a Federal criminal case or investigation exists or that such order is necessary to prevent and restrain an offense . . . under section 1513 of this title.

There are two ways in which the government may meeting its burden. The first is by proving "harassment" against a victim or witness exists. Section 1514(d)(1)(B) defines "harassment" as

1

"a serious act or course of conduct directed at a specific person that—(i) causes substantial emotional distress in such person; and (ii) serves no legitimate purpose." The second is by proving that a protective order is necessary to prevent a violation of § 1513.

The government believes the evidence will prove both prongs of 1514, though its focus is on the first one—that Dyer harassed his fraud victims. To that end, the United States intends to present testimony from three victims describing how Dyer's conduct, including his filing of frivolous lawsuits, has caused them substantial emotional distress and financial hardship. *See* 18 U.S.C. § 1514(d)(1)(B)(i). Dyer has the right to cross examine these victims, 18 U.S.C. § 1514(b)(3), but this right does not permit him to further harass his victims by delving into irrelevant matters or accusing his victims of wrongdoing. *See* 18 U.S.C. § 3771(a) (identifying the rights of crime victims).

II. UNDISPUTED ISSUES

The following items are not in dispute, and therefore the United States anticipates that they should not require substantial testimony or time during the hearing, allowing Monday's hearing to proceed in a straightforward manner.

> **A. Dyer pleaded guilty and was convicted in Case Nos. 15-CR-115 and 16-CR-100, and the Court may consider the facts underlying those convictions and judgments.**

In his answer to the Verified Complaint, Dyer admitted that Exhibits 1 through 6 of the Verified Complaint are true and correct copies of the Indictments, Plea Agreements, and Judgments in those cases. *See* Dkt. #14 ¶¶ 5, 8. Further, the Court may accept as true the defendant's admissions in the plea agreements and the statements in the judgments. *See, e.g.*, *Scholes v. Lehmann,* 56 F.3d 750, 762 (7th Cir. 1995) ("Admissions—in a guilty plea, as elsewhere—are admissions; they bind a party; and the veracity safeguards surrounding a plea

agreement that is accepted as the basis for a guilty plea and resulting conviction actually exceed those surrounding a deposition"); *Frankfurt v. Mega Entm't Grp. II,* No. 15 CV 667, 2018 WL 488258, at *2n.5 (N.D. Ill. Jan. 19, 2018) ("Regardless, [plaintiff] requests that judicial notice be taken of a complete copy of the plea agreement and the facts recited therein. That request is granted. Judicial notice may be taken of facts recited in a plea agreement."); *Minnesota Lawyers Mut. Ins. Co. v. Conour,* No. 1:12-cv-1671-WTL-MJD, 2014 WL 5089290, at *5 (S.D. Ind. Oct. 8, 2014) ("The Court takes judicial notice of the criminal proceedings against [defendant] and the fact that [defendant] is under a Restitution Order by the criminal court.").

### B. Dyer's fraud victims are "victims or witnesses in a Federal criminal case or investigation" who may be protected from harassment under 18 U.S.C. § 1514(b)(1).

The plea agreements and restitution orders in the Insurance Case, Case No. 16-CR-100, and Farmland Case, Case No. 15-CR-115, each establish that Cindy Bakley, Bakley Construction, and Mark Borst are victims of Dyer's fraud schemes.[1] *See* 18 U.S.C. § 3771(e) (defining a "victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense or an offense in the District of Columbia"); *Nat'l Treasury Emps. Union v. Chertoff,* 452 F.3d 839, 857 (D.C. Cir. 2006) ("There is a presumption that Congress uses the same term consistently in different statutes").

In the plea agreement in the Insurance Case, Dyer admitted that he harmed Cindy Bakley and other members of the "Joan B." (Joan Bakley) family by engaging in an elaborate fraud scheme against them. Dkt. # 1-3 at 2-3. The Court entered a restitution order of $937,000 in favor of the Bakley Construction company, further illustrating the significance of the harm that Dyer's fraud caused the Bakley family and Bakley Construction. *See* Dkt. # 1-5 at 4.

---

[1] The evidence presented at the hearing will also establish that Ms. Bakley and Mr. Borst are "witnesses" within the meaning of 18 U.S.C. § 1514.

3

Likewise, in the plea agreement in the Farmland Case, Dyer admitted that he knowingly devised and participated in a scheme to defraud multiple victims. Dkt. # 1-4 at 2 & 16-21. The restitution order specifically identifies those victims, including Mark Borst (to whom Dyer owes $453,417) and others, and confirms the extent of the financial harm that Dyer's conduct caused his victims. Dkt. # 1-6, pp. 5-6.

Thus, Cindy Bakley, Bakley Construction, and Mark Borst are victims of Dyer's crimes as a matter of law. *See* 18 U.S.C. § 3771(e); 18 U.S.C. § 1514(a), (b)(1). The United States requests that the Court treat Cindy Bakley, Bakley Construction, and Mark Borst's status as victims as established, and that the Court preclude Dyer from attempting challenge these witnesses status as victims during cross examination. Further, Sydney Borst is "an immediate family member" of Mark Borst, and thus eligible for protection via an order issued by the Court in this case. 18 U.S.C. §§ 1514(b)(1), (d)(1)(G).

### C. Dyer engaged in a "course of conduct" as defined in 18 U.S.C. § 1514(d)(1)(A)-(B).

In his Answer, Dyer admitted facts showing that he engaged in a "course of conduct" directed against both the Bakleys and the Borsts. His complaint admits that Dyer sent the letters and filed the lawsuits against the Bakleys as set forth in Exhibits 7 through 13. *See* Dkts. #1-7 to 1-13; Dkt. #24 at ¶¶ 11-14, 17-18. He further admitted that he sent letters to Borst's attorney threating to file suit against Borst, a set forth in Exhibits 14 through 16, Dkts. #1-14, 1-15, 1-16; Dkt. #24 at ¶21, and that he, acting through Melvin Krumdick, initiated the lawsuit against Mark Borst, Sydney Borst, and Daniel Borst in Walworth County, as set forth in Exhibit 17, Dkt. #1-17; Dkt. #24 ¶22. Dyer also sent the letters to Borst's attorney identified as Exhibits 18 and 19.

4

*See* Dkt. #1-18, 1-19; Dkt. #24 at ¶23.[2] Dyer continues to harass Mark Borst to this day. *See* Dkts. #98, 115. This conduct qualifies as "a series of acts over a period of time, however short, indicating a continuity of purpose" toward "specific persons,"[3] namely, the Bakleys and the Borsts. *See* 18 U.S.C. § 1514(d)(1)(A), (G); Dkt. #12 at 16-17 (finding Dyer's letters and lawsuits, as documented in the Verified Complaint, demonstrated a "course of conduct").

### D. Dyer may not use this case to try to attack his federal criminal convictions.

As has been clear from the outset of this case, Dyer considers his criminal convictions to be somehow illegitimate and therefore no hurdle to his allegations against his fraud victims. *See, e.g.,* Dkt. #10 ("Those convictions [referring to Case Nos. 15-CR-115 and 16-CR-100] were obtained in violation of the laws of the United States."). Relatedly, his letters to, and lawsuits against, the Borsts and the Bakleys rest largely on agreements, entities, and transactions that are part and parcel of the underlying fraud schemes. *See, e.g.*, Dkt. #16-1 (alleging breach of consulting agreements at heart of the insurance fraud scheme); Dkts. #8, 9, 10, 11, 12, 13 (same); Dkt. #10 at 4 ("[N]either Midwest nor American [Farmland Partners entities] were fraud schemes but were well thought out, expensive, business start ups that now operate as publicly traded Farmland Partners Inc. (FPI: NYSE).").

---

[2] In his Answer to Paragraph 23 of the Verified Complaint, Dyer denied the allegation that he "was actually directing the litigation." Dkt. #24 ¶23. He did not specifically admit or deny sending the letters noting in that paragraph, through the form of his denial indicates that he admitted the remaining allegations in the paragraph.

[3] A "specific person" is defined as "a victim or witness in a Federal criminal case or investigation, and includes an immediate family member of such victim or witness." 18 U.S.C. § 1514(d)(1)(G); *see also* 18 U.S.C. § 1514(d)(1)(C) (incorporating definition of "immediate family member" in 18 U.S.C. § 115(c)(2), which includes a spouse, parent, brother or sister, or child or person to whom the individual stands in loco parentis, and any other person living in the individual's household related to him or her by blood or marriage, and also including grandchildren).

5

The Court has repeatedly told Dyer that this proceeding is not a forum to attack his criminal convictions. *See* Dkt. #113 at 14 ("The defendant's attempt, through the Walworth County litigation, to convince a court that Borst duped the FBI, the IRS and the U.S. Attorney's Office into believing that he was a victim of the 15-cr-115 fraud is nothing more than a blatant attempt to re-litigate the criminal case in which the defendant pled guilty—something this court has repeatedly told him it will not allow him to do. For the defendant to argue in the context of this suit that any individuals—not just Borst—were not victims is an attempt to do what he could not do through his effort to withdraw his guilty plea, his appeal and his habeas petition—demonstrate his innocence."); Dkt. #119 ("The Court reiterated that it would not allow the defendant to relitigate his criminal convictions through this proceeding.").

### E. Absent a protective order, Dyer will continue to contact, and file lawsuits against, his fraud victims.

Dyer has made clear that he will pursue litigation against the victims of his fraud schemes on grounds that contradict his convictions. This is based not only on the conduct discussed above, but he specifically asked this Court to lift the temporary protective order so he could file more lawsuits against his victims. In a filing dated March 23, 2021, he stated he planned to sue "the alleged victims in Case No. 15-CR-115 the Farmland case, including but not limited to Mark Borst" and others. Dkt. #65. The Court denied the motion, noting that Dyer was "seeking to do what the government filed this lawsuit to prevent the defendant from doing." Dkt. #69. The Court further noted that, while Dyer purported that such suits would relate to events that occurred after the date on which the government alleged that his fraud in that case ended," the allegations were simply "another way of attempting to collaterally attack his conviction." Dkt. #69.

Dyer's relentlessness is further shown by his continued attempts to pursue his victims despite the temporary restraining order. For instance, during the course of these proceedings, Dyer essentially ignored the Court's order that he cease participation in the Walworth County lawsuit against Borst, see Dkt. #62; he contacted Borst's bank alleging misconduct, Dkt. #98; and he recently filed a letter intended for Mark Borst threatening Borst with "future civil and/or criminal proceedings" if Borst declined to make numerous, frivolous disclosures about events that relate to Dyer's criminal conviction in Case No. 15-CR-115, Dkt. #115.[4]

### F. The Court may take judicial notice of the federal and state court filings submitted as Exhibits to the Verified Complaint.

Dyer has admitted the authenticity of most of the documents attached as Exhibits 1-24 of the Verified Complaint. *See* Dkt. #24. However, to the extent needed the Court may, under Federal Rule of Evidence 201(c), take judicial notice of materials filed in the various state courts against Dyer's victims to establish that they were filed and to show their contents. *See, e.g., Scherr v. Mariott Intern., Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013) ("We may take judicial notice of documents that are part of the public record, including pleadings, orders, and transcripts from prior proceedings in the case."); *Virnich v. Vowald,* 664 F.3d 206, 209 (7th Cir. 2011) (taking "judicial notice of the relevant state court proceedings"); *Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012). This includes the pleadings in the federal criminal cases (Dkt. # 1-1 through 1-6) as well as the following:

- The "Motion of Judgment by Confession and Default" filed in the Circuit Court of the 22nd Judicial Circuit in McHenry County, Illinois, Case 18LA000315. Dkt. # 1-11.

---

[4] By filing the letter on the docket in this case, it appears Dyer is trying to sidestep the temporary restraining order and instead use the Court and the ECF system to convey threatening letters to the Borsts. *See also* Dkt, #135-1 at 2, 4 (Dyer's proposed questions to Borsts asking whether they each have reviewed and will accept his "indemnification offer").

- The Complaint filed in the Circuit Court of the 22nd Judicial Circuit in McHenry County, Illinois, Case 18LA000436. Dkt. # 1-12.
- The Complaint filed in the Circuit Court of the 22nd Judicial Circuit in McHenry County, Illinois, Case 19LA000244. Dkt. # 1-13.
- The First Amended Complaint filed in Walworth County Circuit Court in Case No. 2018CV000804. Dkt. # 1-17.
- The letter from AUSA Benjamin Procter filed with the McHenry County Circuit Court in Case No. 18LA000315. Dkt. # 1-20.
- The Order of Dismissal in McHenry County, Illinois Case No. 18LA315. Dkt. #1-21 at 1.[5]
- The Notice of Appeal filed in McHenry County, Illinois Case No. 18 LA 000315. Dkt. # 1-21 at 2.
- The Docketing Statement in Appellate Case No. 19-0568 in the Appellate Court of Illinois, Second District. Dkt. # 1-21 at 3-10.
- The August 28, 2019 letter from Dyer to Judge Johnson in Walworth County Circuit Court Case No. 2018CV000804. Dkt. # 1-24.

Accordingly, each of these documents—Exhibits 1-6, 11-13, 17, 20, 21, and 24, are admissible.

III. THE EVIDENTIARY HEARING

The evidence presented at the evidentiary hearing will show that Dyer's conduct constituted "harassment" under § 1514(b)(1) in that it (1) caused the victims substantial emotional distress; and (2) served no legitimate purpose. *See* Dkt. 64 at 33-34; 18 U.S.C. § 1514(b)(1), (d)(1)(B).

---

[5] Dyer has filed at least three lawsuits against the Bakleys in McHenry County Court: The first case, *Dyer v. Bakley*, Case No. 2018LA315, was dismissed with prejudice by the Court. Dkt. 1-21. The other two cases, Dyer v. Bakley, Case No. 2018LA436 were ultimately dismissed for want of prosecution, as noted on the publicly-accessible court website. *See* Public Access Portal for the 22nd Judicial Circuit Court (McHenry County), available at https://caseinfo.mchenrycountyil.gov/pca/Home/SearchResults?SearchType=PartyNameSearch&SearchContext=PublicView&SearchValue=DYER,%20TODD&RowOffset=0&RequestAction=search&TotalResults=0

As noted, the government intends to call three witnesses—Mark Borst, Sydney Borst, and Cindy Bakley. The government also plans to introduce several exhibits, which have been filed on the docket in this case:

- Exhibits 1 to 24 to the Verified Complaint, Dkts. #1-1 to 1-24, all of which, except Exhibits 22 and 23 (statements from Cindy Bakley and Mark Borst), Dyer either agreed are true and correct copies of documents or are subject to judicial notice, as discussed above.
- April 13, 2017 Letter to from Dyer to Cindy Bakley with exhibits, filed as Dkt. #16-1.
- April 9, 2019 Letter from Dyer to Walworth County Court Clerk, filed as Dkt. #16-2.

The government may seek to admit other documents as exhibits as appropriate, depending on how the proceedings develop.

Whether Dyer's conduct caused the victims substantial emotional distress will be straightforward. Cindy Bakley and Mark Borst have provided written statements on this point. *See* Dkts. #1-22, 1-23. The question of whether Dyer's conduct served no legitimate purpose is more complicated, as discussed by the Court in its Order Denying Plaintiff's Motion for Judgment on the Pleadings. Dkt. #64. However, the government anticipates that the evidence presented at the hearing will satisfy its burden.

Of note, in his response to the government's motion for judgment on the pleadings, Dyer asserted that to establish that he engaged in a "course of conduct," the government must prove he subjectively intended to cause emotional distress through his actions. Dkt. #47 at 7. To support this broad assertion, he cited one case, *United States v. Lolo*, No. 8:18-CR-133-T-17, 2018 WL 6619803 (M.D. Fla. Dec. 18, 2018). Dkt. #47 at 7. The United States responded, noting that the *Lolo* case said nothing about 18 U.S.C. § 1514, and that in any event, the plain language of 1514 focused on objective criteria rather than subjective intent. Dkt. #50 at 6-7.

9

In its order denying the government's motion, the Court addressed whether the alleged harasser's intent was important to show that the conduct served no legitimate purpose. Dkt. #64 at 27-30. It pointed to three cases, *United States v. Tison*, 780 F.2d 1569 (11th Cir. 1986), *United States v. Camick*, No. 13-10042-01-JTM, 2014 WL 544997, at *2 (D. Kan. 2014), and *United States v. Lewis*, 411 F.3d 838 (7th Cir. 2005), that according to the Court, "implied that the alleged harasser's intent is critical." Dkt. #64 at 27. The Court then concluded that the defendant's subjective intent is a matter of fact to be decided following an evidentiary hearing.

The government will prove that Dyer conduct toward the victims was intentionally harassing and retaliatory in nature. Indeed, his letters to these victims explicitly threaten them with criminal penalties and financial ruin if they do not bend to his will. *See, e.g.*, Dkts. #1-7, 1-8, 1-9, 1-10, 1-11, 1-12, 1-13, 1-14, 1-16, 1-17, 115. As the Court noted in its October 2, 2019 Order, Dyer's "threatening, bullying contacts, while portraying himself as the victim and asserting that he is protecting himself from the victims, seem the very definition of harassment." Dkt. #12 at 17.

With regard to the Bakley's, Dyer's letters and lawsuits explicitly accuse the Bakleys of wrongdoing *because they provided information about Dyer's crimes to the FBI*. The fact that the Bakleys exposed his fraud to the FBI is a core part of why he sought to shake them down in 2017 and 2018 and ultimately filed suit against them in McHenry County Court for allegedly breaching the fraudulent "consulting agreements." *See, e.g.,* Dkts. #1-7 (demanding $700,000 for disclosing consulting agreement to FBI, IRS, and the U.S. Attorney's Office, and noting that he told them not to talk to the FBI); Dkt. #1-8 (demanding payment of $500,000 for disclosing information to the FBI in violation of their consulting agreement); Dkt. #1-12 at 4 (lawsuit accusing Bakley's of, among other things, making "false statements to the FBI and the US

Attorney's Office" and breaching their consulting agreement by disclosing it to other parties); *see also* Dkt. #1-12 at 6 (lawsuit accusing the Bakleys of illegally recording calls he made to them, which the Bakley's allegedly provided to the FBI). Dyer, of course, ultimately pleaded guilty to defrauding the Bakleys, and as part of the plea agreements, specifically admitted that the consulting agreements were tools of the fraud scheme. *See* Dkt. #1-3, 1-5. He owes the Bakleys nearly $1 million in restitution. Dkt. #1-5 at 4.

Moreover, Dyer acknowledged that his lawsuits were dubious in light of his fraud conviction in Case. No 16-CR-100. For instance, he noted in a letter to the Bakley's attorney that "I further believe that I will be successful in the near future in overturning my federal criminal convictions, which would leave the Bakleys without an affirmative defense" to his lawsuit. Dkt. #1-10.

Relatedly, Dyer has made it clear that his allegations regarding recorded phone conversations with "Robert" are intended to force the Bakleys to somehow help overturn his criminal conviction in Case No. 16-CR-110. For instance, in his letter responding to the Verified Complaint, Dyer asserted that alleged recordings the phone calls made by the mysterious "Robert" to Cindy Bakley will somehow "prove I did not disguise my voice and/or those recording will be devoid of misrepresentations." Dkt. #10 at 3. This has been a constant theme in Dyer's failed efforts for relief under 28 U.S.C. § 2255. *See United States v. Dyer*, Case No. 19-CV-752 (E.D. Wis.) Dkt. #7, 8, 9, 17, 21-1. Indeed, Dyer pressed the Court to grant him discovery in that 2255 proceeding based on what he contended were Cindy Bakley's admissions in the McHenry County lawsuit regarding the alleged phone call recordings. Case No. 19-CV-

11

752 (E.D. Wis.) Dkt. #17.[6] More to the point, Dyer has claimed in the 2255 proceeding that the alleged recordings "will exonerate me." Case No. 19-CV-752 (E.D. Wis.) Dkt. #21-1 ¶¶10-12. Shortly before he filed is 2255 motion, he threatened the Bakleys with criminal and financial consequences if they did not give him information about the alleged recordings. *See* Dkt. #1-10 (demanding "a sworn affidavit from the Bakley's disclosing who and when they gave the telephone recordings to (US Attorney's Office, IRS, and/or FBI)" along with $1 million loan, in exchange for dismissing his lawsuits against the Bakleys); *see also* Dkts. #1-7, 1-9. Importantly, Dyer, as part of his guilty plea, admitted under oath that he called the Bakleys using the disguised voice of the fictional character "Robert" to further the fraud scheme against the Bakley family. *See* Dkt. #1-3 ¶ 5.

With regard to the Borsts, Dyer's letters and lawsuits accuse Mark Borst of wrongdoing based on his cooperation with the FBI's investigation of Dyer's fraudulent farmland scheme. For instance, Melvin Krumdick, working at Dyer's direction, threatened to sue Borst in part based on Borst's alleged "cooperat[ion] with authorities as a means of escaping detection, culpability [and] aid[ing] authorities in their relentless pursuit of your business partners [meaning Dyer] . . . ." Dkt. #1-14. And, in his Walworth County lawsuit, Dyer accused Borst of "convince[ing] the State of Wisconsin, Department of Securities, State of Illinois, Securities Department, FBI, IRS, US Attorney Office in Wisconsin, and investors that defendant was a passive, unknowing investor . . . " Dkt. #1-17 at 4. Dyer, of course, pleaded guilty to an elaborate scheme that defraud investors, including Mark Borst, out of nearly $2 million. Dkts. #1-1, 1-4, 1-6.

---

[6] The same document—Cindy Bakely's responses to Dyer's requests for admissions in McHenry County Court Case No. 18LA315—was submitted by Dyer as part of his proposed questions to Cindy Bakley for the upcoming hearing. Dkt. #137 at 6-15.

12

Dyer will presumably argue that his conduct toward the Borsts and Bakleys was motivated by something other than harassment, revenge, or an effort to attack his convictions. But even if Dyer has truly convinced himself there is merit to his claims, these victims should not be forced to suffer further based on Dyer's paranoid and greed-fueled delusion. In other words, proof of Dyer's malicious subjective intent should not be the lynchpin of the proceedings.

It is certainly true that the harasser's subjective intent *can* be relevant and, in certain circumstances, determinative when addressing whether harassment occurred. Indeed, if one sends the letter or files the lawsuit with the intent is to harass, then the conduct does not serve a legitimate purpose. But the reverse is not true: the letter or lawsuit does not automatically serve a legitimate purpose simply because it was initiated based on something other than an intent to harass.

Unlike § 1514, the companion criminal statute, 18 U.S.C. § 1513, punishes defendants who retaliate against victims or witnesses. That statute, therefore, specifically includes scienter requirements that must be proven by the government. The lack of a scienter requirement in § 1514(b)(1) or (d)(1)(B)(ii) indicates that the focus should be on the situation facing the victim, rather than the defendant's subjective state of mind, in determining if the conduct constitutes harassment as defined under 1514(d)(1)(B). It leaves it to the court to decide if the conduct at issue serves some legitimate purpose.

In the end, the government believes that in this case, the evidence shows that Dyer engaged in a course of conduct with intent to harass and retaliate against his fraud victims. The letters and lawsuits reference activities at the heart of his criminal convictions, and he makes no apology for threatening these victims with serious consequences if they do not accede to his demands. *See, e.g.*, Dkts. #1-7, 1-8, 1-9, 1-10, 1-11, 1-12, 1-13, 1-14, 1-16, 1-17, 115. However,

13

the ultimate focus needs be on protecting these victims from further harassment, as Dyer has demonstrated he will not stop absent a court order.

IV. RELIEF REQUESTED

Following the hearing, the United States requests that the Court issue a protective order under 18 U.S.C. § 1514(b)(5) that prohibits Dyer from (i) directly or indirectly contacting or attempting to contact any witness or victim in Criminal Case Nos. 15-CR-115 (E.D. Wis.) or 16-CR-100 (E.D. Wis.), including Mark Borst, Bakley Construction, Cindy Bakley, or any immediate family member or representative of Mr. Borst or Ms. Bakley; and (ii) directly or indirectly initiating, participating in, or continuing any state or federal lawsuit or appeal against any witness or victim in Criminal Case Nos. 15-CR-115 (E.D. Wis.) and 16-CR-100 (E.D. Wis.), including against Mark Borst, Bakley Construction, Cindy Bakley, or any immediate family member or representative of Mr. Borst or Ms. Bakley, without prior approval from this Court.

V. CONCLUSION

The above discussion attempts to set forth the context in which to view the anticipated evidence. The United States may seek to supplement this memorandum following the evidentiary hearing.

Dated this 15th day of July, 2022.

RICHARD G. FROHLING
United States Attorney

By: /s/ *Benjamin Proctor*
BENJAMIN PROCTOR
Assistant U.S. Attorney
Wisconsin Bar No. 1051904
CARTER B. STEWART
Assistant U.S. Attorney
Wisconsin Bar No. 1117543
Office of the United States Attorney

14

Case 2:19-cv-01319-PP   Filed 07/15/22   Page 14 of 15   Document 139

Eastern District of Wisconsin
517 East Wisconsin Avenue, Room 530
Milwaukee, WI 53202
Telephone: (414) 297-1700
Fax: (414) 297-4394
benjamin.proctor@usdoj.gov
carter.stewart@usdoj.gov